**THE CAPITOL FORUM**

Vol. 9 No. 369    October 25, 2021

# Lockheed Martin/Aerojet Rocketdyne: FTC Staff Examines Possible Labor Monopsony Issue in Small Arkansas City

As the FTC winds down its review of Lockheed Martin's (LMT) proposed Aerojet Rocketdyne (AJRD) buyout, agency staff is examining if the $4.4 billion deal could reduce wages for engineers and other defense industry workers near the small city of Camden, Arkansas, sources familiar with the matter said.

Sources said FTC staff is poring over employment data supplied by a third party to determine whether the merger would lessen competition to hire those workers in the Camden area. That theory of anticompetitive harm—labor monopsony—has in recent years emerged as a growing bipartisan concern that Chair Lina Khan has targeted as a top enforcement priority.

The merging parties are the two biggest providers of defense jobs in the region, and both have gone on recent hiring sprees. The data show that Lockheed and Aerojet together accounted for more than half of all engineering job postings in Camden in the last two years.

The question is whether the merger would empower Lockheed to reduce wages and benefits because Camden-area workers are left with fewer employment alternatives post merger, the sources said.

Khan has instructed staff reviewing mergers to be mindful of a deal's ramifications for workers; under her leadership, sources said, the agency increasingly has required in second requests that merging parties provide information regarding their transactions' effect on employees.

"Although antitrust law in recent decades generally has neglected monopsony concerns and harms to workers, we must scrutinize mergers that may substantially lessen competition in labor markets," Khan wrote in a letter last month to House Judiciary antitrust subcommittee Chair David Cicilline, D-RI.

Each of her fellow commissioners has spoken about the importance of enforcing against labor monopsonies and their byproducts—non-compete and no-poaching agreements.

It's difficult to say what impact monopsony questions will have on the recommendation that FTC staff is writing on the deal. Staff already has concerns about how the transaction would affect competition to supply the Pentagon with missile systems and is preparing a lawsuit to block the deal by collecting evidence through investigational hearings and signed statements from third parties.

© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.

In the past 40 days, staff attorneys have deposed Lockheed and Aerojet executives, two sources said; the agency's Bureau of Economics continues to request data from industry players, one of the sources said.

As staff's review near its conclusion, the Defense Department has given the FTC's leadership its all-important recommendation on the deal, one of the sources said. DOD has been supportive of recent defense mergers, and its backing has proven decisive in the FTC clearing transactions such as Northrop Grumman's 2018 acquisition of missile engine manufacturer Orbital ATK.

A DOD spokesperson declined to comment about the recommendation. "The department continues to work with the Federal Trade Commission, who is the lead for the ongoing investigation," the spokesperson said in an emailed response.

That DOD will be as influential this time isn't assured: Khan has said she's skeptical "about the efficacy of behavioral remedies," which the FTC required to fix vertical problems with the Northrop Grumman/Orbital ATK deal. The agency has similar vertical concerns with the Lockheed/Aerojet merger.

The labor monopsony issue adds a new dimension to the FTC's current deal review because it's horizontal in nature. Under the theory of harm, the companies are direct competitors in Camden for workers with specialized skills, and acquiring Aerojet would give Lockheed more leverage to lower wages and determine the terms of employment to workers in the region.

In a monopsony case, the FTC would be less interested in DOD's views than the regional labor market's dynamics, and the merging parties' hiring practices and internal human resources documents.

An FTC spokesperson declined to comment. Spokespeople for Lockheed and Aerojet declined to comment, citing their companies' quiet periods before reporting earnings.

**Prime opportunity.** The U.S. agencies have only rarely brought merger cases based on labor monopsony concerns. But the Lockheed/Aerojet merger presents the FTC with a prime opportunity to delve into the issue. Lockheed and Aerojet each employ 1,000 people in the Camden region, many of whom are managers, engineers and technicians. Such highly specialized employees often are the most vulnerable to a dominant firm's abuses if they work in an area with few companies seeking their skills.

Generally, in investigating a possible labor monopsony, "the relevant geographic market is likely to be regional or local, and if the workers are specialized, they are likely to have fewer options for

2

© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.

employment," said John Kirkwood, a former FTC official who's now a law professor at the University of Seattle.

If post-merger Lockheed cuts wages and benefits, it's unlikely a flood of workers would leave southern Arkansas: Many have earned their college degrees in the region, and tend to stay there for much of their careers.

In the past five years, Lockheed and Aerojet have tied themselves even more closely to Camden's economy. In 2019, senior Lockheed officials announced that the company would spend $142 million to expand its Camden-area plant, adding 326 new workers to its local workforce of 700. Aerojet last year opened a new 17,000-square-foot facility to aid its production of more than 75,000 solid rocket motors annually in the region.

