# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM,

1629 K Street, N.W., Suite 300
Washington, D.C. 20006

*Plaintiff*

v.

MARKET SECURITIES, LLC,

85 Broad Street, 17th Floor
New York, New York 10004

*Defendant*

CIVIL ACTION NO.: 22-1333 (BAH)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 2

   A.   Legal Standard for a Rule 12(b)(6) Motion ................................................... 2

   B.   Count I (Direct Copyright Infringement) Must Be Dismissed ................................. 3

      a.   *Plaintiff Fails to State a Claim for Direct Copyright Infringement* ............................... 3

         i.    Legal Standard ........................................................................................ 3

         ii.   Plaintiff's Complaint Is Rife With Contradictory Statements Regarding the Works at Issue ............................................................................................................... 4

         iii.  Plaintiff Has Failed to Allege Substantial Similarity of Protectible Elements ............ 5

      b.   *Plaintiff's Claim for Direct Infringement Must Fail Due to Fair Use* ............................... 8

         i.    Defendant's Use Serves a Compelling Public Purpose ................................................. 9

         ii.   Plaintiff's October Articles Are Factual Works ........................................................ 12

         iii.  Defendant Took, if Anything, Only What Was Necessary to Fulfill Its Purpose ...... 12

         iv.  Defendant's Commentaries Do Not Supplant the Market for Plaintiff's October Articles ................................................................................................................. 13

   C.   Count II (Contributory Copyright Infringement) Must Be Dismissed ................. 15

   D.   Count III (Misappropriation of Proprietary Information) Must Be Dismissed.... 17

III.  CONCLUSION ........................................................................................................ 22

## **TABLE OF AUTHORITIES**

**Cases**

*Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140 (2d Cir. 1998) ........................................... 7

*Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491 (D. Md. 2010) ................................................. 26

*Allure Jewelers, Inc. v. Ulu*, No. 1:12cv91, 2012 U.S. Dist. LEXIS 134440 (S.D. Ohio Sep. 20, 2012)...................................................................................................................................... 22

*Am. Soc'y for Testing & Materials v. Pub. Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018) . 14

*Am. Soc'y for Testing & Materials v. Pub. Resource.Org, Inc.*, No. 13-cv-1215 (TSC), 2017 U.S. Dist. LEXIS 14623 (D.D.C. Feb. 2, 2017)................................................................................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 3, 20

*Ass'n of Am. Med. Colls. v. Princeton Review, Inc.*, 332 F. Supp. 2d 11 (D.D.C. 2004) ............. 23

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F. 3d. 876 (2d. Cir. 2011)........ 17, 23, 25

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022) ................................. 10

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ................................ 10

*Buchanan v. Sony Music Entm't*, No. 18-cv-3028 (KBJ), 2020 U.S. Dist. LEXIS 92405 (D.D.C. May 26, 2020) ............................................................................................................................ 3, 6

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ............................................. 12, 15, 16

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343(1988).............................................................. 21

*Christianson v. W. Pub. Co.*, 149 F.2d 202 (9th Cir. 1945) ......................................................... 9

*Corp. Sys. Res. v. Wash. Metro. Area Transit Auth.*, 31 F. Supp. 3d 124 (D.D.C. 2014) ............ 27

*DBW Partners, LLC v. Bloomberg, L.P.*, Civil Action No. 19-311 (RBW), 2019 U.S. Dist. LEXIS 195725 (D.D.C. Nov. 12, 2019)................................................................................ 19, 20, 22

*DiLorenzo v. Norton*, Civil Action No. 07-144 (RJL), 2009 U.S. Dist. LEXIS 66862 (D.D.C. July 31, 2009)................................................................................................................................... 13

*Dress Barn, Inc. v. Klauber Bros.*, No. 18cv8085(DLC), 2019 U.S. Dist. LEXIS 68869 (S.D.N.Y. Apr. 22, 2019) .............................................................................................................. 20

*Evans v. McCoy-Harris*, No. CV 17-8345-DMG (AGRx), 2019 U.S. Dist. LEXIS 78828 (C.D. Cal. May 9, 2019)........................................................................................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)................................................... 7

*Fin. Info., Inc. v. Moody's Inv'rs Serv.*, 808 F.2d 204 (2d Cir. 1986) ......................................... 24

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .......................................................................... 18

*Gaines v. District of Columbia*, 961 F. Supp. 2d 218 (D.D.C. 2013)........................................... 4

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) ........................................................... 16

*Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985)...................................... 11, 14, 15

*Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017).............................................................. 10

*ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Officials*, 2020 U.S. Dist. LEXIS 67783 (D.D.C. April 17, 2020) ................................................................................................ 3, 8

*Int'l News Serv. v. AP*, 248 U.S. 215 (1918) ............................................................................... 1

*Kaempe v. Myers*, 361 U.S. App. D.C. 335, 367 F.3d 958 (2004) ............................................. 12

*Maxtone-Graham v. Burtchaell*, 803 F.2d 1253 (2d Cir. 1986) ................................................. 16

*McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594 (S.D.N.Y. 2020).......................................... 20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .............................. 20

*MLGenius Holdings LLC v. Google LLC*, No. 20-3113, 2022 U.S. App. LEXIS 6206 (2d Cir. Mar. 10, 2022).......................................................................................................................... 24

*NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997).................................................................. 23

*Nelson v. PRN Prods., Inc.*, 873 F.2d 1141 (8th Cir. 1989) ........................................................ 8

*Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005) ........................................ 5, 6, 18, 19

*Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289 (D.D.C. 2017) .................................... 10

*Potter v. Toei Animation, Inc.*, 839 F. Supp. 2d 49 (D.D.C. 2012) ........................................ 5

*Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15 (D.D.C. 2010) ........................... 4, 6, 7

*Prunty v. Vivendi*, 130 F. Supp. 3d 385 (D.D.C. 2015) ..................................................... 8

*Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554 (1981) ...................................... 11

*Scrappost, LLC v. Peony Online, Inc.*, No. 14-14761, 2017 U.S. Dist. LEXIS 24404 (E.D. Mich.
    Feb. 22, 2017) .......................................................................................... 23

*Shekoyan v. Sibley Int'l*, 409 F.3d 414 (2005) ............................................................ 21

*Spinelli v. NFL*, 903 F.3d 185 (2d Cir. 2018) ............................................................. 20

