**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **DBW PARTNERS, L.L.C.** | : | |
| **d/b/a THE CAPITOL FORUM,** | : | |
| | : | |
| | : | **Civil Action No. 22-1333** |
| | : | **(BAH)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **MARKET SECURITIES, L.L.C.** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

_____

**CAPITOL FORUM'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

JOHN B. WILLIAMS
 (DC Bar #257667)
WILLIAMS LOPATTO PLLC
1629 K Street, N.W., Suite 300
Washington, DC 20006
Tel.: (202) 277-8435
jbwilliams@williamslopatto.com

Counsel for Plaintiff

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION…………………………………………………………………….... 1

II.    STATEMENT OF FACTS ……………………………….........................................….3

III.   THE DIRECT INFRINGEMENT CLAIM IS PROPERLY PLED……....…………….....6

IV.   MARKET SECURITIES' "FAIR USE" ARGUMENT HAS BEEN

       REPEATEDLY REJECTED ……………………………………………..………....8

           A.  The Purpose and Character of the Use.....................................................................9

           B.  The Nature of the Work: Facts or Analysis...........................................................12

           C.  The Amount and Substantiality of the Work Used……………………………...…12

           D.  The Effect on the Market……………………………………………..………...13

V.    THE CONTRIBUTORY INFRINGEMENT CLAIM IS PROPERLY PLED…………….....15

VI.   THE MISAPPROPRIATION CLAIM SEEKS TO PROTECT CAPITOL FORUM'S NEWS

       REPORTING—AND THEREFORE NOT PREEMPTED………………………………....18

VII.  THE MISAPPROPRIATION CLAIM IS PROPERLY PLED…………………………….20

           A.  The complaint properly alleges the copying of time sensitive facts……………...21

           B.  Free riding exists regardless of attribution………………………………...….. 22

VIII. THE HOT NEWS DOCTRINE IS NECESSARY TO PREVENT FREE-RIDING

       AND ENCOURAGE QUALITY JOURNALISM……………………………………….24

IX.   CONCLUSION……………………………………………………………...26

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                          <u>PAGE</u>

*American Society for Testing & Materials v. Public Resource.Org,*
    896 F.3d. 437, 449 (D.C. Cir. 2018)…………………………………………...10,14,16

*Associated Press v. All Headline News Corp.,*
    608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009)…………………………………………..19

*BanxCorp v. Costco Wholesale Corp.,*
    723 F. Supp. 2d 596, 614 (S.D.N.Y. 2010)………………………………………...19

*\*Barclays Capital Inc. v. Theflyonthewall.com, Inc.,*
    650 F.3d 876 (2d Cir. 2011)…………………………………………………3,19,20,22,23

*Barcroft Media v. Coed Media Group, LLC,*
    297 F. Supp. 3d 339, 355 (S.D.N.Y. 2017)…………………………………………...15

*Barr v. Clinton,*
    370 F.3d 1196, 1199 (D.C. Cir. 2004)……………………………………..……......14

*Baxter v. MCA, Inc.,*
    812 F.2d 421, 423, 424 n.2 (9th Cir. 1987)…………………………..…………....8

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
    448 F.3d 605, 613 (2d Cir. 2006)…………………………………………………...15

*Brown v. Earthboard Sports USA, Inc.,*
    481 F.3d 901, 912 (6th Cir. 2007)…………………………………………………21

*\*Campbell v. Acuff Rose Music, Inc,*
    510 U.S. 569, at 579 (1994)………………………………………………10,12,13,14

*Conley v. Gibson,*
    355 U.S. 41, 45-46 (1957)……………………………………………………..…...14

*DBW Partners, LLC v. Bloomberg, L.P.,*
    Civil Action No. 19-311 (RBW), 2019 U.S. Dist. LEXIS 195725, at
    \*12 (D.D.C. Nov. 12, 2019)…………………………………………………………16

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.,*

No. 14-cv-131, 2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014), report and
recommendation adopted, No. 14-cv-131, 2014 WL 5002092
(S.D.N.Y. Oct. 7, 2014)………………………………………………………………….25

*Famolare Inc. v. Melville Corp.*,
    472 F.Supp. 738 (D.Haw. 1979)………………………………………………………26

*Financial Information, Inc. v. Moody's Investors Service, Inc.* ("*FII*"),
    751 F.2d 501 (2d Cir.1984)…………………………………………………………...11,12

*GAI Audio of New York, Inc. v. Columbia Broad. Sys. Inc.*,
    27 Md. App. 172, 190 (Md. Ct. Spec. App. 1975)………………………….....…20,23

*Harper & Row v. Nation Enterprises*,
    471 U.S. 539, 557 (1985)……………………………………...…..…2,8,9,10,13

*Ibrahim v. Titan Corp.*,
    391 F. Supp. 2d 10, 17-18 (D.D.C. 2005)………………………………….…21

*Ideal Toy Corp. v. Kenner Prod. Div. of Gen. Mills Fun Grp., Inc.*,
    443 F. Supp. 291, 305 (S.D.N.Y. 1977)………………………………………23

*International News Service v. Associated Press*,
    248 U.S. 215 (1918)…………………………………………………...…22

*Kowal v. MCI Comm'ns Corp.*,
    16 F.3d 1271, 1276 (D.C. Cir. 1994)………………………………………………14

*Sid Marty Krofft Tele. v. McDonald's Corp*,
    562 F.2d at 1172……………………………………………………………….7

*Lupian v. Joseph Cory Holdings LLC*,
    905 F.3d 127, 130 (3d Cir. 2018)………………………………….............…21

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)………………………………………………..19,23

*Newborn v. Yahoo! Inc*,
    391 F. Supp. 2d 181 (D.D.C. 2005)……………………………………………...15,16

*New England Tel. & Tel. Co. v. National Merchandising Corp.*,
    141 N.E.2d 702 (Mass. 1957)…………………………………...……………26

*Nichols v. Club for Growth Action,*
   235 F. Supp. 3d 289 (D.D.C 2017)……………………………………………………..8

