**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM,

*Plaintiff*

v.

MARKET SECURITIES, LLC,

*Defendant*

CIVIL ACTION NO.: 22-1333 (BAH)

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 2

   A.   PLAINTIFF'S INSERTION OF EXTRANEOUS ONE-SIDED FACTS SHOULD BE DISREGARDED .... 2

   B.   COUNT I (DIRECT COPYRIGHT INFRINGEMENT) MUST BE DISMISSED ................................. 2

      *a.   Plaintiff Fails to State a Claim for Direct Copyright Infringement Due to Utter Lack of Substantial Similarity* ............................................................................................................... 3

      *b.   Plaintiff's Claim for Direct Infringement Must Fail Due to Fair Use* ........................... 4

        i.    The Purpose of Market Securities' Use Weighs In Favor of Fair Use ...................... 6

        ii.   Plaintiff's October Articles Are Factual Works ....................................................... 9

        iii.  Defendant Took, if Anything, Only What Was Necessary to Fulfill Its Purpose ........ 9

        iv.  Defendant's Commentaries Do Not Supplant the Market for Plaintiff's October Articles ................................................................................................................................ 10

   C.   COUNT II (CONTRIBUTORY COPYRIGHT INFRINGEMENT) MUST BE DISMISSED .................. 10

   D.   COUNT III (MISAPPROPRIATION OF PROPRIETARY INFORMATION) MUST BE DISMISSED .... 12

      *a.   Hot News Misappropriation Has Not Been, and Should Not Be, Recognized In D.C.* ... 12

      *b.   Preemption Is Routinely Assessed on a Motion to Dismiss* ........................................... 14

      *c.   Plaintiff's Hot News Claim Is Unequivocally Preempted* ............................................. 15

        i.    Time-Sensitivity Is Not Adequately Alleged .......................................................... 16

        ii.   Market Securities Is Not Free Riding & Is Not In Competition with Plaintiff .......... 17

   III.  CONCLUSION ...................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140 (2d Cir. 1998) ........................................... 4

*Allure Jewelers, Inc. v. Ulu*, No. 1:12cv91, 2012 U.S. Dist. LEXIS 134440 (S.D. Ohio Sep. 20, 2012)..................................................................................................................................... 14

*Am. Soc'y for Testing & Materials v. Pub..Resource.Org, Inc.*, No. 13-cv-1215 (TSC), 2022 U.S. Dist. LEXIS 60922 (D.D.C. Mar. 31, 2022) ................................................................ 11

*BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010) ........................... 19

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876 (2d Cir. 2011)................. 18, 21

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) ............................................................................. 6

*Brainard v. Vassar*, 561 F. Supp. 2d 922 (M.D. Tenn. 2008) ..................................................... 15

*Buchanan v. Sony Music Entm't*, No. 18-cv-3028 (KBJ), 2020 U.S. Dist. LEXIS 92405 (D.D.C. May 26, 2020) ..................................................................................................................... 17

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*, 2014 U.S. Dist. LEXIS 131266 (S.D.N.Y. Sep. 15, 2014)................................................................................................................... 15

*Financial Information, Inc. v. Moody's Investors Service, Inc.*, 751 F.2d 501 (2d Cir. 1984)....... 7

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021)..................................................... 11, 12

*Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985)................................................... 5

*Icc Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Officials, Inc.*, Civil Action No. 16-54 (EGS/DAR), 2019 U.S. Dist. LEXIS 230371 (D.D.C. Nov. 22, 2019) ................................ 2

*In Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.*, No. 93C20244, 1994 U.S. Dist. LEXIS 15736 (N.D. Il. Oct. 24, 1994) ......................................................... 21

*Int'l News Serv. V. AP*, 248 U.S. 215 (1918)........................................................................ 1, 16

*Munro v. Lucy Activewear, Inc.*, No. 16-79 (JRT/KMM), 2016 U.S. Dist. LEXIS 135692 (D. Minn. Sep. 29, 2016) ..................................................................................................... 17, 18

*NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997)..................................................... 15, 19, 20

*NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK (HRL), 2015 U.S. Dist. LEXIS 11406 (N.D. Cal. Jan. 29, 2015).......................................................................................... 17

*Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289 (D.D.C. 2017)...................................... 4

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65 (2d Cir. 1999)............. 7

*Palmer Kane LLC v. Scholastic Corp.*, No. 12 CV 3890, 2013 U.S. Dist. LEXIS 27196 (S.D.N.Y. Feb. 26, 2013) ...................................................................................................... 13

*Prunty v. Vivendi*, 130 F. Supp. 3d 385 (D.D.C. 2015) ................................................................ 4

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 12

*Spinelli v. NFL*, 903 F.3d 185 (2d Cir. 2018) ............................................................................. 14

*Ste. Genevieve Media, LLC v. Pulitzer Mo. Newspapers, Inc.*, No. 1:16 CV 87 ACL, 2016 U.S. Dist. LEXIS 143686 (E.D. Mo. Oct. 18, 2016)................................................................. 17, 20

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014) ........................ passim

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477( 9th Cir. 2000)................................................. 4

*Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977)............. 7

*We Shall Overcome Found. v. Richmond Org., Inc.*, 221 F. Supp. 3d 396 (S.D.N.Y. 2016)....... 17

*X17, Inc. v. Lavandeira*, 563 F. Supp. 2d 1102, (C.D. Cal. 2007)............................................... 19

**Other Authorities**

*Brief Amici Curiae of Citizen Media Law Project, Electronic Frontier Foundation, and Public Citizen, Inc.*, *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F. 3d. 876 (2d. Cir. 2011) ........................................................................................................................................ 16

Final Rule: Selective Disclosure and Insider Trading, Exchange Act Release Nos. 33-7881, 34-43154, IC-24599, File No. S7-31-99 (Oct. 23, 2000). ............................................................. 9