The companies' moves are reflected in job postings data from Gartner TalentNeuron, which tracks labor markets globally. From October 7, 2020 to October 6, 2021, Aerojet advertised 114 engineering job openings in the region while Lockheed had 69, combining for 56% of the total, according to Gartner. Lockheed and Aerojet posted 194 and 60 job openings, respectively, in the year-earlier period, or 68% of all positions, Gartner said.

The data for all Camden-area job postings shows a similar pattern. Between October 7, 2020 and October 6, 2021, Aerojet posted 339 job openings and Lockheed, 168, or a combined 25% of the total listings. That compared with Raytheon's 123 job postings and security services provider Allied Universal's 92, according to Gartner.

In the year-earlier period, Lockheed had 474 job postings and Aerojet had 342, which together represented 47% of the total.

In a few cases, the companies have wooed workers away from each other, according to LinkedIn data; the deal's consummation would end this recruiting rivalry.

**Not clear cut.** The monopsony case in Camden, though, isn't clear cut. For some workers, employment options do exist with other defense contractors: General Dynamics Ordnance and Tactical Systems, ordnance provider Armtec Defense Technologies and Lockheed rival Raytheon have operations in the region, although they employ far fewer people than the merging parties.

Defense contractors' demand for workers outstrips the supply in Camden, which could also counteract any post-merger Lockheed ability to reduce salaries and benefits.

3

*© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.*

"Right now we need more students to provide more employees," said Jason Morrison, chancellor of Southern Arkansas University Tech, a two-year school that's one of the primary educational institutions funneling prospective workers to defense contractors in the region.

Lockheed's and Aerojet's importance to the Camden region also is evident in LinkedIn profiles tied to the city of 11,000. Lockheed employs 239 LinkedIn members in the Camden area; another 198 work at Aerojet. The third-largest employer is Southern Arkansas University, which is listed on 84 profiles, while No. 4 Camden Fairview School District employs 75, according to LinkedIn.

Lockheed and Aerojet also were the Nos. 1 and 2 employers of Camden engineers listed on the site. Sixty-two engineers work for Lockheed and 41 for Aerojet, representing 51% of the 202 Camden-area engineers on the site. In contrast, six Camden residents' profiles list ordnance and munitions manufacturer Spectra Technologies as their employer; three, Raytheon; and two, General Dynamics.

Most of these jobs are at the 18,000-acre Highland Industrial Park, a former naval munitions base in nearby East Camden that's billed as one of the largest privately owned facilities of its kind in the U.S. Since the 1960s, defense contractors have used the 5.5 million square feet in the park's more than 1,000 buildings to manufacture, test and store some of the most sophisticated weapons systems on the planet.

Currently, those include Aerojet's solid rocket motors; Lockheed's PAC-3 missiles, and mobile artillery and rocket systems; Raytheon's SM-2, ESSM and missiles; and General Dynamics Ordnance and Tactical Systems' rockets, shells, and Hellfire and Javelin warheads.

About 3,000 people work at the facilities, said James Nixon, manager of business development for Highland Industrial Park.

Defense contractors have been especially good for the Camden region: Calhoun County, where Highland Industrial Park is located, and neighboring Ouachita County, where many defense workers live, had unemployment rates of 3.2% and 3.8%, respectively, in August, well below the national average of 5.2% that month.

The jobs Lockheed, Aerojet and other defense contractors provide are relatively high paying. Last year, the average aerospace worker in Arkansas earned $62,143 compared with the average state residents' salary of $44,780.

A small sample of Camden-area LinkedIn members have switched between the two employers. Among the former Aerojet employees that Lockheed cherry-picked are an operations engineering

4

© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.

manager; a team leader; a test engineer and a product inspector. Aerojet hired away from Lockheed quality and program managers.

**Study, live locally.** The overwhelming majority of Camden workers on LinkedIn earned their diplomas in the region. The schools that graduated the most of them are Southern Arkansas University; its sister institution Southern Arkansas University Tech; Camden Fairview High School; Henderson State University; and the University of Arkansas.

A preference for local schools also is clear among Camden-area engineers on the site: Louisiana Tech University was the only out-of-state college that produced a substantial number of graduates in the region.

About 20% of Southern Arkansas University's engineering graduates in the past two years have gotten jobs at Lockheed and Aerojet, according to SAU President Trey Berry. The companies also employ the school's engineering graduates in industrial technology, accounting, supply chain management, financial services and production management, he said.