*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002) ........................................ 3

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 742 F.3d 17 (2d Cir. 2014) .............. 13, 14, 15, 17

*Wainwright Sec., Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977) ........................ 10

*Walker v. Kemp*, No. 2:21-0528-KSM, 2022 U.S. Dist. LEXIS 35373 (E.D. Pa. Feb. 28, 2022) . 9

*Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1 (D.D.C. 2004) ......................................... 4

*Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38 (D.D.C. 1999) ............................... 26

*Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012) ........................................... 13

## Statutes

17 U.S.C. § 102 ............................................................................................... 3

17 U.S.C. § 106 .............................................................................................. 16

17 U.S.C. § 107 ............................................................................................... 9

## Other Authorities

Kimberley Isbell, *The Rise of the News Aggregator: Legal Implications and Best Practices*,
    Berkman Center Research Publication No. 2010-10 (August 30, 2010), *available at*
    http://dx.doi.org/10.2139/ssrn.1670339 .......................................................... 18

UNITED STATES COPYRIGHT OFFICE, *Copyright Protections for Publishers* (June 2022), *available
    at* https://www.copyright.gov/policy/publishersprotections/202206-Publishers-Protections-
    Study.pdf ................................................................................................... 6

## Treatises

3 Nimmer on Copyright § 10.15 ............................................................................. 17

Nimmer on Copyright, § 8.11 (C)(1)(b) .................................................................... 16

## Regulations

17 CFR § 240.10b-5 .......................................................................................... 10

17 CFR § 240.10b-5 (b) ....................................................................................... 2

Defendant Market Securities, LLC ("Defendant" or "Market Securities") hereby moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff DBW Partners, LLC d/b/a The Capitol Forum's Complaint (*Docket Entry No. 1*) ("Plaintiff" or "CapForum" and "Complaint", respectively) for a failure to state a claim upon which relief can be granted (the "Motion"). In support of this Motion, Defendant states as follows:

## I.     INTRODUCTION

This case highlights the deep-rooted tension between the First Amendment, which is designed to, among other things, promote the free flow of information, and the Copyright Act, which is designed to incentivize creators by providing them with certain limited exclusive rights. In order to strike the appropriate balance, certain safeguards have been codified, including fair use (17 U.S.C. § 107), and that facts alone are per se not copyrightable (17 U.S.C. § 102(b)). As the Supreme Court has previously noted with respect to news content:

> the news element — the information respecting current events contained in the literary production — is not the creation of the writer, but is a report of matters that ordinarily are *publici juris*; it is the history of the day. It is not to be supposed that the framers of the Constitution, when they empowered Congress 'to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries' (Const., Art I, § 8, par. 8), intended to confer upon one who might happen to be the first to report a historic event the exclusive right for any period to spread the knowledge of it.

*Int'l News Serv. v. AP*, 248 U.S. 215, 234 (1918).

Despite the foregoing well-established principles, here, in an effort to promote information asymmetry, and limit the flow of factual information set forth in Plaintiff's reports, including Plaintiff's October Articles (as defined *infra*), to a finite number of paid subscribers, Plaintiff has filed suit against Market Securities—a registered brokerage firm that has a legal duty to disclose material information pertaining to or affecting the stock market to its customers. From the face of the Complaint and the Exhibits thereto, it is abundantly clear that Plaintiff's October Articles and

Defendant's Commentaries (as defined *infra*) are not substantially similar, as a matter of law, and that Plaintiff is seeking to impermissibly lay claim to, and secure a monopoly on, unprotectible facts. Further, to the extent there were any substantial similarity between Plaintiff's October Articles and Defendant's Commentaries, Defendant's alleged use of Plaintiff's October Articles, or components thereof, qualifies as a fair use, given, among other things, the unequivocal public importance of equal access to material information relating to the stock market—the very reason why certain regulations relating to the same have been promulgated by the Securities Exchange Commission ("SEC") and other regulatory bodies. *See, e.g.*, 17 CFR § 240.10b-5 (b) (making it unlawful for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact" in connection with the purchase or sale of any security). Therefore, Plaintiff's claim for direct copyright infringement must fail.

Likewise, Defendant respectfully submits that Plaintiff's remaining claims for contributory copyright infringement and misappropriation must also be dismissed. As is evident from the Complaint itself, Plaintiff's claim for contributory infringement is based on speculation, and lacks sufficient factual foundation. As for Plaintiff's claim for misappropriation, D.C. has not recognized the "hot news" misappropriation tort, and regardless, under the facts of this case, it is clear that Plaintiff's claim is preempted, as further set forth herein. Consequently, Plaintiff's Complaint should be dismissed, in its entirety, with prejudice.

## II.     ARGUMENT

### A.  Legal Standard for a Rule 12(b)(6) Motion

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint". *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). While the allegations of a complaint are to be construed in a plaintiff's favor, in ruling on any such motion, "the court 'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *ICC Evaluation Serv., LLC v.*

*Int'l Ass'n of Plumbing & Mech. Officials*, 2020 U.S. Dist. LEXIS 67783, at *12 (D.D.C. April 17, 2020) (internal citation omitted). "A complaint survives a motion under Rule 12(b)(6) only if it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

### B.  Count I (Direct Copyright Infringement) Must Be Dismissed

#### a.  **_Plaintiff Fails to State a Claim for Direct Copyright Infringement_**

##### i.  *Legal Standard*

"According to the D.C. Circuit, to state a claim for copyright infringement, a plaintiff must allege facts that, if true, would 'prove both [1] ownership of a valid copyright and [2] that the defendant copied original or 'protectable' aspects of the copyrighted work.'" *Buchanan v. Sony Music Entm't*, No. 18-cv-3028 (KBJ), 2020 U.S. Dist. LEXIS 92405, at *12 (D.D.C. May 26, 2020), citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002). In order to establish copying, plaintiff must allege both access and substantial similarity of original ***protectible expression***. *Id.* at *13. "Protectible aspects of an artist's work are those 'that display the stamp of the author's originality'; thus, facts, ideas, and 'incidents, characters, and setting which are . . . standard[] in the treatment of a given topic' are all considered unprotectible." *Id.* at *14 (internal citation omitted); *see also Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15 (D.D.C. 2010) (also noting that ideas and facts are not copyrightable, nor are individual words or short phrases). In fact, the Copyright Act explicitly provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea. . . concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Thus, "[t]he focus of the substantial similarity inquiry is on the 'expression of an idea or fact, not on the similarity of the facts, ideas, or concepts themselves.'" *Whitehead v. CBS/Viacom,*

*Inc.*, 315 F. Supp. 2d 1, 8 (D.D.C. 2004). "While questions of substantial similarity for copyright claims are often questions of fact for a jury, if the alleged infringing work lacks a sufficient similarity to even raise a question of fact, then the Court must dismiss." *Gaines v. District of Columbia*, 961 F. Supp. 2d 218, 223 (D.D.C. 2013) (finding that the attachments to the complaint provided sufficient evidence for the Court to determine that there was no copyright infringement, and granting motion to dismiss).