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,*
   166 F.3d 65 (2d Cir.1999)…………………………………………………..…………11

*McGucken v. Newsweek LLC,*
   464 F. Supp. 3d 594 (S.D.N.Y. 2020)……………………………..……………..18

*Padilla v. Yoo,*
   678 F.3d 748, 757 (9th Cir. 2012)……………………………………………………14

*Shaw v. Lindheim,*
   919 F.2d 1353, 1361-62 (9th Cir. 1990)…………………………………………..7

*Smith v. Jackson,*
   84 F.3d at 1218………………………………………………………..…7,8

*Sony Corp. of America v. Universal City Studios Inc.,*
   464 U.S. 417, 449 (1984)…………………………………………………...10

*\*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.,*
   742 F.3d 17 (2d Cir. 2014)……………………………………………2,8,10,11

*Three Boys Music Corp. v. Bolton,*
   212 F.3d 477, 481 (9th Cir. 2000)…………………………………………...7

*\*Wainwright Securities, Inc. v. Wall Street Transcript Corp.,*
   558 F.2d 91 (2d Cir.1977)………………………………………….....1,2,11,12

*X17, Inc. v. Lavandeira,*
   563 F. Supp. 2d 1102, 1107, 1108-09 (C.D. Cal. 2007)………………………19

## STATUTES AND RULES

17 U.S.C. § 107………………………………………………………………......9

17 U.S.C. § 107(4)……………………………………………………………14

17 U.S.C. § 106……………………………………………………………16,17

**<u>OTHER AUTHORITIES</u>**

Edmund J. Sease*, Misappropriation Is Seventy-Five Years Old; Should We Bury It or Revive It?*
    70 N.D. L. Rev. 781, 801 (1994)……………………………………………………...24

Lindsay G. Rabicoff, Comment, *The Hot News Misappropriation Doctrine: Confusion in the
Internet Age and the Call for Legislative Action*, 53 Jurimetrics J. 71–95 (2012)………………24

Plaintiff DBW Partners, LLC d/b/a The Capitol Forum ("Capitol Forum") respectfully files this brief in opposition to the motion of Market Securities, L.L.C. to dismiss this action filed on July 15, 2022.  *See* Dkt 15. (Defendant's Brief)

## I.    INTRODUCTION

For the better part of a year, Market Securities, a financial investment firm, has been illegally obtaining copies of Capitol Forum's copyrighted antitrust commentaries--and then immediately summarizing and redistributing them to its own clients.  Market Securities simply copies Capitol Forum's analyses, often in *verbatim form,* with no attempt to "transform" or add anything new to the Capitol Forum work.  It lifts the key observations and commentary and repackages them for its investor/clients.  This is a direct copyright violation:  Market Securities appropriates Capitol Forum's creative and protected content for its own commercial purposes.

In its motion to dismiss, Market Securities attempts to avoid liability by arguing that its summaries are not "substantially similar" to the Capitol Forum publications, and that in any event, its copying is protected by the "fair use" doctrine.  Neither argument has any validity.  A side-by-side comparison of the Capitol Forum publications and the Market Securities summaries (tellingly, Market Securities does not even attempt to compare the articles in its motion) shows not only that the two are "substantially similar," but in many cases are **identical**.  As for "fair use," Market Securities' argument defense has been rejected in a number of on-point financial analysis cases dating back to the Second Circuit's seminal decision in  *Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 (2d Cir.1977).[1]  Indeed, the principal case that

---

[1] Market Securities questions why Capitol Forum cites *Wainwright* in its complaint when "there are a plethora of most recent cases assessing fair use."  Brief at 8, note 2.  The reason is apparent from any review of the fair use cases, and particularly those involving the financial industry.

Market Securities relies upon for its fair use defense, *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 742 F.3d 17 (2d Cir. 2014), specifically noted its consistent "reject[ion] of fair use arguments pressed by defendants who purported to be serving the public by providing access to important financial information"—precisely the argument now pushed by Market Securities. *Id.,* at 29.  As the Second Circuit stated, this argument that it is somehow appropriate for financial firms to disseminate copyrighted material affecting the securities market would "distort proper fair use analysis." *Id.*

Market Securities obtains the Capitol Forum publications by inducing one or more of the Capitol Forum subscribers to illegally transmit those publications to it.  This is a contributory copyright violation.  Here, the defense is that the contributory infringement claim has not been properly pled.  According to Market Securities, Capitol Forum has not specifically identified which of its subscribers transmitted the copyrighted publications to Market Securities and has also failed to state precisely how the publications were transmitted—whether by email or orally. But this is a motion to dismiss and there is no requirement to identify the specific third party involved, or the means by which that infringement was accomplished.  Capitol Forum's obligation in this regard is to set forth a plausible claim for relief, which it has clearly done. There is no question that Market Securities has improperly obtained a copy of the Capitol Forum publications from one or more of its subscribers, as the Capitol Forum publications are sent only to authorized recipients, none of whom are permitted to forward them to Market Securities.

---

*Wainwright* is the seminal decision on the application of the fair use doctrine in the context of financial reporting and analysis.  It continues to be followed in the circuit and lower courts and was specifically cited by the Supreme Court in *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985): "The promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use "news report" of the book.  *See Wainwright Securities Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 (CA2 1977), *cert. denied,* 434 U.S. 1014 (1978)."

Further, there is no legitimate question that Market Securities obtained a *written* copy of the publications, as it has been able to provide extensive verbatim quotes of the Capitol Forum publications, and presents them in the same order.  The precise details underlying the contributory claim are a proper subject of discovery.

Capitol Forum's misappropriation claim has also been properly pled and is not preempted by the copyright laws.  The purpose and effect of the copyright laws is to protect creative expression, analysis, and commentary; and as Market Securities notes throughout its brief, the copyright laws do not protect factual reporting.  But factual reporting *is* protected by the "hot news' doctrine.  In *Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876 (2d Cir. 2011), the Second Circuit specifically stated that a hot news claim could lie when the plaintiff would collect and disseminate the facts and the defendant would "copy the facts." *Id*., at 906. That is precisely what occurred in this matter.  Market Securities copied Capitol Forum's creative work--protected by the copyright laws, as well as its factual reporting--protected by the misappropriation laws.