Mark J. Flannery, *Economic Analysis: Providing Insight to Advance the Missions of the SEC and the PCAOB*, Public Company Accounting Oversight Board's Center for Economic Analysis 2015 Conference on Auditing and Capital Markets (Oct. 22, 2015), *available at* https://www.sec.gov/news/speech/keynote-address-pcaob-missions-of-sec-and-pcaob.html#_ftnref3 ............................................................................................................... 9

*Registered Financial Professionals*, FINRA, *available at* https://www.finra.org/investors/learn-to-invest/choosing-investment-professional/registered-financial-professionals (last visited Aug. 18, 2022) ............................................................................................................................ 10

*Regulatory Notice 15-36, Guidance on Best Execution Obligations in Equity, Options and Fixed Income Markets*, FINRA, *available at* https://www.finra.org/rules-guidance/notices/15-46 (last visited Aug. 24, 2022) .............................................................................................................. 5

*Regulatory Notice 17-16, FINRA Requests Comment on Proposed Limited Safe Harbor From FINRA Equity and Debt Research Rules for Desk Commentary*, FINRA, *available at* https://www.finra.org/investors/learn-to-invest/choosing-investment-professional/registered-financial-professionals (last visited Aug. 24, 2022) .................................................................. 8

*Rule 53310, Best Execution and Interpositioning*, FINRA, *available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/5310 (last visited Aug. 24, 2022) . 5

Market Securities[1] respectfully submits this reply in further support of its Motion to dismiss Plaintiff's Complaint.

## I.    INTRODUCTION

In an attempt to save its woefully deficient pleading, in CapForum's Opposition to Defendant's Motion to Dismiss (*Docket Entry No. 17*) (the "Opposition"), Plaintiff deliberately attempts to mislead this Court by distorting the relevant case law by, among other things, selecting only portions of such cases, while disregarding others; mischaracterizing Defendant's positions; and improperly inserting extraneous facts outside of the Complaint, which are not properly the subject of judicial notice. Plaintiff nonsensically bifurcates Plaintiff's October Articles into unprotectible facts and allegedly protectible components in an effort to simultaneously assert separate causes of action—copyright infringement (both direct and contributory) and hot news misappropriation—arising from the same works and set of facts, thereby conveniently overlooking the very purpose for which the narrow hot news misappropriation tort, which has not been recognized in D.C., arose (i.e., to provide a cause of action when there was not one). As Justice Brandeis aptly noted, "[t]he general rule of law is, that the noblest of human productions— knowledge, truths ascertained, conceptions, and ideas—become, after voluntary communication to others, free as the air to common use." *Int'l News Serv. V. AP*, 248 U.S. 215, 250 (1918) (Brandeis, J., dissenting). Despite the foregoing, in direct contravention of well-established copyright principles, Plaintiff is improperly seeking to protect the unprotectible, as evidenced by Plaintiff's own comparisons in its Complaint and the Opposition. Moreover, even if there were a taking of protectible expression by Market Securities, it is clear that any such use was fair in light of, among other things, the very different purpose of Defendant's use—specifically, to inform its

---

[1] All capitalized terms, unless otherwise indicated, shall be given the definition(s) set forth in Defendant's Memorandum of Law in Support of Defendant's Motion (*Docket Entry No. 15*) (the "MOL").

customers about the rationale behind stock movement. CapForum admits that its "reporting has market impact" (Complaint, ¶ 20); however, contrary to the reasons why the SEC and FINRA have promulgated certain rules, which are applicable to Market Securities as a broker-dealer, Plaintiff wants to promote information asymmetry for its own personal gain. Additionally, Plaintiff makes false assumptions and infers nefarious intent when there is none in an effort to make out a contributory copyright infringement claim. For the reasons set forth in Market Securities' MOL, as well as those set forth herein, it is clear that Plaintiff's Complaint, in its entirety, must be dismissed.

## II.   ARGUMENT

### A.  Plaintiff's Insertion of Extraneous One-Sided Facts Should Be Disregarded

As a preliminary matter, it is well established that "[i]n resolving a 12(b)(6) motion, a court 'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice.'" *Icc Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Officials, Inc.*, Civil Action No. 16-54 (EGS/DAR), 2019 U.S. Dist. LEXIS 230371, at *6 (D.D.C. Nov. 22, 2019). In defiance of the foregoing well-established standard, throughout Plaintiff's Opposition, including in an entire "Statement of Facts" section (pp. 3-6), which is largely devoid of citations to Plaintiff's Complaint, Plaintiff asserts a number of extraneous facts—including, specifically, deliberate mischaracterizations of Defendant's business disguised as purported facts.[2] To the extent that additional facts are alleged in the Opposition, but not in the Complaint, such facts must be cast aside and/or stricken.[3]

### B.  Count I (Direct Copyright Infringement) Must Be Dismissed

---

[2] For example, "that a subscriber sent an email or a hard copy of the Capitol Forum publications to Market Securities" (Opposition, p. 7), which is again an allegation that is not only unsubstantiated, but also absent from the Complaint.
[3] While the Court may take judicial notice of certain facts on a motion to dismiss, Plaintiff has not asked the Court to do so anywhere in the Opposition.

a. ***Plaintiff Fails to State a Claim for Direct Copyright Infringement Due to Utter Lack of Substantial Similarity***

Notably, in its Complaint, Plaintiff did not state that the protectible aspects of Plaintiff's October Articles that Defendant allegedly infringed are limited to select, identified portions; however, in the Opposition, Plaintiff now specifically states that "the precise protectable aspects of the copying are alleged at paragraphs 27 and 30".[4] Opposition, p. 7. Not only is Plaintiff's parsing of allegedly protectible expression versus unprotectible facts a post hac attempt by Plaintiff to simultaneously allege copyright infringement and misappropriation claims with respect to the same works, but also, Plaintiff's analysis in the Opposition (pp. 5-6), as well as the Complaint, once again, evidences only similarity in facts and common verbiage that is not original to Plaintiff (e.g., "vertical", "perceived independence", "rarely litigated").[5] In the Opposition, Plaintiff suggests that Defendant's lack of comparison of Plaintiff's October Articles to Defendant's Commentaries is somehow "telling". Opposition, p. 1 ("tellingly, Market Securities does not even attempt to compare the articles in its motion"); *see also* p. 4 ("Market Securities makes no attempt whatsoever to compare the actual texts of the copyrighted publications with the text of its summaries"). However, Plaintiff fails to consider that the similarities are what matter (not the differences) and given the utter lack of any similarity between Defendant's Commentaries and anything original to Plaintiff, a line by line comparison is unnecessary, particularly since Plaintiff included such a comparison in its Complaint and appended the full works at issue thereto. Moreover, Plaintiff wholly fails to address that it is not only facts that are unprotectible, but also, common words and short phrases, which is mainly what Plaintiff alleges that Defendant has copied. *See, e.g., Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390 (D.D.C. 2015) (granting motion to