The area's universities have nurtured this relationship by coordinating closely with Lockheed, Aerojet and other businesses to tailor their academic programs to the employers' needs. SAU Tech is actually located on the Highland Industrial Park's grounds; senior Lockheed Martin and Aerojet executives serve on the board of SAU's College of Science and Engineering in nearby Magnolia.

"Relying on industry leaders to help shape curriculum, our engineering program is aligned to meet workforce needs," Berry said in an email.

These workers tend to live close to Camden, too. More than three-quarters of the region's manufacturing workers—77%—live less than a 25-minute drive from work, and an additional 18% are within a 45-minute commute, according to the Ouachita Partnership for Economic Development, the area's biggest business booster.

Defense workers' loyalty to the region might indicate a problem found in labor monopsonies: Employees unwilling or unable to move to higher-paying jobs elsewhere have less leverage to demand better salaries and benefits from their current employers.

**Hypothetical monopsonist test.** To get a better sense of Camden's labor situation, FTC staff will need to go beyond the intriguing LinkedIn and Gartner data, antitrust attorneys said.

The agency can rely on many of the same analytical tools it does when evaluating seller market power in merger cases. After identifying the employees most likely affected, FTC staff could

*© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.*

require the companies to disclose how many of these workers they employ and their compensation, said Kirkwood, the University of Seattle professor.

The agency then will need to define the labor market in question by applying the hypothetical monopsonist test—a slight variation on the hypothetical monopolist test typically used in merger investigations, he said.

"You'd be trying to determine whether the putatively vulnerable workers would turn to other employers or move to other geographic areas if the hypothetical monopsonist reduced wages," Kirkwood said.

The FTC could interview or even depose the companies' managers as well as their workers, and also seek comparable information from other employers, Kirkwood said.

Staff would need to factor in barriers to entry for other employers like non-compete agreements that the companies force their employees to sign.

The agency also would have to consider [efficiencies](#) in manufacturing or other business activities that could compensate for a deal's anticompetitive effects.

Educators in the Camden area said that their services would be in even more demand because they expect the merger to lead to more, not fewer, jobs in the region.

Synergies resulting from the Lockheed/Aerojet merger could create even more jobs in the Camden area, said Mahbub Ahmed, interim chair of SAU's Department of Engineering and Physics.

"When two companies with different offerings merge, they will maintain their same product offerings but will most likely be able to expand on the products that they manufacture, which will require more engineers and workers," he said.

Camden's business community isn't discussing the merger adversely affecting the labor force's wages and benefits, said James Lee Silliman, the Ouachita Partnership's executive director.

"It's not necessarily on my radar screen and I haven't heard it talked about in the circles I'm in," he said.

It's possible FTC staff might look at other factors in examining the labor data. Efficiencies considerations, which are adapted from traditional merger analysis, have come under fire from antitrust hawks.

© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.

In signing an executive order tasking the executive branch with instilling more competition in the U.S. economy, President Joe Biden in July called four decades of relying on this analysis a "failed" experiment.

"Forty years ago, we chose the wrong path," he said. Under the executive order, there will be "no more tolerance for abusive actions by monopolies.  No more bad mergers that lead to mass layoffs, higher prices, fewer options for workers and consumers alike."

**Few cases**. The FTC's pursuit of a monopsony case against Lockheed/Aerojet is far from a sure thing. Despite the recent public hand wringing by U.S. antitrust enforcers about the harm mergers can inflict on labor markets, they have brought only a few suits in recent years.

In 2018, for example, the FTC demanded that Grifols divest blood plasma collection facilities in three U.S. cities to address antitrust concerns with the Spanish pharmaceutical company's acquisition of Biotest US. Without the divestitures, the agency said, Grifols could reduce fees for plasma donors, who usually didn't travel more than 25 minutes to collection facilities in these cities.

DOJ in 2017 also demanded that Danone divest its Stonyfield Farms business to complete its acquisition of WhiteWave, after concluding that the deal as initially structured would have combined the top two purchasers of raw organic milk in the Northeast, leading to worse contract terms for dairy farmers in the region.

Monopsony cases are very rarely litigated. One exception is DOJ's successful 2016 suit to block Anthem's proposed acquisition of rival health insurer Cigna, where the department not only argued that the merger would harm competition in health insurance markets but also would give the merged company more bargaining leverage over hospitals and doctors in negotiating reimbursements.

These cases provide a rough guide for the FTC in their current deal review. The question now is how far staff will go in investigating Camden's labor market before turning in its highly anticipated recommendation.

*© 2021 The Capitol Forum. Direct or indirect reproduction or distribution of this article without prior written permission from The Capitol Forum is a violation of Federal Copyright Law.*