> ii.  *Plaintiff's Complaint Is Rife With Contradictory Statements Regarding the Works at Issue*

As a threshold matter, in order to make out a claim for copyright infringement, the plaintiff must specifically identify the works at issue. *See Potter v. Toei Animation, Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("[a] copyright-infringement claim must allege the existence of specific works subject to the copyright claim, that the copyrights are registered, and the acts and time period during which the defendant allegedly infringed the copyright."); *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 187 (D.D.C. 2005) (finding complaint failed to state a claim because it was "virtually impossible to determine what materials have allegedly been infringed").

Here, Plaintiff's Complaint cites to sixteen (16) purportedly "relevant" copyright registrations, which all cover serials of varying dates from October 2020 through January 2022. Complaint, ¶ 18. Yet, only two (2) of Plaintiff's publications are attached to the Complaint (*see* ¶ 24, Ex. A), which are dated October 25, 2021 and October 18, 2021 (collectively, "Plaintiff's October Articles"), and are presumably covered by a singular copyright registration (i.e., TX 9-108-744, which covers newsletter issues published from October 1, 2021 through October 29, 2021). Throughout Plaintiff's Complaint, Plaintiff refers to copyright in the singular form, but in other paragraphs, refers to copyright in the plural form. *Compare* ¶ 33 ("Defendant's infringement of Plaintiff's copyrights is willful"); ¶ 39 ("Defendant has continued to infringe Capitol Forum's

4

copyright and has no intention to cease and desist such infringing activities"). Beyond Plaintiff's October Articles presumably covered by TX 9-108-744, it is entirely unclear what, if any, other works purportedly covered by the other fifteen (15) copyright registrations are supposedly at issue. Accordingly, in violation of Fed. R. Civ. P. 8, Plaintiff's vague allegations fail to adequately place Defendant on notice of the scope of the claims against it. *See Newborn*, 391 F. Supp. 2d at 187 (noting that "[a]lthough Rule 8 requires only a short plain statement, this statement must be sufficient to provide the defendants notice of the claims alleged against them" and finding that the complaint failed to satisfy the foregoing requirement, because "[r]ather than providing a short plain statement of the basis of the claim, the complaint is riddled with vague, confusing, and contradictory statements").

### iii.   *Plaintiff Has Failed to Allege Substantial Similarity of Protectible Elements*

With respect to Plaintiff's October Articles that have been specifically identified by Plaintiff in its Complaint, Plaintiff's claim for direct copyright infringement still fails because Plaintiff has failed to identify substantial similarity between ***protectible elements*** of Plaintiff's October Articles and Defendant's October 18 2021 and October 25, 2021 publications (collectively, "Defendant's Commentaries", or individually each "Defendant's Commentary"). *See, e.g., Buchanan*, 2020 U.S. Dist. LEXIS 92405, at *12 (granting motion to dismiss, and collecting cases where motions to dismiss have been granted due to the failure to plead sufficient facts supporting substantial similarity of protectible elements).

In assessing substantial similarity, the first step of the analysis "'requires identifying which aspects of the artist's work, if any, are protectible by copyright' – that is, which aspects display the author's 'stamp of originality.'" *Prunte*, 699 F. Supp. 2d at 22  (internal citations omitted).

"The mere fact that a book, play, or piece of music is copyrighted does not mean that every part of it is protected." *Id.* Indeed, it is black letter law that

> '[n]o one may claim originality as to facts'. . . This is because facts do not owe their origin to an act of authorship. The distinction is one between creation and discovery: The first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence.

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 370 (1991) (internal citations omitted); *see also* UNITED STATES COPYRIGHT OFFICE, *Copyright Protections for Publishers* (June 2022), *available at* https://www.copyright.gov/policy/publishersprotections/202206-Publishers-Protections-Study.pdf, at 30 ("One fundamental constraint on publishers' ability to prevent reuse of their news content is that facts and ideas are not copyrightable."). While the creative expression in a compilation of facts may be copyrightable, "[n]o matter how original the format, however, the facts themselves do not become original through association." *Id.* at 349. Likewise, "[l]ike *scenes a faire*, individual words and short phrases are generally not protected because they lack the requisite originality". *Prunte*, 699 F. Supp. 2d at 23; *see also Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) (phrases that "enjoy[] a robust existence in the public domain" are not protectible). Moreover, "[w]here there are only a few, limited ways of expressing an idea, the merger doctrine bars protection for the expression in order to avoid giving a backdoor monopoly in the idea itself." *Copyright Protections for Publishers*, at 33.

Applying the foregoing framework, although Plaintiff has alleged that there is "substantial similarity between the protectable material in the Plaintiff's work and the infringing nature of the Defendant's work" (Complaint, ¶ 24)—a legal conclusion that this Court need not, and should not, accept—Plaintiff's comparison between Plaintiff's October Articles and Defendant's Commentaries set forth in the Complaint itself (*see* ¶¶ 25, 27, 29, 30), as well as an independent comparison of the actual works appended to the Complaint, demonstrates the opposite. *See ICC*