## II.     STATEMENT OF FACTS

Capitol Forum is a paid subscription service, offering in-depth analysis and commentary on regulatory and antitrust developments to its subscribers.  In discussing a potential corporate merger, for example, Capitol Forum's antitrust experts will address the competitive issues presented by the merger, assess how the merger partners might deal with those issues, and predict how the antitrust regulators may respond to the proposed merger.   Capitol Forum's analyses are widely respected in the industry, and provide significant value to its base of subscribers, most of whom are financial investors.

Market Securities is a brokerage firm, and it distributes periodic summaries on the same type of regulatory issues to its clients—who are also financial investors.  But unlike Capitol Forum, Market Securities does not undertake its own analysis.  Instead, it (improperly) obtains the Capitol Forum publications without the required license, copies the Capitol Forum analyses in a brief synopsis, and sends them out to its investor clients.  Much of its copying involves *verbatim quotes* from the Capitol Forum material.

At the outset, it is important to address Market Securities' arguments that Capitol Forum has failed to demonstrate any substantial similarity of protectible elements, and that the only similarities between the copyrighted works and the defendant's summaries involve the reporting of unprotectible facts.  Defendant's Brief (Brief) at 5-7, and 12.  These assertions are made in conclusory fashion, to the extent that Market Securities makes no attempt whatsoever to compare the actual texts of the copyrighted publications with the text of its summaries—an analysis critical to any substantial similarity dispute—and an analysis demonstrating that Market Securities was directly copying not only Capitol Forum's factual reporting, but also its analysis and commentary on those antitrust developments.

The complaint carefully separates Capitol Forum's factual reporting from its protected commentary and analysis.  For example, paragraphs 29 and 30 discuss an October 25, 2020, publication in which Capitol Forum reported on an antitrust investigation into the effect of a proposed merger in the Camden, Arkansas labor market.  It reported that: (1) the staff of the Federal Trade Commission was reviewing employment data to determine whether there might be an effect on competition in the area; (2) the staff had begun to take depositions; and (3) the FTC Bureau of Economics had requested industry data.  Paragraph 29 sets forth only the facts that

4

were contained in the Market Securities summary, and no claim is made that the reporting of these facts contains protectible elements under the Copyright Act.[2]

But paragraph 30 contains an inventory of the protected elements that Market Securities copied, including Capitol Forum's analysis of, and commentary on, the important aspects of the antitrust investigation, and in particular Capitol Forum's take of the strength of any FTC case and the likelihood that a challenge would be brought, and presented in the same order as the Capitol Forum publication:

A.  That labor monopsony has **"emerged as a growing bipartisan concern"** which the FTC Chairman has **"targeted as a top enforcement priority."** (Bolded words in quotations indicate direct quotations from the Capitol Forum publication.)

B.  That the **"DOD (Department of Defense) will be as influential this time isn't assured."**

C.  That antitrust regulators **"have only rarely brought merger cases based on labor monopsony concerns,"** and that this transaction "**presents a prime opportunity to delve into the issue**."

D.  That this monopsony case is not "**clear cut."**

E.  That **"Defense contractors' demand for workers outstrips the supply in Camden;"** and

F.  That the FTC's pursuit of a monopsony case **"is far from a sure thing"** and that monopsony cases are "**rarely litigated."**

---

[2] As addressed in Section VI of this brief, Capitol Forum's news reporting is the subject of its misappropriation claim.

Similarly, paragraph 25 and 26 of the complaint discusses an acquisition involving Qualcomm, Veoneer, and Arriver that was being investigated by foreign regulatory agencies, and paragraph 27 then lays out Market Securities' copying of the protectible commentary and analysis, again in the same order, including:

A. That the merger involves "**vertical**" issues and whether the agencies would take action would depend on the "**perceived independence**" from Qualcomm.

B. **"To be sure, the parties could describe the backstop arrangement as typical of a public company deal without financing contingencies to close."** (This entire sentence was copied word for word)

C. That the EC might consider "**the two-step transaction** as a **warehousing arrangement."**

D. That a filing in Germany is a possibility due to the involvement of Arriver.

E. That CMA can step in if SSW is viewed as "**acting on Qualcomm's behalf."**

F. That HSR can raise issues due to th4 possibility of rivals being "**locked out by Qualcomm,"** and

G. That the parties can argue that the deal strengthens competition given dominant players like Intel.

The Market Securities summaries directly copy the Capitol Forum publications. They are substantially similar--if not identical--and the preceding subparagraphs set forth the protected creative material that was copied.

### III.  THE DIRECT INFRINGEMENT CLAIM IS PROPERLY PLED

As Market Securities correctly asserts, to state a claim for direct copyright infringement, a plaintiff must allege: (1) that it has an ownership interest in a valid copyright, and (2) that the

defendant copied the original or protectable aspects of that copyrighted work.  Brief at 3.  Both requirements are met.  The ownership interest is pled at paragraph 18 of the complaint.  The copying of protectable aspects is alleged throughout the complaint, and particularly at paragraphs 4, 8, 23, 24 and 38.  And while not necessary to the validity of a complaint, the precise protectable aspects of the copying are alleged at paragraphs 27 and 30, including the actual text of that copying.

Market Securities' argument, however, is that the "only similarities" in its summaries are similarities in unprotected facts.  Brief at 7.  This argument is baseless.  As noted, the complaint separates Capitol Forum's factual reporting from its commentaries, which, again, are set forth at paragraphs 27 and 30.  These paragraphs set forth the protectable elements of the Capitol Forum publications under the copyright laws:  its commentaries on the proposed mergers and its assessment of the strength of any antitrust challenge to the merger and the likelihood of any regulatory action on the part of the antitrust enforcers.  These analyses are not unprotectable facts—they are the product of expert analysis, experience, and judgment, and it is this expert commentary that carries significant weight in the financial community.