---

[4] Yet, in the Complaint Plaintiff also alleges that the "ordering" of Plaintiff's October Articles is copyrightable. Complaint, ¶¶ 27-28.
[5] *See also* MOL, p. 7.

dismiss, finding that the complaint failed to state a cognizable claim, given that the only similarity between the works, both of which were appended to the complaint, were a common word in the titles and the use of the phrase "keys to the kingdom"); *Acuff-Rose Music, Inc. v. Jostens, Inc*., 155 F.3d 140, 144 (2d Cir. 1998) (phrases that "enjoy[] a robust existence in the public domain" are not protectible).

Additionally, Plaintiff's citation to a Ninth Circuit music copyright case, *Three Boys Music Corp. v. Bolton, 212 F.3d 477*( 9th Cir. 2000), wherein the Court analyzed the inverse ration rule—a rule adopted in the Ninth Circuit, and a decision that is not binding on this Court—is entirely misguided. Opposition, pp. 7-8. Here, access is not disputed, given that Plaintiff is credited in Defendant's Commentaries. Yet, despite what CapForum suggests, access is just one element of a copyright claim, there must also be *unlawful* copying.[6] *See Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 293 (D.D.C. 2017) ("Copying alone does not prove infringement; rather, 'a plaintiff must establish actionable copying to prevail.' . . . Both 'actual copying and substantial similarity . . . are clearly required, and the latter inquiry concerns whether actual copying is legally actionable.'") (internal citations omitted).

   **b.** ***Plaintiff's Claim for Direct Infringement Must Fail Due to Fair Use***

In attempting to refute Defendant's fair use argument, Plaintiff entirely misunderstands the arguments set forth in Defendant's MOL, as well as the relevant law.

As an initial matter, prior to even analyzing the factors set out in 17 U.S.C. § 107, Plaintiff—in its typical conclusory fashion, without an iota of factual support—cites to *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985), and contends that Market Securities'

---

[6] Defendant denies that there was copying of any protectible expression, and as such, that there was any copying that was unlawful. Plaintiff deliberately misconstrues Defendant's position and erroneously suggests that Defendant "*admits* copying". Opposition, p. 8. In doing so, Plaintiff points to a portion of Defendant's argument regarding fair use—an affirmative defense that is only reached when infringement is found and as such, for purposes of that argument only, a finding of infringement has to be presumed.

purported conduct in "illegally" "inducing" Plaintiff's subscribers "weighs heavily against Market Securities' fair use defense". Opposition, p. 9. The foregoing argument is entirely baseless, given that: 1) it is entirely speculative, infers bad faith intent when there is none, and lacks any factual predicate; and 2) *Harper & Row, Publrs.,* 471 U.S. 539 is distinguishable since it involved the intentional purloining of an unpublished manuscript, which is entirely opposite of Market Securities' conduct in disseminating select information to its clients relating to the securities market pursuant to its fiduciary and legal obligations[7] to do so. Moreover, as the Court held in *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 83-84 (2d Cir. 2014):

> Regardless of what role good or bad faith plays in fair use analysis, *see Blanch*, 467 F.3d at 255-56,[8] we need not tarry over it here. Even assuming that Bloomberg was fully aware that its use was contrary to Swatch Group's instructions, Bloomberg's overriding purpose here was not to 'scoop[]' Swatch or 'supplant the copyright holder's commercially valuable right of first publication,' *Harper & Row*, 471 U.S. at 562, but rather simply to deliver newsworthy financial information to investors and analysts. That kind of activity, whose protection lies at the core of the First Amendment, would be crippled if the news media and similar organizations were limited to sources of information that authorize disclosure.

The above-referenced reasoning applies with equal force here, and as such, Plaintiff's argument regarding Market Securities' alleged intent must be readily dismissed.

---

[7] *See* MOL, footnote 4; *see also Regulatory Notice 15-36, Guidance on Best Execution Obligations in Equity, Options and Fixed Income Markets*, FINRA, *available at* https://www.finra.org/rules-guidance/notices/15-46 (last visited Aug. 24, 2022) ("Broker-dealers that are FINRA members also have best execution obligations pursuant to FINRA Rule 5310. . .The SEC has recognized that the scope of the duty of best execution must evolve as changes occur in the market that give rise to improved executions for customer orders."); *Rule 53310, Best Execution and Interpositioning*, FINRA, *available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/5310 (last visited Aug. 24, 2022) ("In any transaction for or with a customer or a customer of another broker-dealer, a member and persons associated with a member shall use reasonable diligence to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions. Among the factors that will be considered in determining whether a member has used 'reasonable diligence' are: (A) the character of the market for the security (e.g., price, volatility, relative liquidity, and pressure on available communications). . .").

[8] In *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006), the Court questions whether or not good faith is still even a valid consideration when assessing fair use after *Campbell*.

     *i.*   *The Purpose of Market Securities' Use Weighs In Favor of Fair Use*

With respect to the first fair use factor (i.e., the purpose and character of the use), Plaintiff, once again, wholly misinterprets or deliberately misconstrues Defendant's argument, and the applicable law. Specifically, Plaintiff erroneously asserts that Market Securities "does not deny that its use was purely commercial" and "does not contend that it transformed, or added anything new, to the Capitol Forum work." Opposition, p. 10. Plaintiff then goes on to intentionally distort the Court's decision in *Swatch Grp. Mgmt. Servs.*, 756 F.3d 73 by cherry-picking select language.