*Evaluation Serv., LLC*, 2020 U.S. Dist. LEXIS 67783, at *11 (noting that a court is not bound to accept legal conclusions on a motion to dismiss). More specifically, a comparison of Plaintiff's October Articles and Defendant's Commentaries—a nine page article versus a two paragraph, 224 word commentary and a seven page article versus a three paragraph, 316 word commentary— reveals only similarities in the underlying facts, and common verbiage within the financial industry (e.g., verticals, latitude, etc.). In other words, the only similarities between Plaintiff's October Articles and Defendant's Commentaries are similarities in elements that are unprotectible, and not original to Plaintiff. Therefore, Plaintiff's claim for direct copyright infringement must fail. *See, e.g., Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390 (D.D.C. 2015) (granting motion to dismiss, finding that the complaint failed to state a cognizable claim, given that the only similarity between the works, both of which were appended to the complaint, were a common word in the titles and the use of the phrase "keys to the kingdom"); *see also Nelson v. PRN Prods., Inc.*, 873 F.2d 1141 (8th Cir. 1989) (affirming district court decision granting motion to dismiss based on the finding that there was a lack of substantial similarity as a matter of law); *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (affirming dismissal, finding that "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Evans v. McCoy-Harris*, No. CV 17-8345-DMG (AGRx), 2019 U.S. Dist. LEXIS 78828, at *13 (C.D. Cal. May 9, 2019) (granting motion to dismiss, finding that, although there were "unprotectable similarities" between the works, the plaintiff had not plausibly alleged "any substantial, protectable similarities"); and *Walker v. Kemp*, No. 2:21-0528-KSM, 2022 U.S. Dist. LEXIS 35373 (E.D. Pa. Feb. 28, 2022) (granting motion to dismiss, finding a lack of substantial similarity of protectible elements).

**b.** *__Plaintiff's Claim for Direct Infringement Must Fail Due to Fair Use__*

Alternatively, to the extent that the Court were to find infringement, Plaintiff's direct copyright infringement claim must fail because any use of Plaintiff's October Articles by Defendant qualifies as a fair use, as further set forth below. While there is some conflicting authority regarding the appropriate time to assess fair use,[1] "[i]n the copyright realm, fair use is an affirmative defense that can support Rule 12(b)(6) dismissal." *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (collecting cases). In fact, the Fifth Circuit has noted:

> Indeed, the leading treatise on fair use observes that '[i]ncreasingly, courts have considered fair use on a [R]ule 12(b)(6) motion to dismiss for failure to state a claim.' William F. Patry, Patry On Fair Use § 7:5 & n.10 (2017) (citing more than 25 cases that have evaluated fair use at the Rule 12 stage). . .While the fair use defense is usually teed up at summary judgment, we can resolve it on the pleadings if the complaint contains 'facts sufficient to evaluate each of the statutory factors.' . . . as with other affirmative defenses, if the complaint sets forth all the ingredients of a successful fair-use defense, discovery is unnecessary. . . And delayed recognition that the plaintiff cannot plausibly recover prevents dismissal 'at the point of minimum expenditure of time and money by the parties and the court.'

*Id.* at 320. The question turns on whether a successful fair use defense appears on the face of the operative complaint. *Id.* at 321.[2] Alternatively, to the extent that the Court found that fair use, as an affirmative defense, does not lend itself to decision on a motion to dismiss, the Court has the power to convert Defendant's Motion to a motion for summary judgment. *See Brownmark Films,*

---

[1] For example, in *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295 (D.D.C. 2017), the Court noted that "fair use is not traditionally decided on a motion to dismiss", and cited several cases; however, *Nichols* does not stand for the proposition that fair use cannot be decided on a motion to dismiss, especially here, where the question of fair use can be decided based upon the facts alleged in the Complaint.

[2] Here, the argument for addressing fair use is even stronger because not only is fair use evident from Plaintiff's allegations in its Complaint, but also, Plaintiff actually addresses fair use in the Complaint itself. *See* Complaint, ¶ 32. In the Complaint, Plaintiff cites to *Wainwright Sec., Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 95-96 (2d Cir. 1977) for the holding that "the summarization of a copyright holder's financial reports is not protected by the fair use doctrine and constitutes copyright infringement". Not only is *Wainwright* factually distinguishable, but also it does not—as Plaintiff appears to suggest—in fact hold that the summarization of financial reports can never be a fair use. Moreover, it is unclear why Plaintiff cites to a singular case from forty-five (45) years ago when there are a plethora of more recent cases assessing fair use, including those set forth herein.

*LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (electing to treat motion to dismiss as a motion for summary judgment, and affirming dismissal on fair use defense).

Regardless of the procedural posture, fair use is "an equitable rule of reason" that must be determined on a case-by-case basis. *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 600 (1985). The application of the fair use defense "serves to accommodate the competing interests of copyright and the First Amendment." *Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554, 560 (1981). In ascertaining whether or not the defense—which provides that the "use of a copyrighted work. . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright"—is applicable, a court assesses the following four, non-exclusive factors, each of which will be addressed in turn *infra*:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *see also Harper & Row*, 471 U.S at 600.

### i.   *Defendant's Use Serves a Compelling Public Purpose*

In assessing the first fair use factor (i.e., the purpose and character of the use and whether it is commercial or not for profit), courts "may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like, see § 107." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). The central inquiry is whether the new work is "transformative"—whether it adds new meaning, is for a different

purpose, etc.—and "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

As noted in the Complaint itself, Plaintiff is "an investigative news and analysis company", and the release of its reports "will often affect the price of publicly traded stocks. . .in a matter of minutes", and its reporting "has market impact". Complaint, ¶¶ 2, 20. On the other hand, Market Securities is a financial services broker, which provides a "wide range of cross-asset execution and advisory solutions to institutional clients including Banks, Asset Managers, Hedge Funds and sell-side firms." Complaint, ¶ 3. As a registered brokerage firm, Market Securities is subject to FINRA regulations,[3] as well as those promulgated by the SEC. Such regulations require Market Securities to, among other things, timely disclose material information relating to investments to its customers and potential investors.[4] Market Securities' failure to comply with the foregoing obligations could subject it to liability, and serious penalties. *See, e.g.*, FINRA, *Sanction Guidelines* (October 2021), *available at* https://www.finra.org/sites/default/files/Sanctions_Guidelines.pdf, p. 88.

---

[3] *See* https://brokercheck.finra.org/firm/summary/283701.