It should also be noted that the "substantial similarity" issue bears little significance when there exists direct evidence that the defendant has copied the plaintiff's work.  Because proof of copyright infringement is often highly circumstantial, the similarity of the plaintiff's and defendant's work will frequently have to be analyzed to determine whether copying occurred. *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 481 (9th Cir. 2000).  But that is not an issue here.  Market Securities does not deny that it copied any of the Capitol Forum publications; to

the contrary it *admits* copying, when it asserts that it only "took what was necessary to convey the pertinent information [in the Capitol Forum publications] to its consumers."  Brief at 13.[3]

Finally, regarding Market Securities' observation that Capitol Forum has referred to 16 copyright registrations, but only addressed the verbatim copying of two of its publications, there is no mystery here.  As stated in paragraph 31 of the complaint, Capitol Forum is aware that the copying began at least in December 2020, but because the Market Securities summaries are not publicly available, Capitol Forum is not yet aware of the full extent of the infringement.  This will be determined in discovery.

## IV.  MARKET SECURITIES' "FAIR USE" ARGUMENT HAS BEEN REPEATEDLY REJECTED

Market Securities argues that its copying is protected by the fair use doctrine.  It asserts that its copying: (1) served a compelling public purpose, Brief at 9; (2) that the copied material was solely factual and thus not protected, *id.*, 12; (3) that it only copied "what was necessary to serve its purpose," *id.,* at 12; and (4) that its summaries do not supplant the market for Capitol Forum's analysis because the two parties are not in competition, *id.,* at 13-14.  These arguments ignore the well-pled allegations of the complaint and the demonstrable facts underlying those allegations.  They are also based upon an incorrect (and universally rejected) construct of the law.

---

[3] As the court also stated in *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000), substantial similarity is inextricably linked to the issue of access. In what is known as the "inverse ratio rule," we "require a lower standard of proof of substantial similarity when a high degree of access is shown." *Smith*, 84 F.3d at 1218 (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Krofft,* 562 F.2d at 1172). Furthermore, in the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were "strikingly similar." See *Smith*, 84 F.3d at 1220; *Baxter v. MCA, Inc*., 812 F.2d 421, 423, 424 n.2 (9th Cir. 1987).

Fair use is an affirmative defense, and the "defendants bear the burden of proving that their use was fair." *Swatch, at 25.* Because resolution of a fair use issue is a mixed question of fact and law, *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985), its application is generally inappropriate on a motion to dismiss. *Nichols v. Club for Growth Action,* 235 F. Supp. 3d 289 (D.D.C 2017). In addition, fair use is an equitable doctrine--and the conduct of the defendant is a factor that should be considered. In *Harper & Row,* the Supreme Court observed that the knowing use of an improperly obtained manuscript militated against a fair use defense. This consideration weighs heavily against Market Securities' fair use defense, given that it was only able to copy the Capitol Forum publications because it illegally induced one (or more) of the Capitol Forum subscribers to forward it the publications--in violation of the subscriber's legal and contractual obligations. 471 U.S. at 557.

There are also four statutory factors that the courts are directed to follow in addressing a fair use defense. The Copyright Act, at 17 U.S.C. Section 107, provides that in determining whether a particular use is fair, "the factors to be considered shall include":

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The application of each of these factors militates strongly against Market Securities' fair use defense.

## A.  The Purpose and Character of the Use

With respect to the first statutory factor, the principal determinant is whether the defendant's use was for a commercial, as opposed to a non-profit purpose.  In this regard, the Supreme Court has stated that copies made for commercial or profit-making purposes are presumptively unfair. *Sony Corp. of America v. Universal City Studios Inc.,* 464 U.S. 417, 449 (1984).  See also *Harper & Row*, 471 U.S. at 562.  Here, Market Securities does not deny that its use was purely commercial.

In considering this factor, courts will also focus on whether the defendant's use of the copyrighted material was "transformative."  In other words, did the new work "add something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff Rose Music, Inc,* 510 U.S. 569, at 579 (1994); *American Society for Testing & Materials v. Public Resource.Org,* 896 F.3d. 437, 449 (D.C. Cir. 2018).  Here too, Market Securities does not contend that it transformed, or added anything new, to the Capitol Forum work.  It simply lifted the key observations and commentary in the Capitol Forum publications and repackaged them for its customers.

Market Securities ignores these two critical determinants, and argues instead that its copying was acceptable because, in its words, it "was **obligated** to disseminate pertinent financial information affecting the American securities market and its clients' investment decisions."  Brief at 11 (emphasis in original).  But the fact that Market Securities may have had

a FINRA obligation to disclose material information to its customers hardly gives it the right to violate the copyright laws because it considered the Capitol Forum publications pertinent.  This would be a limitless expansion of the fair use doctrine, shielding any copyright infringement in the financial area; and it is entirely unsupported in the law.  Indeed, even the case Market Securities advances to support this argument, *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 742 F.3d 17 (2d Cir. 2014), actually *rejected* this very proposition.

In *Swatch,* the Second Circuit found that a sound recording was entitled to fair use protection despite a copyright in the written transcript "because the sound recording conveys information that a transcript or article cannot, the recording has independent value."  742 F.3d, at 39.  But in so doing, it rejected the same argument that Market Securities' advances here: that the importance of financial information somehow elevates the "paid delivery" of that information to "a public function."  Id., at 29.  As the court stated, it had expressly rejected such a rule in its earlier decisions, finding that it would "distort" proper fair use analysis." *Id.*  These decisions included *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65 (2d Cir. 1999), *Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 Cir.1977), and *Financial Information, Inc. v. Moody's Investors Service, Inc.* (" *FII* "), 751 F.2d 501 (1984).  As the court stated: "In those cases, we rejected fair use arguments pressed by defendants who purported to be serving the public by providing access to important financial information.[4]  *Swatch,* 742 F.3d at 29.