In *Swatch Grp. Mgmt. Servs.*, 756 F.3d 73, 82-83, the Court explicitly held that:

> there can be no doubt that Bloomberg's purpose in obtaining and disseminating the recording at issue was to make important financial information about Swatch Group available to American investors and analysts. That kind of information is of critical importance to American securities markets. Indeed, as Bloomberg points out, the Securities and Exchange Commission ("SEC") has mandated that when American companies disclose this kind of material nonpublic information, they must make it available to the public immediately. See Regulation FD, 17 C.F.R. § 243.100. *At a minimum, such public dissemination of financial information serves this public purpose in the nature of news reporting. . . where a financial research service obtains and disseminates important financial information about a foreign company in order to make that information available to investors and analysts, that purpose lends support to a finding of fair use.*

(emphasis added).

Plaintiff conveniently overlooks the above passage, and suggests that a public purpose is of limited relevance to the fair use analysis[9], and that *Swatch Grp. Mgmt. Servs.* supports that fact, when it does not. Instead, in *Swatch Grp. Mgmt. Servs.*, the Court was merely stating that its decision, including the above-quoted portion thereof, was in line with precedent, including *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65 (2d Cir. 1999), *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977), and *Financial*

---

[9] Plaintiff also misstates Defendant's position—Defendant is not suggesting that any "public function" means that a use is presumptively fair, but that Defendant's particular use here is when all relevant factors are considered.

*Information, Inc. v. Moody's Investors Service, Inc.*, 751 F.2d 501 (2d Cir. 1984). *Id.* at 86. Unlike here, each of the foregoing cases involved competing news publishers—in *Nihon*, the plaintiff was a Japanese corporation that published financial, business and industry news, and the defendant was Comline Business Data, Inc., which gathered news articles from sources and sold "abstracts" or translations of those articles to its customers; in *Wainwright*[10]*,* the plaintiff was a broker-dealer that derived most of its revenues from the preparation of analytical financial reports, and the defendant was The Wall Street Transcript Corporation, which published the Wall Street Transcript, a weekly newspaper concerned with economic, business, and financial news; and in *Financial Information, Inc.*, the plaintiff was publisher of financial information, and the defendant was also in the business of selling financial information, including a bi-weekly supplement to a yearly publication called the Municipal and Government Manual. By contrast, and like in *Swatch Grp. Mgmt. Servs.*, the parties here are not competing news publishers. Instead, here, akin to *Swatch Grp. Mgmt. Servs.*—which concerned "the use of a primary source that itself was financial news"—Plaintiff is a publisher, whose publications have market impact (*see* Complaint, ¶ 20) (in other words, the publications spur financial activity/news), whereas Market Securities is a broker

---

[10] As noted in Defendant's MOL, Plaintiff cites to *Wainwright Sec., Inc.*, 558 F.2d 91 in its Complaint (¶ 32), which is entirely distinguishable. In the Opposition, Plaintiff once again overlooks the key distinctions between *Wainwright* and this case, and baselessly asserts that the case is "on point" (Opposition, p. 1). While *Wainwright* involved the financial industry, the defendant, <u>unlike Market Securities</u>, was a news publisher, and thus, the defendant's purpose in using the plaintiff's reports was vastly different. As the Court noted, "the appellants' use of the Wainwright reports was blatantly self-serving, with the obvious intent, if not the effect, of fulfilling the demand for the original work." *Id.* at 97. In contrast, in Defendant's Commentaries, which are part of Defendant's "desk commentary", Market Securities reported on Plaintiff's October Articles in an effort to explain the reason behind the movement in stocks—information that it has an obligation to convey to its customers (*see* footnote 7 *supra*). Desk commentary is defined by FINRA as "sales material directed to institutional investors that is based on the observations of sales and trading or principal trading personnel. These communications are usually brief, focused on the near term, and prepared and disseminated quickly in response to trading events or news flashes. . .FINRA understands that many institutional investors value the timely flow of information and trade ideas from desk personnel. . .it may inform buyside traders' timing in executing orders to carry out previously made investment decisions." *Regulatory Notice 17-16, FINRA Requests Comment on Proposed Limited Safe Harbor From FINRA Equity and Debt Research Rules for Desk Commentary*, FINRA, *available at* https://www.finra.org/investors/learn-to-invest/choosing-investment-professional/registered-financial-professionals (last visited Aug. 24, 2022).

(*see* Complaint, ¶ 21) that has an obligation to inform its customers of pertinent financial information and news.

Further, despite what Plaintiff suggests, in order for a use to be transformative, a party need not necessarily add something new, but instead, a difference in purpose may qualify as transformative. *See Swatch Grp. Mgmt. Servs.*, 756 F.3d 73, 84 ("a secondary work 'can be transformative in function or purpose without altering or actually adding to the original work'", and finding the unaltered use of a work was transformative because "the two works had different messages and purposes."). As noted in Defendant's MOL, Market Securities' purported use of Plaintiff's October Articles in an effort to communicate information pertaining to the rationale behind the movement of certain stocks, maintain the integrity of the stock market and avoid information asymmetries[11] is vastly different from Plaintiff's purpose of reporting information to a finite number of users for such users' competitive advantage. Thus, Market Securities' purported use of the October Articles is in fact transformative.