[4] *See, e.g.*, 17 CFR § 240.10b-5 (making it unlawful for any person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of any security); *Obligations to Your Customers*, FINRA, https://www.finra.org/registration-exams-ce/manage-your-career/obligations-your-customers (last visited July 12, 2022) (requiring disclosure of material information about investments, and that under certain circumstances, may constitute fraud); *2010. Standards of Commercial Honor and Principles of Trade*, FINRA, https://www.finra.org/rules-guidance/rulebooks/finra-rules/2010#the-rule (last visited July 12, 2022); 2020. Use of Manipulative, Deceptive or Other Fraudulent Devices, FINRA, https://www.finra.org/rules-guidance/rulebooks/finra-rules/2020#the-rule (last visited July 12, 2022). While the fact that Market Securities is registered with FINRA and its obligations pursuant to FINRA and SEC regulations are not mentioned in the Complaint, the Court is able to take judicial notice of the same. *See Newborn*, 391 F. Supp. 2d 181 (noting that on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice."); *Kaempe v. Myers*, 361 U.S. App. D.C. 335, 367 F.3d 958 (2004) (noting that the Court may take judicial notice of public records on a motion to dismiss); *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012) ("a court may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty"); *DiLorenzo v. Norton*, Civil Action No. 07-144 (RJL), 2009 U.S. Dist. LEXIS 66862 (D.D.C. July 31, 2009) (taking judicial notice of SEC filings on a motion to dismiss).

Like Bloomberg, the defendant in *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 742 F.3d 17 (2d Cir. 2014), Market Securities publishes business and financial information,[5] and its opinion thereon. *Id.* In *Swatch Grp. Mgmt. Servs.*, wherein the Second Circuit affirmed the district court's finding of fair use, the Court found that the first factor favored fair use, given that Bloomberg's purpose "was to make important financial information. . .available to American investors and analysts"; information that was of "critical importance to the American securities markets". *Id.* at 18. In fact, Bloomberg noted that the SEC mandates that it disclose such material, nonpublic information. Thus, the Court found that, at the very least, Bloomberg's use of the copyrighted material served a public purpose that was akin to news reporting. Here, not only is Market Securities subject to the same SEC regulations, but also those of FINRA. In publishing Defendant's Commentaries, Defendant not only sought to disseminate, but was ***obligated*** to disseminate, pertinent financial information affecting the American securities market and its clients' investment decisions.[6] Thus, the public purpose and importance of Market Securities' purported use of Plaintiff's October Articles in maintaining the integrity of the stock market and avoiding information asymmetries [7] —which is vastly different from Plaintiff's purpose of reporting information to a finite number of users for their own competitive advantage—cannot reasonably be questioned and thus, this factor weighs in favor of fair use. *See Swatch Grp. Mgmt.*

---

[5] Unlike Bloomberg (and Plaintiff, which is an "investigative news and legal analysis company", Complaint, ¶ 14), however, Defendant is not itself a publisher, but instead a brokerage firm that provides "execution and advisory solutions" (Complaint, ¶ 21). Thus, its purpose in publishing business and financial information is purely to educate and advise its customers on pertinent information materially affecting the purchase and sale of securities.

[6] As noted above, by Plaintiff's own admission, Plaintiff's reports, including Plaintiff's October Articles have market impact upon publication (Complaint, ¶¶ 2, 20) and thus, the public unquestionably has an interest in obtaining such information in order to, among other things, understand changes in the movement of the securities market.

[7] In promulgating and enforcing its regulations, the SEC has acknowledged that reducing information asymmetries, which it characterizes as market failures, is a key goal. *See, e.g.,* Mark J. Flannery, *Economic Analysis: Providing Insight to Advance the Missions of the SEC and the PCAOB*, Public Company Accounting Oversight Board's Center for Economic Analysis 2015 Conference on Auditing and Capital Markets (Oct. 22, 2015), *available at* https://www.sec.gov/news/speech/keynote-address-pcaob-missions-of-sec-and-pcaob.html#_ftnref3; and Final Rule: Selective Disclosure and Insider Trading, Exchange Act Release Nos. 33-7881, 34-43154, IC-24599, File No. S7-31-99 (Oct. 23, 2000).

*Servs.*, 742 F.3d 17; *see also Am. Soc'y for Testing & Materials v. Pub. Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018)).

ii.     *Plaintiff's October Articles Are Factual Works*

With respect to the second fair use factor (i.e., the nature of the copyrighted work), "[c]ourts often reduce this inquiry to the question of whether the work is factual or fictional, as '[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.'" *Am. Soc'y for Testing & Materials*, 896 F.3d at 451 , citing *Harper & Row*, 471 U.S. at 563. It cannot reasonably be contested that Plaintiff's October Articles are factual works, and thus, this factor likewise favors a finding of fair use. *See Swatch Grp. Mgmt.*, 742 F.3d 17 (finding second factor favored fair use when plaintiff's work at issue was "manifestly factual" in character, and entitled to thin copyright protection); *see generally* Complaint, Ex. A.

iii.     *Defendant Took, if Anything, Only What Was Necessary to Fulfill Its Purpose*

The third fair use factor calls on courts to "to examine the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Harper & Row*, 471 U.S. at 564. "[T]his factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Campbell*, 510 U.S. at 587. Such an analysis, however, must not occur in a vacuum, but instead, the extent of permissible copying must be considered in relation to the purpose of such copying. *See Am. Soc'y for Testing & Materials*, 896 F.3d at 451. As noted above, one of Plaintiff's October Articles is a nine page article, whereas Defendant's Commentary is a two paragraph, 224 word blurb, and the other of Plaintiff's October Articles is a seven page article, whereas Defendant's Commentary is a three paragraph, 316 word commentary. Defendant only took, if anything, what was necessary to fulfill its purpose of informing its clients about important financial information pertaining to the stock market, including information relating to

the rationale, or potential rationale, behind material moves in stocks that could inform its clients'

trading decisions. More specifically, the only things arguably "taken" by Defendant were

unprotectible facts reported by Plaintiff, which Defendant paraphrased or summarized, certain

prevalent words or short phrases, and in some instances the ordering of some facts, which was

largely dictated by the facts themselves or the chronology of the events reported. *See* Complaint,

¶¶ 25, 27, 29, 30; *compare* Ex. A to B. As largely factual reports, Plaintiff's October's Articles

have no real expressive "core" or "heart" that was taken by Defendant, but instead, Defendant

"took" what was necessary to convey the pertinent information set forth in Plaintiff's October

Articles to its consumers. *See Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1263 (2d Cir. 1986)

(in weighing this factor, the Court found that this factor weighed in favor of defendants in part

because it could not be said that the defendants took the heart of plaintiff's work, which had "no

identifiable core that could be appropriated."). Thus, this factor weighs in favor of a finding of fair

use. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1205 (2021) ("[t]he "substantiality"

factor will generally weigh in favor of fair use where, as here, the amount of copying was tethered

to a valid, and transformative, purpose.").