---

[4] As the court stated in *FII: "*To classify Moody's sales of its News Reports as a public function would, it seems to us, state a rule that whenever there is a market for information, the paid delivery of goods to that market rises to a public function. While

The court went on to observe that the defendants in those cases had "appropriated works in which the copyright owner had transformed raw financial information by compiling it from multiple sources or by mixing it with their own commentary and analysis," exactly what happened in this case.  For example, in *Wainwright,* the defendant had "recounted the critical conclusions and predictions from research reports about major industrial and financial corporations," *Wainwright,* 558 F.2d at 93 and note 1.  In *Financial Information, Inc*., the defendant had "copied information about municipal bond redemptions compiled by a competing financial publisher." *FII,* 751 F.2d at 502-03.  The conduct of Market Securities is no different.

Finally, even if this "public function" argument had any vitality, it would not apply here. Market Securities does not publish its summaries to the general public.  It provides its summaries only to its clients--and thus serves no "public function."

### B.  The Nature of the Work: Facts or Analysis

The second factor addresses the nature of the copyrighted work, and whether the work involves unprotectible facts or protectible creative content.  Market Securities states, in conclusory fashion, that the only things it copied were "unprotectible facts."  Market Securities makes this statement without so much as a nod to the actual material that it copied.  The creative and protectible Capitol Forum analysis and commentary is set forth in paragraphs 27 and 30 of the complaint—and highlighted in bold above.

---

perhaps sound as a matter of economic theory, such a construction would distort the statutory "first factor" of fair use in the copyright context. 751 F.2d at 509.

### C.  The Amount and Substantiality of the Work Used

The third factor to be considered is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  Market Securities argues that a consideration of this factor supports a fair use finding because its articles were much shorter: "blurbs" of 224 and 316 words, as opposed to the nine- and seven-page Capitol Forum publications.  But as the Supreme Court stated in *Campbell v. Acuff,* "this factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too."  510 U.S. 569, at 587.  Here, as addressed earlier, Market Securities copied—often word for word—the most salient portions of the Capitol Forum's publications:  its analysis of the likelihood of regulatory action.  It is this analysis which is critical to the investment decisions made by the Capitol Forum subscribers and the Market Securities clients.  In *Harper & Row,* for example, the defendant had taken only approximately 300 words from President Ford's memoirs, but the fair use defense was rejected because the words that were taken amounted to "the heart of the book," that part most likely to be important to readers. 471 U. S., at 564-566, 568**.**  So too here.

Market Securities also argues that this factor favors fair use because it only took "what was necessary to fulfill its purpose" and because the only things taken were "unprotectible facts."  Both arguments have been addressed above.  Market Securities had no legitimate purpose in copying the Capitol Forum publications for the benefit of its own clients, and it clearly copied protectible elements.

### D.  The Effect on the Market

13

The final statutory factor is the "effect of the use upon the potential market for or value of the copyrighted work," and as the Supreme Court has noted, there is a presumption of market harm when, as here "a commercial use amounts to mere duplication of the entirety of an original." *Campbell,* 510 U.S. at 591. Market Securities argues that its copying has no effect on the demand for Capitol Forum's commentaries because the parties compete in separate markets. According to Market Securities, Capitol Forum caters to subscribers who want its market information immediately, whereas its clients may not need the information immediately.  Market Securities also says that it does not compete with Capitol Forum because it is an investment firm and Capitol Forum is a publisher.

But whether these firms may or may not compete and whether they may or may not cater to different types of readers does not mean that the Market Securities' infringement does not affect Capitol Forum's subscriber base.  As plead in the complaint, Market Securities' conduct "obviate[es] the need for potential subscribers to purchase a Capitol Forum subscription." Paragraph 4.  This is a 12(b)(6) motion, where "all well-pleaded allegations of material fact [are accepted as true] and construe[d] in the light most favorable to the non-moving party." Padilla v. Yoo, 678 F.3d 748, 757 (9th Cir. 2012), and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Conley v. Gibson,* 355 U.S. 41,45-46 (1957); *Barr v. Clinton,* 379 F.3d 1196, 1196 (D.C. Cir 2004) (citing *Kowal v. MCI Comm'ns Corp.* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Market Securities does not and cannot assert that its clients would not purchase a Capitol Forum subscription if it ceased its infringing activities.  As fair use is an affirmative defense, Market Securities has the burden to present facts to demonstrate that its conduct does not affect

Capitol Forum's potential market, and it has failed to do so.  Moreover, this factor must also

consider the potential market for Capitol Forum's publications if infringement of this type

becomes widespread.  As the D.C. Circuit stated in *American Society for Testing & Materials v.*

*Public Resource.Org,* 896 F.3d. 437, 452 (D.C. Cir. 2018): "The fourth fair use factor—"the

effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. §

107(4)—"requires courts to consider not only the extent of market harm caused by the particular

actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort

engaged in by the defendant . . . would result in a substantially adverse impact on the potential

market' for the original*." citing Campbell*, 510 U.S. at 590 (alteration in original) (quoting 3

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.05[A][4], at 13–102.61

(1993) (footnotes omitted))."   *See also, Barcroft Media v. Coed Media Group, LLC,* 297 F.3d

339, 355 (S.D.N.Y. 2017*) (q*uoting *Bill Graham Archives* v. *Dorling Kindersley Ltd.,* 448 F.3d

605, 613 (2d Cir. 2006).

## V.  THE CONTRIBUTORY INFRINGEMENT CLAIM IS PROPERLY PLED

As Market Securities states, "in order to establish a claim of contributory copyright

infringement, the plaintiff must allege '(1) direct infringement by a third party; (2) knowledge by

the defendant that third parties were directly infringing; and (3) substantial participation by the

defendant in the infringing activities.'" *Newborn*, 391 F. Supp. 2d at 186 (internal citations

omitted).  Brief at 15.  Each of these elements has been alleged.  Direct infringement by a third

party is alleged in paragraphs 4 and 5 of the complaint: "Market Securities will illegally obtain

the report from one or more of Capitol Forum's subscribers, and…it is a direct copyright

violation for the subscriber to send the copyrighted publications to Market Securities."   Market

Securities' knowledge of the direct infringement is alleged in paragraph 7: "It knows that it is a

direct copyright violation for Capitol Forum's subscribers to transmit copyrighted material to it. Market Securities' substantial participation in the infringing activities is alleged in paragraph 46: "[Market Securities], by encouraging, inducing, and causing Capitol Forum subscribers to provide such reports or the contents of those reports to it, has engaged in the contributory infringement of a copyrighted work."   All these elements are appropriately pled.