Finally, Market Securities does not contest that it is a for-profit entity; however, it vehemently contests that the commercial nature of the company as a whole is outcome determinative, with respect to the first fair use factor or otherwise. Courts have consistently "recognized that '[a]lmost all newspapers, books and magazines are published by commercial

---

[11] Plaintiff contends that Market Securities' conduct does not serve a "public function" because "[i]t provides its summaries only to its clients—and thus serves no 'public function'" is patently incorrect. While Market Securities communicates material information pertaining to stocks only to its clients pursuant to its obligations to do so, this does in fact serve the public purpose of ensuring a fair, orderly, and efficient stock market, which is the very reason the SEC and FINRA rules that are applicable to Market Securities were promulgated. *See, e.g.*, Mark J. Flannery, *Economic Analysis: Providing Insight to Advance the Missions of the SEC and the PCAOB*, Public Company Accounting Oversight Board's Center for Economic Analysis 2015 Conference on Auditing and Capital Markets (Oct. 22, 2015), *available at* https://www.sec.gov/news/speech/keynote-address-pcaob-missions-of-sec-and-pcaob.html#_ftnref3; and Final Rule: Selective Disclosure and Insider Trading, Exchange Act Release Nos. 33-7881, 34-43154, IC-24599, File No. S7-31-99 (Oct. 23, 2000). Plaintiff's attempt to secure an information monopoly is revealed by its admission that its analysis is "critical to the investment decisions made by the Capitol Forum subscribers and the Market Securities clients." Opposition, p. 12.

enterprises that seek a profit,'" and have "discounted" the commercial nature of such enterprises where "the link between [the defendant]'s commercial gain and its copying is . . . attenuated' such that it would be misleading to characterize the use as 'commercial exploitation.'" *See Swatch Grp. Mgmt. Servs.*, 756 F.3d 73, 83 (internal citations omitted). Similarly, Market Securities, as a broker (Complaint, ¶ 21), mainly profits from the purchase and sale of securities to institutional investors, which is the crux of its business. *See, e.g.*, *Registered Financial Professionals*, FINRA, *available at* https://www.finra.org/investors/learn-to-invest/choosing-investment-professional/registered-financial-professionals (last visited Aug. 18, 2022) ("A broker-dealer firm is in the business of buying and selling securities—stocks, bonds, mutual funds, and certain other investment products—on behalf of its customers (as broker), for its own account (as dealer), or both").

## ii.    *Plaintiff's October Articles Are Factual Works*

With respect to the second fair use factor, the question is not "whether the work involves unprotectible facts or protectible creative content" (Opposition, p. 12)—a flagrant misstatement of the law—but instead, whether the work is factual or fictional, as '[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.'" *Am. Soc'y for Testing & Materials v. Pub..Resource.Org, Inc.*, No. 13-cv-1215 (TSC), 2022 U.S. Dist. LEXIS 60922, at *42 (D.D.C. Mar. 31, 2022) (internal citations omitted). Regardless of what components of Plaintiff's October Articles may or may not be protectible, there can be no question that Plaintiff's October Articles are factual works.

## iii.    *Defendant Took, if Anything, Only What Was Necessary to Fulfill Its Purpose*

As for the third factor, similar to the first factor, Defendant's use "was reasonable in light of its purpose of disseminating important financial information to investors and analysts." *Swatch Grp. Mgmt. Servs.*, 756 F.3d 73, 90. While Plaintiff is correct in stating that the taking of a "heart"

of a work may weigh against a finding of first use, as in *Harper & Row, Publrs.*, 471 U.S. 539[12],

not only do Plaintiff's October Articles lack a real expressive core, but moreover, this "factor will

generally weigh in favor of fair use where, as here, the amount of copying was tethered to a valid,

and transformative, purpose." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1189 (2021).

        iv.    *Defendant's Commentaries Do Not Supplant the Market for Plaintiff's October Articles*

With respect to the fourth and final factor, Plaintiff suggests that Market Securities'

conduct may affect Plaintiff's "potential market".[13] Opposition, pp. 15. However, vague,

conclusory allegations of purported market harm are insufficient. Further, as the Supreme Court

has stated:

> a potential loss of revenue is not the whole story. We here must consider not just
> the amount but also the source of the loss. As we pointed out in *Campbell,* a 'lethal
> parody, like a scathing theatre review,' may 'kil[l] demand for the original.' *Id.*, at
> 591-592, 114 S. Ct. 1164, 127 L. Ed. 2d 500. Yet this kind of harm, even if directly
> translated into foregone dollars, is not 'cognizable under the Copyright Act.' *Id.*, at
> 592, 114 S. Ct. 1164, 127 L. Ed. 2d 500. . . we must take into account the public
> benefits the copying will likely produce. Are those benefits, for example, related to
> copyright's concern for the creative production of new expression? Are they
> comparatively important, or unimportant, when compared with dollar amounts
> likely lost (taking into account as well the nature of the source of the loss)?

*Google LLC*, 141 S. Ct. 1183, 1206. Thus, on balance, Defendant's purported use of Plaintiff's

October Articles should be considered fair, and as such, Plaintiff's claim for direct copyright

infringement must fail.

### C.  Count II (Contributory Copyright Infringement) Must Be Dismissed

---

[12] Plaintiff attempts to analogize this case to *Harper* by stating that in that case "the defendant had taken only approximately 300 words from President Ford's memoirs" (Opposition, p. 13). Yet, Plaintiff fails to mention that all of those 300 words were taken verbatim.

[13] Plaintiff somehow asserts that this case is akin to a "mere duplication of the entirety of an original" (Opposition, p. 14), despite the fact that Plaintiff's own comparisons of Plaintiff's October Articles to Defendant's Commentaries unequivocally demonstrate otherwise.