> iv.   *Defendant's Commentaries Do Not Supplant the Market for Plaintiff's*
> *October Articles*

As for the fourth factor, "[i]t requires courts to consider not only the extent of market harm

caused by the particular actions of the alleged infringer, but also 'whether unrestricted and

widespread conduct of the sort engaged in by the defendant . . . would result in a substantially

adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (internal

citations omitted).

Here, Plaintiff alleges that its reports, including Plaintiff's October Articles, are available

only to paid subscribers, who value such reports because they "will often affect the price of

publicly traded stocks—and will do so in a matter of minutes". *See* Complaint, ¶ 2. It further asserts that "Capitol Forum's reporting has market impact. It is therefore important to Capitol Forum that the distribution of its reports be limited to its authorized recipients, as distribution of the information to non-authorized recipients would reduce the value of the information to its subscribers." Complaint, ¶ 20. Taken together, these allegations suggest that Plaintiff intends for the market for Plaintiff's October Articles to be a select number of paid users, who desire to obtain market information sooner than others. On the other hand, Defendant is contacted by its clients, and other members of the public, in an effort to understand the reason behind market fluctuations—fluctuations that have occurred shortly after the release of Plaintiff's October Articles. In other words, those receiving Defendant's Commentaries are receiving the same ***after*** Plaintiff's paid subscribers—and after Plaintiff's paid subscribers have received the value inherent in their subscription (i.e., the receipt of information that has market impact within minutes, prior to the rest of the market).

Moreover, as discussed *supra* (*see* footnote 5), Plaintiff—a news publisher (Complaint, ¶14)—and Defendant—a brokerage firm (Complaint, ¶ 21), are not in competition. Unlike Plaintiff, Defendant reaps profit from its execution services involving the trading of stocks, not its publication of information or articles, including Defendant's Commentaries. *See Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F. 3d. 876, 904-905 (2d. Cir. 2011). Thus, Defendant's Commentaries do not supplant the market for Plaintiff's October Articles. Further, "a [f]irm's ability to make news—by issuing a [report] that is likely to affect the market price of a security—does not give rise to a right for it to control who breaks that news and how." *Swatch Grp. Mgmt.*, 742 F.3d 17, 35 (balancing the public benefit of the use against any royalties lost, and finding the fourth factor favored fair use), citing *Barclays Capital Inc.*, 650 F. 3d. at 907; *see also Fogerty v.*

14

*Fantasy, Inc.*, 510 U.S. 517, 526-527 (1994) (noting that the ultimate goal of copyright law is striking the appropriate balance that serves the public interest). Consequently, on balance, it is clear that Defendant's purported use of Plaintiff's October Articles should be considered fair, and as such, Plaintiff's claim for direct copyright infringement must fail.

### C.  Count II (Contributory Copyright Infringement) Must Be Dismissed

"In order to establish a claim of contributory copyright infringement, the plaintiff must allege '(1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities.'" *Newborn*, 391 F. Supp. 2d at 186 (internal citations omitted). To satisfy prong one (i.e., direct infringement by a third party), "a plaintiff must establish '(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright.'" *Id.* With respect to the fourth element, a plaintiff "must show that a third party infringed its copyrights by violating [its] exclusive rights under 17 U.S.C. § 106, including reproduction, preparation of derivative works, [public] distribution, or public display." *Am. Soc'y for Testing & Materials v. Pub. Resource.Org, Inc.*, No. 13-cv-1215 (TSC), 2017 U.S. Dist. LEXIS 14623, at *65 (D.D.C. Feb. 2, 2017).

As a threshold matter, like Plaintiff's claim for direct infringement, Plaintiff's claim for contributory infringement fails due to Plaintiff's failure to adequately identify the factual circumstances giving rise to any such claim, including the specific works at issue. *See* Section II(B)(a)((ii) above; *Newborn*, 391 F. Supp. 2d at 186; *see also DBW Partners, LLC v. Bloomberg, L.P.*, Civil Action No. 19-311 (RBW), 2019 U.S. Dist. LEXIS 195725, at *12 (D.D.C. Nov. 12, 2019) ("Because Capitol Forum's Complaint fails to identify what underlying works are being infringed—either by Bloomberg, or by third parties—for the same reasons that Capitol Forum's

direct copyright infringement claim fails, the Court finds that Capitol Forum's contributory copyright claim necessarily fails as well.").

Further, Plaintiff has failed to adequately allege direct infringement by a third party. In Plaintiff's Complaint, Plaintiff has merely alleged that one or more third parties have "transmit[ted] the Capitol Forum publications" to another party (i.e., Defendant). Complaint, ¶ 45; *see also* ¶ 22. Yet it remains abundantly unclear: 1) what exclusive rights provided under 17 U.S.C. § 106,[8] if any, any such third party (or parties) violated by virtue of the alleged "transmission" of Plaintiff's October Articles (and/or other works) to Defendant; and 2) what act(s) were purportedly committed by these third parties (i.e., an oral communication, an email, etc.). In fact, under 17 U.S.C. § 106(3), a copyright holder only has the exclusive right "to distribute copies or phonorecords of the copyrighted work ***to the public*** by sale or other transfer of ownership, or by rental, lease, or lending" (emphasis added). Although there is some conflicting authority on what qualifies as distribution, according to *Nimmer on Copyright*, it signifies a ***general publication*** of a "tangible embodiment". § 8.11 (C)(1)(b). In a similar vein, an "oral rendition of a work does not constitute a reproduction thereof". *Id.* at § 8.02 (B)(1). In order to impede on the reproduction right, a defendant must create a copy of the plaintiff's work in a "material object". *Id.* From Plaintiff's Complaint, it is entirely unclear how unidentified third parties committed any violation of Plaintiff's rights by purportedly "transmitting" one or more of Plaintiff's works privately to Defendant via an unidentified method of communication. Thus, Plaintiff's Complaint wholly fails to plausibly state a claim for contributory infringement.[9] *See Ashcroft*, 556 U.S. at 678  (noting

---

[8] 17 U.S.C. § 106 solely provides a copyright holder with the following exclusive rights: reproduction, the preparation of derivative works, of public distribution, public performance, public performance, and digital audio transmission (in the case of sound recordings). The only potential rights that could plausibly be implicated here are the rights of public distribution and reproduction, which is why these are the only rights addressed herein.