Market Securities then goes on to state:  "To satisfy prong one (i.e., direct infringement by a third party), "a plaintiff must establish '(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright.'"  Brief at 15. With respect to the fourth element, a plaintiff "must show that a third party infringed its copyrights by violating [its] exclusive rights under 17 U.S.C. § 106, including reproduction, preparation of derivative works, [public] distribution, or public display." [5]

These elements are also appropriately pled.  With respect to this first requirement, the complaint sets forth the two summaries Capitol Forum was able to obtain that are clear copyright violations, as pled in paragraphs 25-30.  The complaint also alleges that this same type of infringement has been occurring at least from December 2020, but that information is not yet available because the Market Securities summaries are provided only to its clients and not to the general public.  Regarding the second and third elements, the complaint alleges Capitol Forum's

---

[5] Citing *Newborn v. Yahoo!, Inc*, 391 F. Supp. 2d 181 (D.D.C. 2005) and *DBW Partners, LLC v. Bloomberg, L.P.*, Civil Action No. 19-311 (RBW), 2019 U.S. Dist. LEXIS 195725, at *12 (D.D.C. Nov. 12, 2019), Market Securities argues that the complaint fails to adequately allege the circumstances giving rise to the claim.  However, both cases involved the failure to specifically identify the copyrighted material, which is not an issue here.

ownership of the copyrights and the registrations in paragraph 18.  With respect to the fourth element, Capitol Forum has identified the acts and time period that Market Securities infringed the copyright.  It did so, as discussed above, by pleading that Market Securities had encouraged, induced, and caused the Capitol Forum subscribers to commit direct copyright violations, and that this conduct occurred at least between December 2020 and October 2021.

Nevertheless, Market Securities asserts that "it remains abundantly unclear: 1) what exclusive rights provided under 17 U.S.C. § 106, if any, any such third party (or parties) violated by virtue of the alleged "transmission" of Plaintiff's October Articles (and/or other works) to Defendant; and 2) what act(s) were purportedly committed by these third parties (i.e., an oral communication, an email, etc.)."  Brief at 16.  But there is no requirement that a copyright infringement complaint specify the specific statutory rights that were infringed, or that it specify what specific acts were committed by a third party, including whether the copyrighted material was transmitted either by an "oral communication" or by an "email."

Regardless, the specific statutory right is clear from the complaint.  The owner of a copyright has the exclusive rights in any reproduction of the copyrighted work, or any preparation of derivative works based on the copyrighted work, or any distribution of the copyrighted works.  17 U.S.C. § 106, subsections (1), (2), and (3).   And how the subscriber directly violated its copyright obligation is equally clear from the allegations of the complaint.  The subscriber sent an email or a hard copy of the Capitol Forum publications to Market Securities.  That is the only plausible way that Market Securities was able to copy the Capitol Forum publications *in verbatim form and in precisely the same order.*

The allegations of the complaint go far beyond simply alleging a plausible claim for contributory infringement.  The complaint asserts that the Capitol Forum publications are sent only to the Capitol Forum and other authorized recipients, and that each publication contains a copyright notice stating that its contents may not be distributed or reproduced without its consent.  Complaint at 3.  It alleges that at no time has Capitol Forum authorized its subscribers to transmit its material to Market Securities.  Complaint at 22.  It alleges that Market Securities illegally obtained the Capitol Forum publications by inducing one or more of its subscribers to provide the reports to it.  Complaint at 46.  It alleges that the Market Securities summaries contain verbatim excerpts of the Capitol Forum publications.  Complaint at 4.  And Market Securities, its motion to dismiss, acknowledges that it copied the Capitol Forum publications.  Brief at 13.  This cause of action alleges far more that a "plausible" claim—Market Securities' contributory infringement is a virtual certainty.

Finally, the one case Market Securities cites for its assertion that this contributory infringement case is implausible is entirely inapposite.  In*, McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594 (S.D.N.Y. 2020), the contributory infringement claim was dismissed because there were "no facts supporting the existence of *any* third parties."  *Id., at 6*10.  The plaintiff in that case had no idea whether a third party was even involved.  It did not know whether anyone had forwarded the copyrighted material to the defendant and alleged no facts to suggest any possible contributory infringement.  Here, we know that the publication was sent to Market Securities by one of the Capitol Forum subscribers, and the identity of this subscriber will be quickly determined in discovery, given that each Capitol Forum publication bears a unique watermark.

## VI. THE MISAPPROPRIATION CLAIM SEEKS TO PROTECT CAPITOL FORUM'S NEWS REPORTING—AND THEREFORE NOT PREEMPTED

The "hot news doctrine" is a common law tort that exists to prevent free riding in the news industry. It provides a limited exception, and for a limited period, to protect certain "facts" that would not otherwise be entitled to copyright protection. This doctrine recognizes that when time-sensitive information is generated at considerable time and expense, it would be unfair to permit competitors to copy that work and thus misappropriate the profit potential of that work. These free-riding situations qualify for protection and are not preempted if the following conditions are met: (1) the information is created at considerable cost or expense; (2) the value in the information is time sensitive; (3) the conduct of the defendant constitutes free-riding; (4) the parties are in direct competition; and (5) the ability to free-ride on the back of its direct competitor would threaten or reduce the plaintiff's incentive to continue its level of investigation and reporting. These elements were spelled out in the *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841 (2d Cir. 1997).