While Plaintiff points to certain allegations throughout its Complaint in an effort to argue that its claim for contributory infringement was properly pled (Opposition, pp., 15-16), it fails to adequately consider that its conclusory allegations need not be accepted by this Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("Even under the liberal pleading standard of Rule 8(a)(2), 'a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.") (internal citation omitted). *Palmer Kane LLC v. Scholastic Corp.*, No. 12 CV 3890, 2013 U.S. Dist. LEXIS 27196, at *8-9 (S.D.N.Y. Feb. 26, 2013), wherein the Court granted the defendant's motion to dismiss, is instructive in this regard:

> The complaint also does not properly allege the acts that constitute infringement. The complaint contains several broad assertions that Scholastic 'exceeded the licenses it obtained to use Plaintiffs images, reused Plaintiffs works without a license' and used the images 'without permission' or 'prior to obtaining permission.' In *Marvullo v. Gruner & Jahr*, the court determined that a complaint stating that defendants published plaintiffs works 'beyond the scope ... of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss.' 105 F.Supp.2d 225, 228 (S.D.N.Y. 2000); *see also, Plunket*, (holding complaint failed to allege infringing acts where it claimed that defendants 'entered into, or have offered, licenses purporting to grant third parties the right to exploit the [plaintiffs works] in various media'). While the complaint need not specify which copyright is infringed by which act (*see Richard Feiner and Co. Inc. v. Larry Harmon Pictures Corp.*, 38 F.Supp.2d 276, 279 (S.D.N.Y. 1999), *the complaint needs to contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement*.

(emphasis added). Similarly, here, Plaintiff's attestation that "[i]t is a direct copyright violation for the Capitol Forum subscriber to send the copyrighted publications to Market Securities" (Complaint, ¶ 5; Opposition, p. 15) is insufficient to plead that third party subscribers have directly infringed Plaintiff's rights in Plaintiff's October Articles. Plaintiff's contention that "there is no requirement that a copyright infringement complaint specify the specific statutory rights that were infringed, or that it specify what specific acts were committed by a third party, including whether

the copyrighted material was transmitted either by an 'oral communication' or by an 'email'" (Opposition, p. 17) is belied by the fact that Plaintiff, admittedly, needs to plausibly allege direct infringement by a third party. Further, Plaintiff's allegation that a "subscriber sent an email or a hard copy of the Capitol Forum publications to Market Securities" is not only absent from the Complaint (Opposition, p. 17), but also, is speculative, and fails to account for oral transmission.

As indicated in Plaintiff's MOL (MOL, pp. 16-17, FN 9), given Plaintiff's utter failure to adequately allege direct infringement by a third party (or third parties), Plaintiff need not analyze the other elements necessary for a contributory infringement claim herein. *See Spinelli v. NFL*, 903 F.3d 185 (2d Cir. 2018). However, a review of both the Complaint, as well as Plaintiff's Opposition, makes it plain that Plaintiff's allegations of knowledge and substantial participation by Market Securities are wholly conclusory and likewise lack any factual support.[14]

### D. Count III (Misappropriation of Proprietary Information) Must Be Dismissed

#### a. *Hot News Misappropriation Has Not Been, and Should Not Be, Recognized In D.C.*

As a threshold matter, Plaintiff, without an ounce of legal support, asserts that "[t]he fact that this tort has not been recognized to date in the District of Columbia is of no moment." Opposition, p. 25. However, Plaintiff fails to acknowledge that the fact that it is attempting to state a claim for a tort that has yet to be recognized under the relevant law could be the death knell of its claim. In fact, courts have dismissed hot news misappropriation claims on that basis—as Market Securities noted in its MOL—which Plaintiff fails to address in its Opposition.[15] *See Allure Jewelers, Inc. v. Ulu*, No. 1:12cv91, 2012 U.S. Dist. LEXIS 134440 (S.D. Ohio Sep. 20, 2012) (dismissing claim for hot news misappropriation, finding that there was no support for the same

---

[14] Plaintiff's "allegations" are all based on false assumptions. For example, Plaintiff alleges that Market Securities "induced" third parties—a conclusion without any factual support. However, just because third parties may have "transmitted" Plaintiff's October Articles (or portions thereof) to Market Securities does not mean that it was at the behest of Market Securities, which has absolutely no incentive to engage in such alleged inducement.

[15] Plaintiff misleadingly, and incorrectly, states that only two jurisdictions have "failed to adopt the doctrine" (Opposition, p. 26), without even mentioning the cases cited herein or in Market Securities' MOL (*see* pp. 18-19).

under Ohio law); *see also Brainard v. Vassar*, 561 F. Supp. 2d 922, 932 (M.D. Tenn. 2008) ("The plaintiffs have cited no case law indicating that the Tennessee courts have adopted New York's 'hot-news' causes of action.", and noting that "[t]he content of the plaintiffs' song is protected by copyright, and a parallel 'hot news' cause of action is not necessary to protect song-writers from free-riding.").

Further, Plaintiff's argument as to why D.C. should recognize the hot news misappropriation tort (*see* Opposition pp. 24-26)—a tort that has been interpreted narrowly in jurisdictions that have recognized it—is self-serving, and lacks merit. *See NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997). First, Plaintiff's attestation that it would be "disadvantaged" if New York competitors can avail themselves of the hot news misappropriation tort and Plaintiff, based in D.C., cannot defies logic, particularly here. Defendant is located in New York, and Plaintiff could have brought suit there (*see* 28 U.S. Code § 1391); however, it deliberately chose not to do so, instead it chose its home jurisdiction for its own convenience. Second, the hot news misappropriation tort was first recognized, and has still only been recognized, as creating a cause of action where there are direct competitors,[16] which is not the case here. *See Int'l News Service*, 248 U.S. 215. Third, the hot news misapproppriation tort, especially in circumstances such as those present here, has the capacity to stifle public discourse and "impede democratic participation".[17] *Brief Amici Curiae of Citizen Media Law Project, Electronic Frontier Foundation, and Public*

___

[16] Specifically, the tort has largely been recognized in cases involving competing news publishers. While Plaintiff is a news publisher (Complaint, ¶ 2), Market Securities is not (Complaint, ¶ 21). Plaintiff cites *Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*, 2014 U.S. Dist. LEXIS 131266 (S.D.N.Y. Sep. 15, 2014) (Opposition, pp. 25-24), which, once again, was a case involving competing news publishers, unlike here. Plaintiff says "Capitol Forum stands in the same position vis a vis Market Securities that Dow Jones did with respect to Ransquawk"; however, this is simply not true, since Market Securities is not a competitor of Plaintiff. In fact, in analyzing the foregoing case, Plaintiff does not state that Market Securities is a competing news publisher (nor can it), but instead, alleges that Dow Jones is a competitor of Plaintiff (Opposition, p. 26), which is simply irrelevant.