[9] Given Plaintiff's utter failure to adequately allege direct infringement by a third party (or third parties), Plaintiff need not analyze the other elements necessary for a contributory infringement claim herein. *See DBW Partners, LLC*, 2019 U.S. Dist. LEXIS 195725, at *12; *see also Spinelli v. NFL*, 903 F.3d 185 (2d Cir. 2018) ("Without a showing of a

that "[t[he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully")[10]; *see also, e.g., McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594 (S.D.N.Y. 2020) (dismissing contributory infringement claim, finding that the amended complaint failed to allege sufficient facts supporting any such claim, and merely recited conclusory language).

### D. Count III (Misappropriation of Proprietary Information) Must Be Dismissed

At the outset, should the Court dismiss Plaintiff's claims for direct and contributory copyright infringement, it should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for misappropriation. "Whether to retain jurisdiction over pendent state and common law claims after the dismissal of the federal claims is 'a matter left to the sound discretion of the district court'". *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (2005). This being said, "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*, citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). In a similar

---

direct copyright infringement, secondary liability cannot be maintained."), citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Notwithstanding the foregoing, Plaintiff's allegations that Defendant allegedly "induced" any direct infringement (*see* Complaint, ¶¶ 5, 22, 45, 46) are self-serving and lack any factual predicate. The nature of Defendant's business is such that clients or third parties come to it for advice, and that a client or third party shared information with Defendant does not amount to inducement. Plaintiff's Complaint is simply devoid of any factual "[e]vidence of 'active steps taken to encourage direct infringement'". *MGM Studios Inc.*, 545 U.S. at 936 (internal citation omitted). In a similar vein, Plaintiff's allegations regarding Defendant's purported knowledge that any third party's actions constituted infringement (for example, that "Defendant had actual or constructive knowledge of the infringement by one or more third party recipients" Complaint, ¶ 46) are conclusory, and based solely on pure conjecture. *See, e.g., Dress Barn, Inc. v. Klauber Bros.*, No. 18cv8085(DLC), 2019 U.S. Dist. LEXIS 68869, at *13 (S.D.N.Y. Apr. 22, 2019) (finding allegations that the counterdefendants committed copyright infringement with actual or constructive knowledge of the plaintiff's rights amounted to "a threadbare recitation of the legal requirement [for contributory infringement] that is inadequate to plausibly allege. . .knowledge").
[10] In addition, Plaintiff's allegations regarding its users' "derogation of the clear copyright notice on each Capitol Forum" publication have little bearing here, other than arguably relating to such users' intent and/or knowledge. *See* Complaint, ¶ 22; *see also* ¶¶ 3, 17. To the extent that any of Plaintiff's users violated or breached the terms of any subscription agreement or the like, any such violation would sound in contract, not copyright law. *See* 3 Nimmer on Copyright § 10.15.

copyright litigation brought by Plaintiff against another defendant, after dismissing Plaintiff's federal claims, the Court dismissed Plaintiff's remaining claim for misappropriation, finding that:

> the remaining claim involves the question of whether the District of Columbia should recognize a tort for 'hot news' misappropriation under District of Columbia law. This Court finds no reason to adjudicate a claim exclusively involving the construction and application of District of Columbia law absent any particular interest favoring the exercise of its jurisdiction. There being none, the Court therefore declines to exercise supplemental jurisdiction and will dismiss Capitol Forum's misappropriation claim without prejudice.

*DBW Partners, LLC*, Civil Action No. 19-311 (RBW), 2019 U.S. Dist. LEXIS 195725, at *12. The very same rationale is applicable here, and to the extent that this Court dismisses Plaintiff's federal claims, it should likewise decline to exercise supplemental jurisdiction over Plaintiff's remaining claim.

While Plaintiff entitles Count III "Misappropriation of Proprietary Information", Count III is, as noted in Paragraph 56 of the Complaint,[11] a claim for hot news misappropriation—a cause of action that has not yet been recognized in D.C. *See* Kimberley Isbell, *The Rise of the News Aggregator: Legal Implications and Best Practices*, Berkman Center Research Publication No. 2010-10 (August 30, 2010), *available at* http://dx.doi.org/10.2139/ssrn.1670339 (noting that only five states have recognized hot news misappropriation, and D.C. is not one of them); *see also Copyright Protections for Publishers*, at 47-48 (noting that most courts faced with hot news misappropriation claims "have found them to be either preempted or insufficiently proven"). Thus, the utter lack of authority to support Plaintiff's misappropriation claim under D.C. law subjects said claim to dismissal. *See, e.g., Allure Jewelers, Inc. v. Ulu*, No. 1:12cv91, 2012 U.S. Dist. LEXIS 134440 (S.D. Ohio Sep. 20, 2012) (noting that any federal common law claim for misappropriation has been abolished, thereby leaving it up to the states; and finding that the

---

[11] "As a consequence of Defendant's ***misappropriation of hot news*** . . ." (emphasis added).

plaintiff had failed to state a claim for common law misappropriation, given that under the relevant state law, there was no support for a "hot news" misappropriation claim); *Scrappost, LLC v. Peony Online, Inc.,* No. 14-14761, 2017 U.S. Dist. LEXIS 24404, at *19 (E.D. Mich. Feb. 22, 2017) (finding that the failure to identify any authority to support a "hot news" misappropriation claim under the relevant state law could subject the claim to dismissal on that basis alone).

Nonetheless, those states that have recognized any such state claim, have held that "only a narrow 'hot-news' misappropriation claim survives preemption for actions concerning material within the realm of copyright" and that much of state misappropriation law is otherwise preempted.[12] *NBA v. Motorola, Inc.*, 105 F.3d 841, 852 (2d Cir. 1997). More specifically,

> Hot news claims are 'limited to cases where: (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free-riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

*MLGenius Holdings LLC v. Google LLC*, No. 20-3113, 2022 U.S. App. LEXIS 6206, at *15 (2d Cir. Mar. 10, 2022), citing *NBA*, 105 F.3d at 845. Even if D.C. were to recognize hot news misappropriation (which again, it has not), Plaintiff's claim would fail for the reasons detailed below.