The "hot news" doctrine was revisited in 2011 in *Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876 (2d Cir. 2011).  There, the court held that the claim presented in that case was preempted by federal law.  As the court observed, the plaintiffs were not involved in the process of acquiring and developing news stories "through efforts akin to reporting." *Id.* at 903.  The Court then went on to suggest the type of allegations that would not be preempted: "If a Firm were to collect and disseminate to some portion of the public facts… and were Fly to copy the facts contained in the Firm's hypothetical service, it might be liable to the Firm on a "hot-news" misappropriation theory.  *Id.*, at 905-06.  In other words, were the plaintiff seeking to protect its factual reporting, as opposed to its creative works, the copying of that reporting would not be preempted.

19

As such, not all copying claims are preempted. The *Barclays* court specifically stated that a hot news claim would lie when the plaintiff would collect and disseminate the facts and the defendant would "copy the facts." 650 F.3d at 906; *see also BanxCorp v. Costco Wholesale Corp.,* 723 F. Supp. 2d 596, 614 (S.D.N.Y. 2010) (where copying was alleged, hot news claim was not preempted and, therefore, the motion to dismiss that claim was denied); *Associated Press v. All Headline News Corp.,* 608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009) (where allegations of unlawful copying of news stories was alleged, the court held that the hot news claim was not preempted and denied motion to dismiss); *X17, Inc. v. Lavandeira,* 563 F. Supp. 2d 1102, 1107, 1108-09 (C.D. Cal. 2007) (where the plaintiff alleged unlawful copying of celebrity photographs, the court found that the hot news claim was adequately pleaded and not preempted.).

Here, Capitol Forum is seeking to protect two types of rights: (1) its rights protected under the Copyright Act to its creative analyses and commentaries; and (2) its rights protected under the common law of misappropriation to its factual reporting. As noted in Section II, the complaint carefully distinguishes between Capitol Forum's commentaries and analyses which are protected by the copyright act, and its factual reporting, which is not so protected--and as such is not preempted. Market Securities' argument that the Capitol Forum misappropriation claim is preempted because it is grounded only upon the alleged infringement of its copyright rights, Brief at 21, is based upon a misreading of the complaint.[6]

## VII. THE MISAPPROPRIATION CLAIM IS PROPERLY PLED

---

[6] It should also be noted that the defendant in the *Barclay's* case conceded that it had violated the Copyright Act. *Id.,* at 880.

Nevertheless, Market Securities asserts that this misappropriation claim should be dismissed because the factual reporting is not time-sensitive and because it is not free-riding on Capitol Forum's work.  Initially, it must be noted that these factors are not elements of Capitol Forum's misappropriation claim. If anything, they are elements of Market Securities' preemption defense. Capitol Forum has asserted an unfair competition and misappropriation claim, the elements of which are: "(1) time, labor, and money spent in the creation of the thing misappropriated, (2) a competitive relationship between plaintiff and defendant and (3) commercial damage to the plaintiff." *GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.,* 27 Md. App. 172, 190 (Md. Ct. Spec. App. 1975). Market Securities does not dispute that these elements are pled in the complaint.

The timeliness and free-riding issues raised by Market Securities are relevant only to its preemption defense. Because preemption is an affirmative defense, the burden is on Market Securities to both plead and prove them. *See, e.g., Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) ("[p]reemption is an affirmative defense that the defendant has the burden to prove"); *Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 912 (6th Cir. 2007) ("[f]ederal preemption is an affirmative defense upon which the defendants bear the burden of proof."); *Ibrahim v. Titan Corp.,* 391 F. Supp. 2d 10, 17-18 (D.D.C. 2005) ("preemption . . . is an affirmative defense, with the burden of proof on the defendants").  Nevertheless, while these matters are not the grist of a motion to dismiss, Capitol Forum will address each of them below.

**A. The complaint properly alleges the copying of time sensitive facts**

The time sensitive nature of the Capitol Forum publications is pled in the complaint at paragraphs 2, 52, and 53. In particular, Capitol Forum alleges at paragraph 52 that "the

newsworthy information that Capitol Forum gathers, analyzes and reports is valuable to many of its customers in large part because of its time sensitive nature."  Market Securities asserts that the publications are not time sensitive because it does not receive and copy them until they are first distributed to the Capitol Forum subscribers.  Not only is the time sensitivity of the publications a factual issue, but the law does not require that the defendant publish at the same time as the plaintiff does.  An article can still be time sensitive if is distributed shortly after the initial reporting.  Here, we know that Market Securities published on the same date, and discovery will reveal the precise timing involved.

### B.   Free riding exists regardless of attribution

"Free riding exists where a defendant invests little in order to profit from information generated or collected by the plaintiff at great cost," *Barclay's* at 887, and these elements are pled in the complaint at paragraphs 2, 23, 53.  Market Securities does not deny that it is profiting from information developed at significant cost by Capitol Forum.  Instead, it argues that it is not free riding because it provides attribution to Capitol Forum as its source, Brief at 21.  This assertion is incorrect.

In *International News Service v. Associated Press,* 248 U.S. 215 (1918), the Supreme Court specifically distinguished the defendant's failure to attribute its news content to AP as a separate issue from the hot news misappropriation. 248 U.S. at 242 ("*Besides the misappropriation*, there are elements of imitation, of false pretense, in defendant's practices [and] . . . the habitual failure to give credit to [AP]") (emphasis added). Indeed, the Supreme Court was careful to note that the defendant's false pretenses and "habitual failure to give credit," "although accentuating the wrong, *are not the essence of it*." *Id.* (emphasis added.).

Rather, the "essence" of a hot news claim focuses on "an unauthorized interference with the normal operation of a complainant's legitimate business [in time sensitive information] precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news." *Id.* at 240.

In the *NBA* case, the Second Circuit in described the heart of a hot news claim and recognized AP's property interest at stake: "*INS* is not about ethics; it is about the protection of property rights in time-sensitive information so that the information will be made available to the public by profit seeking entrepreneurs. If services like AP were not assured of property rights in the news they pay to collect, they would cease to collect it. The ability of their competitors to appropriate their product at only nominal cost and thereby to disseminate a competing product at a lower price would destroy the incentive to collect news in the first place. The newspaper-reading public would suffer because no one would have an incentive to collect "hot news." 105 F.3d at 853.