[17] The recognition of a tort that presents First Amendment concerns, and has the capacity to impede democracy, in the nation's capital of D.C. seems particularly antithetical to the core American values that D.C. embodies.

*Citizen, Inc.*, p. 4, *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F. 3d. 876 (2d. Cir. 2011). "If mainstream media outlets, bloggers, and other non-traditional journalists are unsure whether they are violating the law, they may well think twice about sharing newsworthy information out of 'timidity and self-censorship'. . . and the chilling effect may be exacerbated by overreaching cease-and-desist letters." *Id.* at 23. If brokerage firms, such as Market Securities, feared that they could be liable for distributing facts to their customers, such fear could promote information asymmetry, and impact the intergrity of the stock market. It would also place Market Securities, and similarly siutated parties, in a bind in that it would be obligated pursuant to its SEC and FINRA obligations to report material information to its customers, but at the same time, it could open itself up to liability for doing so.

      **b.** ***Preemption Is Routinely Assessed on a Motion to Dismiss***

      In the Opposition, Plaintiff also suggests, once again, without any authority in support, that preemption is "not the grist of a motion to dismiss". Opposition, p. 21. Yet, Plaintiff's naked assertion is directly contradicted by a plethora of cases that demonstrate that preemption is routinely decided by courts on a motion to dismiss. *See, e.g.*, *Buchanan v. Sony Music Entm't*, No. 18-cv-3028 (KBJ), 2020 U.S. Dist. LEXIS 92405 (D.D.C. May 26, 2020) (granting motion to dismiss, finding common law negligence and strict liability claims asserted in the complaint were preempted by the Copyright Act); *We Shall Overcome Found. v. Richmond Org., Inc.*, 221 F. Supp. 3d 396 (S.D.N.Y. 2016) (granting motion to dismiss, finding that each of the state law claims were preempted); *Ste. Genevieve Media, LLC v. Pulitzer Mo. Newspapers, Inc.*, No. 1:16 CV 87 ACL, 2016 U.S. Dist. LEXIS 143686 (E.D. Mo. Oct. 18, 2016) (granting motion to dismiss, finding state unjust enrichment claim was preempted, and plaintiff failed to state a claim for hot news misappropriation); *Munro v. Lucy Activewear, Inc.*, No. 16-79 (JRT/KMM), 2016 U.S. Dist. LEXIS 135692 (D. Minn. Sep. 29, 2016) (granting motion to dismiss, finding, among other things,

that the  common law misappropriation claim failed as preempted by the Copyright Act and due

to the lack of a cause of action in Minnesota law); *NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-

CV-05058-LHK (HRL), 2015 U.S. Dist. LEXIS 11406 (N.D. Cal. Jan. 29, 2015) (granting motion

to dismiss to the extent claim was preempted by Copyright Act); and *Munro v. Lucy Activewear,*

*Inc.*, No. 16-79 (JRT/KMM), 2016 U.S. Dist. LEXIS 135692 (D. Minn. Sep. 29, 2016).

###### c. *Plaintiff's Hot News Claim Is Unequivocally Preempted*

Regardless, it is clear that Plaintiff's claim for hot news misappropriation—to the extent

this Court were to recognize it—is preempted, and Plaintiff's arguments to the contrary are utterly

baseless. First, Plaintiff deliberately misconstrues *Barclays Capital Inc. v. Theflyonthewall.com,*

*Inc.*, 650 F.3d 876 (2d Cir. 2011), and somehow suggests that by seeking to protect "its factual

reporting, as opposed to its creative works", its claim is saved from preemption. Opposition, p. 19.

The portion of *Barclays Capital Inc.* that Plaintiff cites was a portion of the Court's opinion

wherein the Court was actually analyzing the free-riding element of the hot news misappropriation

claim. The Court found that there was no free-riding since "Fly is reporting financial news —

factual information on Firm Recommendations — through a substantial organizational effort.

Therefore, Fly's service — which collects, summarizes, and disseminates the news of the Firms'

Recommendations — is not the 'INS-like' product that could support a non-preempted cause of

action for misappropriation." *Id*. at 905. The Court then went on to speculate about a competing

product that *could*, in theory, give rise to a hot news misappropriation claim; however, said portion

of the opinion had nothing to do with the protection of factual reporting versus creative works. In

fact, earlier on in the opinion, the Court specifically noted as follows:

> In deciding whether a state-law claim is preempted by the Copyright Act, then, it
> is not determinative that the plaintiff seeks redress with respect to a defendant's
> alleged misappropriation of uncopyrightable material — e.g., facts — contained in
> a copyrightable work. 'Copyrightable material often contains uncopyrightable
> elements within it, but Section 301 preemption bars state law misappropriation

claims with respect to uncopyrightable as well as copyrightable elements,' if the
work as a whole satisfies the subject matter requirement.

*Id.* at 892. Plaintiff cannot reasonably, in good faith, contest that Plaintiff's October Articles, as a

whole, satisfy the subject matter requirement, given that Plaintiff claims that portions of Plaintiff's

October Articles are subject to copyright protection and is simultaneously asserting a copyright

infringement claim. *See NBA*, 105 F.3d at 849  (rejecting partial preemption, and stating that

"[c]opyrightable material often contains uncopyrightable elements within it, but Section 301

preemption bars state law misappropriation claims with respect to uncopyrightable as well as

copyrightable elements", and that a work may consist of uncopyrightable material does not remove

the work as a whole outside the subject matter protected by the Copyright Act).