Although Plaintiff has alleged that its business model is built on "timeliness" (Complaint, ¶ 14), much of the information set forth in Plaintiff's reports appended to the Complaint (i.e., Plaintiff's October Articles) consists of facts spanning an array of time periods. *See* Complaint,

---

[12] In the D.C. Circuit, state law has been held to be preempted when it relates "to the type of work protected by copyright law" and is "equivalent to any of the exclusive rights protected by the Copyright Act". *Ass'n of Am. Med. Colls. v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 22 (D.D.C. 2004). In order to survive preemption, there must be "an extra element" that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim". *Id.* The Second Circuit, which recognizes a very narrow version of hot news misappropriation under New York law likewise employs an "extra elements" test. *See Barclays Capital Inc.,* 650 F.3d at 893.

Ex. A. Thus, it is unclear that the information set forth in Plaintiff's October Articles (or other reports)—rather than the reports themselves, which spur market activity (Complaint, ¶ 2)—is time-sensitive. *See MLGenius Holdings LLC,* 2022 U.S. App. LEXIS 6206, at *15 (noting that the issue is not whether the plaintiff's "business model depends on timeliness; it is whether the allegedly misappropriated information is time-sensitive in nature"). Specifically, the "'hot' news doctrine is concerned with the copying and publication of information gathered by another before he has been able to utilize his competitive edge." *Fin. Info., Inc. v. Moody's Inv'rs Serv.*, 808 F.2d 204 (2d Cir. 1986). Yet, here, as Plaintiff denotes in the Complaint, the inherent value of Plaintiff's reports, including Plaintiff's October Articles, is the "timeliness with which that analysis reaches its subscribers"'. Complaint, ¶ 14. While Defendant released Defendant's Commentaries on the same day as Plaintiff's October Articles, it is clear that Defendant's Commentaries were released after Plaintiff's October Articles, and presumably after any market impact had occurred, and thus, Plaintiff was not plausibly deprived of any "competitive edge".

Moreover, Market Securities is not "free-riding" on Plaintiff's efforts nor is it "at all clear that profit is being in any substantial sense 'diverted' to [Market Securities]" by its publication of Defendant's Commentaries. *Barclays Capital Inc.*, 650 F.3d at 904. This case is akin to *Barclays Capital*, which involved the defendant's collection and dissemination of the summary recommendations set forth in the plaintiffs' reports to its own subscribers, wherein the Court found that the defendant was not "free-riding", but instead:

> [i]t is collecting, collating and disseminating factual information — the *facts* that [the plaintiffs] and others in the securities business have made recommendations with respect to the value of and the wisdom of purchasing or selling securities — and attributing the information to its source. The [plaintiffs] are making the news; [defendant], despite the [plaintiffs'] understandable desire to protect their business model, is breaking it.

*Id.* at 902 (emphasis in original). The Court then concluded that the plaintiffs' "ability to make news. . .that is likely to affect the market price of a security – does not give rise to a right for it to control who breaks that news and how." *Id.* at 907. Like in *Barclays Capital Inc.*, Market Securities did not repackage Plaintiff's October Articles (or any other works) and sell them as its own, but instead, disseminated some of the facts reported by Plaintiff, and specifically attributed Plaintiff. *See* Complaint, Ex. B. Consequently, to the extent D.C. were to recognize hot news misappropriation (which it has not done), it is clear that no such claim exists under the facts of this case, and thus, Plaintiff's misappropriation claim is preempted. *See Barclays Capital Inc.*, 650 F.3d, at 902, 905 (finding that case did not fall within narrowness of the hot news tort exception since defendant was not "free-riding" and the defendant's actions could not reasonably be construed to interfere with plaintiffs' "legitimate business at the point where profit is to be reaped"; therefore, plaintiffs' misappropriation claim was thereby preempted by the Copyright Act); *see also Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491 (D. Md. 2010) (finding that the factual allegations in plaintiff's complaint could not constitute a legitimate cause of action for hot news misappropriation, which was preempted because plaintiffs' investment recommendations are subject to protection under federal copyright law and as such, cannot be protected under the hot news misappropriation theory).

Further, regardless of whether D.C. recognizes the narrow hot news misappropriation exception, based on the allegations of the Complaint (e.g., Paragraph 54 wherein Plaintiff alleges that Defendant's alleged actions that constitute misappropriation are the "practice of copying and distributing the content of Capitol Forum's reports"), it is clear that Plaintiff's misappropriation claim is based on the alleged infringement of Plaintiff's copyright rights or equivalent rights, and is thereby preempted. *See Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 53 (D.D.C.

1999) (finding certain of plaintiff's common law claims to be preempted by the Copyright Act, and specifically holding that plaintiff's "allegation that defendants improperly distributed and disseminated his work clearly is preempted by the Copyright Act, since unauthorized distribution of a copyrighted work is explicitly covered by the Copyright Act." ). Consequently, Count III of the Complaint, like Counts I and II, should be dismissed with prejudice. *See, e.g., Corp. Sys. Res. v. Wash. Metro. Area Transit Auth.*, 31 F. Supp. 3d 124 (D.D.C. 2014) (wherein Your Honor dismissed a case with prejudice because amendment would be futile since any amended pleading would not survive a motion to dismiss).

### III.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint, in its entirety, with prejudice and grant such other relief as is just and appropriate.

Dated: July 15, 2022

Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:    S/ *Kerry B. Brownlee*
        Kerry B. Brownlee
        NY Bar No. 5309075
        kbrownlee@ipcounselors.com
        Jason M. Drangel (JD 7204)
        NY Bar No. 2538981
        jdrangel@ipcounselors.com
        60 East 42nd Street, Suite 1250
        New York, NY 10165
        Telephone: (212) 292-5390
        Facsimile: (212) 292-5391
        *Attorneys for Defendant*
        *Market Securities, LLC*
        *PRO HAC VICE*

**COPYRIGHT COUNSELORS, LLC**

BY:    S/ *John D. Mason*
        John D. Mason
        DC Bar No. 464072
        7315 Wisconsin Ave.

22

Suite 400 West
Bethesda, MD 20814
Telephone: (888) 313-3637
Facsimile: (301) 760-7032
jmason@copyrightcounselors.com
*Attorney for Defendant*
*Market Securities, LLC*