The *Barclays'* court did not disturb this key finding of *NBA*. Moreover, the court's decision in *Barclays* turned not on a lack of "passing off" the plaintiffs' stock recommendations as Fly's own, but instead on the fact that, as a factual matter, Fly was not "free riding." *See also GAI Audio of New York*, 27 Md. App. at 192 (Under Maryland law, the tort of unfair competition is limited neither to "passing off" one's own goods as a competitor's nor to "passing off" a competitor's goods as one's own.); *Ideal Toy Corp. v. Kenner Prod. Div. of Gen. Mills Fun Grp., Inc.,* 443 F. Supp. 291, 305 (S.D.N.Y. 1977) (Under New York law, unfair competition is not

limited to circumstances where one party attempted to "pass off" his goods as those of another, but "encompasses a broader range of unfair trade practices generally described as the misappropriation of the skill, expenditures and labors of another."). Although its conclusion that Fly was not free riding on the Firms' stock recommendations did reference the fact that Fly was attributing the recommendations to the Firms, the Second Circuit's holding was based principally on its conclusion that Barclays and the other investments firms were "making" news in their stock recommendations, and Fly was just "breaking" it. *See Barclays*, 650 F.3d at 902.

### VIII.  THE HOT NEWS DOCTRINE IS NECESSARY TO PREVENT FREE-RIDING AND ENCOURAGE QUALITY JOURNALISM

The hot news doctrine serves an important function in the news industry. This doctrine, limited in time and scope, is necessary to ensure that larger and more established news organizations are restricted in the use they can make of the reporting efforts undertaken by more recent market entrants, such as Capitol Forum. Without some degree of protection, organizations like Market Securities would be free to profit from the work of less established news companies, and the incentives to produce first class journalism would be reduced—or eliminated. Indeed, a recent journal article published by the ABA[7] called for federal legislation to codify this doctrine in cases (as here) where the information is the type essential to the plaintiff's business; provides a benefit to society; and would be unlikely to be generated without the incentive of protection for a limited period of time.  Chief among the author's concerns were the necessity to prevent free-riding and the need to provide an incentive to journalistic initiatives.

---

[7] *See* Lindsay G. Rabicoff, Comment, *The Hot News Misappropriation Doctrine: Confusion in the Internet Age and the Call for Legislative Action*, 53 Jurimetrics J. 71–95 (2012).

The fact that this tort has not been recognized to date in the District of Columbia is of no moment. The lack of case law simply reflects the reality that the doctrine has never been litigated here. As a practical matter, this tort is one that finds applicability and traction in matters involving financial markets and financial publications. The parties involved in these endeavors are generally located in New York. That is where these types of cases are more often litigated, and that is the jurisdiction "that has most heartily embraced the doctrine." Edmund J. Sease, *Misappropriation Is Seventy-Five Years Old; Should We Bury It or Revive It?* 70 N.D. L. Rev. 781, 801 (1994). As such, the fact that Capitol Forum is based in the District of Columbia should not work to its disadvantage. Founded in 2012, Capitol Forum is the first and only organization domiciled in the District of Columbia to establish a premium subscription based financial news service—and it should be entitled to the same protections that its New York competitors receive.

The recent *Dow Jones & Co. v. Real-Time Analysis & News, Ltd.* case provides context to this point. No. 14-cv-131, 2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014*), report and recommendation adopted*, No. 14-cv-131, 2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014). Dow Jones, publisher of the *Wall Street Journal* and other financial publications, operates a service known as "DJ Dominant" that provides real-time business news and analysis to financial professionals. This service is provided for a fee and Dow Jones does not authorize third parties to redistribute the content. However, the defendant in that case, Ransquawk, did just that: systematically reproducing and redistributing the news content published by Dow Jones. Dow Jones brought a "hot news" claim in New York against Ransquawk, alleging that this free-riding by one of its competitors was likely to undermine Dow Jones' economic incentive to invest in the costly process of reporting time-sensitive news. The New York court agreed and found that this hot news misappropriation claim stated a valid claim for relief.

Capitol Forum stands in the same position vis a vis Market Securities that Dow Jones did with respect to Ransquack. Both Capitol Forum and Dow Jones have made significant investments in their investigation and reporting of financial developments. Both Market Securities and Ransquawk are free-riding on this "costly process of reporting time-sensitive news." Furthermore, Capitol Forum also competes against Dow Jones in the reporting of financial news. It would seem markedly inequitable for Dow Jones, but not Capitol Forum, to receive the benefit of free-riding protections in its home jurisdiction.

Finally, this tort has been recognized in fourteen other jurisdictions, including New York, Missouri, Texas, Pennsylvania, California, Alaska, Colorado, Illinois, North Carolina, South Carolina, Wisconsin, New Jersey, Maryland, and Delaware.  70 N.D. L. Rev. at 801-02. The only two jurisdictions that failed to adopt the doctrine, Hawaii and Massachusetts, did so in cases involving much different facts, matters having nothing to do with news reporting.[8]

## IX.  CONCLUSION

Market Securities' motion to dismiss should be denied.

---

[8] *See New England Tel. & Tel. Co. v. National Merchandising Corp.,* 141 N.E.2d 702 (Mass. 1957) (relating to the distribution of opaque plastic covers for telephone directories); *Famolare, Inc. v. Melville Corp.,* 472 F.Supp. 738 (D.Haw. 1979) (relating to the alleged copying of the wavy-bottom soles of plaintiff's shoes).

Dated:  August 10, 2022

Respectfully submitted,

*/s/ John B. Williams*
_____
JOHN B. WILLIAMS
 (DC Bar #257667)
WILLIAMS LOPATTO PLLC
1629 K Street, N.W., Suite 300
Washington, DC 20006
Tel.: (202) 277-8435
jbwilliams@williamslopatto.com

Counsel for Plaintiff