### i.    *Time-Sensitivity Is Not Adequately Alleged*

Because Plaintiff's October Articles fall within the ambit of the Copyright Act, Plaintiff's

missappropriation claim can only survive if it satisfies the "extra elements" set forth in *NBA*, which

it does not.[18] With respect to the purported time sensivity of Plaintiff's October Articles, to satisfy

this element, Plaintiff "must allege not only that the news was time-sensitive when it was gathered,

but that it was time-sensitive when it was misappropriated" *BanxCorp v. Costco Wholesale Corp.*,

723 F. Supp. 2d 596, 612 (S.D.N.Y. 2010). While Plaintiff has alleged that Plaintiff's October

Articles are time-sensitive at the point of distribution to its subscribers (Complaint, ¶¶ 2, 52, 53),

it has not alleged in its Complaint (or its Opposition for that matter) that Plaintiff's October Articles

remained time-sensitive <u>*at the point of the distribution of Defendant's Commentaries*</u>, and thus, its

misappropriation claim must fail on that basis. *See Ste. Genevieve Media, LLC*, 2016 U.S. Dist.

---

[18] Plaintiff asserts, without support, that these elements are not "elements of Capitol Forum's misappropriation claim";
however, such elements have routinely been held to be part of the claim itself. In fact, in *X17, Inc. v. Lavandeira*, 563
F. Supp. 2d 1102, (C.D. Cal. 2007), which is cited by Plaintiff in the Opposition, the Court suggests as such. Moreover,
Plaintiff specifically pled such elements (albeit in a conclusory fashion) in Count III of the Complaint (*see* ¶¶ 53).
Thus, the position it takes it the Opposition seems to be at odds with its own pleading.

LEXIS 143686, at *14  (granting motion to dismiss hot news misappropration claim since the "facts alleged do not demonstrate that the articles allegedly misappropriated were time sensitive when they were published or when they were misappropriated").

      ii.    *Market Securities Is Not Free Riding & Is Not In Competition with Plaintiff*

With respect to free-riding, Plaintiff mistates Defendant's argument by asserting that "Market Securities does not deny that it is profiting from information developed at significant cost by Capitol Forum" and that Market Securities "argues that it is not free riding because it provides attribution to Capitol Forum as its source". Opposition 22. While Market Securities' attribution to Plaintiff demonstrates a lack of free-riding, Market Securities vehemently contests that it profited from Plaintiff's October Articles or otherwise engaged in free-riding, as that term has been understood in case precedent.[19]

As the Court noted in *NBA*, 105 F.3d at 854,

> An indispensable element of an INS 'hot-news' claim is free-riding by a defendant on a plaintiff's product, enabling the defendant to produce a *directly competitive product for less money because it has lower costs*.

Here, Plaintiff and Defendant—a news publisher and a broker-dealer—are not in direct competition, and Defendant's Commentaries, which are part of Defendant's "desk commentary" (*see* footnote 10, *supra*), cannot reasonably be construed as competitive with Plaintiff's October Articles. *See Barclays Capital Inc.*, 650 F. 3d. 876 (noting that free-riding was defined by *INS* as taking material and appropriating and selling it as one's own, which the defendant did not do). Like in *Barclays Capital Inc.*, Plaintiff's October Articles made news by creating market impact (*see* Complaint, ¶ 20), which Defendant then reported on, while attributing its source (i.e.,

---

[19] Plaintiff overlooks Defendant's entire argument regarding its lack of free-riding, of which attribution is only one element. *See* MOL, pp. 20-21.

Plaintiff). As a broker, the vast majority of Defendant's profits come from the execution of sales or purchases of securities for its customers to whom Defendant owes a fiduciary duty (*see* footnote 7, and FINRA's definition of broker-dealer on pp. 9, *supra*). Given that Defendant largely reaps profit "upon the execution of sales or purchases of securities", Defendant's conduct cannot be considered "an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped. . .in order to divert a material portion of the profit from those who have earned it to those who have not". *Id.* at 904.

Therefore, upon consideration of the above factors, it is clear that Plaintiff's hot news misappropriation claim must fail. It also should be noted that:

> the driving force in the *International News* opinion was the need to provide an equitable remedy to protect one news agency's quasi-property interest in factual news from unauthorized use by a competitor where no alterative remedy was available. Such is not the case here where plaintiff has as potential remedies at the very least copyright claims

*In Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.*, No. 93C20244, 1994 U.S. Dist. LEXIS 15736, at *17 (N.D. Il. Oct. 24, 1994) (finding plaintiff's misappropriation claim was preempted since it was not of the type contemplated by *International News*, and the plaintiff clearly had not been deprived of the value of its newsgathering efforts when the defendant used the material at issue after plaintiff's publication of the news articles). Although Plaintiff's copyright claim likewise must fail for the reasons set forth above, this case is clearly not of the type contemplated by *International News* or *NBA*.

### III.   CONCLUSION

For the foregoing reasons, as well as those articulated in Defendant's MOL, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint, in its entirety, with prejudice and grant such other relief as is just and appropriate.

Dated:  August 31, 2022                    Respectfully submitted,

                                           **EPSTEIN DRANGEL LLP**

                                           BY:    S/ *Kerry B. Brownlee*
                                                  Kerry B. Brownlee
                                                  NY Bar No. 5309075
                                                  kbrownlee@ipcounselors.com
                                                  Jason M. Drangel (JD 7204)
                                                  NY Bar No. 2538981
                                                  jdrangel@ipcounselors.com
                                                  60 East 42nd Street, Suite 1250
                                                  New York, NY 10165
                                                  Telephone: (212) 292-5390
                                                  Facsimile: (212) 292-5391
                                                  *Attorneys for Defendant*
                                                  *Market Securities, LLC*
                                                  *PRO HAC VICE*

                                           **COPYRIGHT COUNSELORS, LLC**

                                           BY:    S/ *John D. Mason*
                                                  John D. Mason
                                                  DC Bar No. 464072
                                                  7315 Wisconsin Ave.
                                                  Suite 400 West
                                                  Bethesda, MD 20814
                                                  Telephone: (888) 313-3637
                                                  Facsimile: (301) 760-7032
                                                  jmason@copyrightcounselors.com
                                                  *Attorney for Defendant*
                                                  *Market Securities, LLC*