**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM, | |
| Plaintiff, | Civil Action No. 22-1333 (BAH) |
| v. | Judge Beryl A. Howell |
| MARKET SECURITIES, LLC, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff DBW Partners, a District of Columbia-based limited liability company doing business as the Capitol Forum ("Capitol Forum"), Complaint ("Compl.") ¶ 9, ECF. No 1, brings this action against Market Securities, a Delaware-based limited liability company, alleging that the latter copied several of Capitol Forum's proprietary reports and analysis on breaking financial market news, in what amounts to direct copyright infringement and contributory copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and misappropriation of proprietary information under the common law, Compl. ¶¶ 35–56.  Defendant has moved for dismissal of all three claims, Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 15, on the grounds that plaintiff fails to state a claim for either direct or contributory copyright infringement, that its allegedly infringing conduct is protected by fair use, and that plaintiff's claim for misappropriation of proprietary information is not cognizable under District of Columbia law. For the reasons explained below, defendant's motion is granted in part and denied in part, and this suit will proceed based only on plaintiff's direct copyright infringement claim.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Summarized below is relevant factual background, as set out in the Complaint, followed by the procedural history leading to the pending motion.

Plaintiff Capitol Forum is an "investigative news and legal analysis company" that provides regular reports, on a paid subscription basis, analyzing "the effect of government policy on publicly traded corporations and market competition."  Compl. ¶ 14.  The reports often include publicly available information, such as the fact that the Federal Trade Commission has commenced a particular investigation or an impending merger between two companies, but in large part consist of original writing and analysis that is "the product of the full-time effort, skill, and judgment of, among others, [Capitol Forum] analysts, journalists, and lawyers assigned to follow developments in particular markets."  *Id.* ¶¶ 15, 25, 28.  These reports are written for an audience that largely consists of "policymakers, law firms, investors, and industry stakeholders" and are "intended to inform, among other things, a subscriber's investment decisions" and provide related economic guidance.  *Id.* ¶¶ 14, 16.

Capitol Forum distributes its reports only to its paid subscribers and other authorized recipients.  *Id.* ¶ 19.  Its subscription agreement, which all subscribers execute, prohibits the redistribution of Capitol Forum's content.  *Id.*  Capitol Forum also "applie[s] for, obtain[s], and owns valid copyright registrations" in each of its reports.  *Id.* ¶ 18.

Defendant Market Securities is a "financial services broker," which, among other services, provides advisory financial reports to its clients.  *Id.* ¶ 21.  Market Securities' reports incorporate "timely market information from various sources" that is repackaged into digest-style blurbs that are distributed to Market Security clients online.  *Id.* ¶¶ 21, 23.

Allegedly, one of Market Securities' sources has been Capitol Forum's reports. "Within minutes of the release of many of Capitol Forum's reports," plaintiff alleges that Market Securities obtains the report "from one or more of Capitol Forum's subscribers" and then "republish[es] a summary" of the Capitol Forum report to its clients. *Id.* ¶¶ 4, 21–22. Per plaintiff, these summaries merely "repackage, copy, and quote" Capitol Forum's original analysis, without the undertaking of "any creative or journalistic efforts of [Market Securities'] own to transform [Capitol Forum]'s work into something new or different from Capitol Forum's original report," nor any attempt to provide meaningful additions to or comment on the original report. *Id.* ¶ 23–24. As a result, the Market Securities reports often contain identical turns of phrase to the Capitol Forum originals and structure their reporting on the underlying market news along the same analytical steps. *See, e.g.*, *id.* ¶¶ 27–30; *see also id.*, Ex. A, Sample Capitol Forum Publications, ECF Nos. 1-1, 1-2; *id.*, Ex. B, Corresponding Market Securities Publications, ECF No. 1-4.

Market Securities began drawing on Capitol Forum's reports to produce its own reports since at least December 2020, but Capitol Forum only became aware of its use in October 2021. Compl. ¶¶ 6, 31. At that point, Capitol Forum issued a cease-and-desist demand letter. *Id.* ¶ 6. Capitol Forum remains uncertain as to the exact number of times Market Securities copied its reports, because the Market Securities reports are not available publicly. *Id.* ¶ 31.

Capitol Forum initiated the instant suit in May 2022, bringing claims for direct copyright infringement, contributory copyright infringement, and, under the common law, misappropriation of proprietary information and requesting both injunctive and monetary relief. *See id.* ¶¶ 35–56, "Prayer for Relief." Defendant now seeks dismissal of plaintiff's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure

3

12(b)(6), which motion is now ripe for resolution.  *See* Def.'s Reply Mem. Supp. Mot. Dismiss ("Def.'s Reply"), ECF 19.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *VoteVets Action Fund v. United States Dep't of Veterans Affairs*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Consequently, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'"  *VoteVets Action Fund*, 992 F.3d at 1104 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)) (alteration in the original).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'"  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

4

In this Circuit, dismissals with prejudice under Rule 12(b)(6) are disfavored and the "standard for dismissing a complaint with prejudice is high." *Rudder*, 666 F.3d at 794 (quoting *Belizan v. Hershon,* 434 F.3d 579, 583 (D.C. Cir. 2006)); *see also Rollins v. Wackenhut Servs., Inc.,* 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (noting that this Circuit's "decisions have imposed a 'high' bar for Rule 12(b)(6) dismissals with prejudice," and that such "case law on Rule 12(b)(6) dismissals is not fully aligned with the Rules" since "[o]n the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise."). Dismissal with prejudice may be appropriate, however, "when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

## III.   DISCUSSION

Plaintiff's three claims are now assessed, *seriatim,* under the Rule 12(b)(6) standard. Accepting the factual allegations in its complaint as true, plaintiff fails to establish entitlement to relief on its contributory copyright infringement and misappropriation of proprietary information claims, warranting dismissal of those claims for failure to state a claim. Plaintiff nonetheless successfully states a plausible claim to relief on its direct copyright infringement claim, and the suit will proceed accordingly.

### A.  Plaintiff States a Claim for Direct Copyright Infringement.

"To prevail on a copyright claim, a plaintiff must prove both [1] ownership of a valid copyright and [2] that the defendant copied original or 'protectible' aspects of the copyrighted work.'" *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 361 (1991)). While registration with the

Copyright Office is not a prerequisite for the ownership of a valid copyright, *see* 17 U.S.C. § 408, timely registration does serve as "*prima facie* evidence of the validity of the copyright," *see Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998); 17 U.S.C. § 410(c). The second element may be established either with direct evidence that a defendant "copied" the protected work or by establishing: "(1) that defendants had access to the copyrighted work, and (2) the substantial similarity between the protectible material in plaintiff's and defendants' works." *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 40–41 (D.D.C. 2007). Protectible material includes only those aspects of an author's work "that display the stamp of the author's originality," and does not include the underlying facts, ideas, or other elements that are "standard[] in the treatment of a given topic." *Sturdza*, 281 F.3d at 1295–96.

Plaintiff's complaint adequately establishes both required elements. First, plaintiff alleges that it registered for and owns valid copyrights in each of its reports, including those published during the period in which Market Securities is alleged to have been copying those reports. *See* Compl. ¶ 18. Second, plaintiff successfully alleges that defendant copied the protectible aspects of its reports by alleging (1) that defendant had access to the copyrighted work—by obtaining them from a Capitol Forum subscriber, *see id.* ¶ 22—and (2) that several of defendant's reports contained identical wording and structure to the Capitol Forum originals, *see id.* ¶¶ 27–30 (providing, as representative examples, a comparison of two Market Securities and Capitol Forum reports).

Defendant nonetheless contends that plaintiff fails to make out a *prima facie* case in two way, including, first, by not exhaustively cataloging every copyrighted report that Market Securities may have copied. *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 8–9, ECF No. 15-1. Plaintiff's complaint, however, provides adequate explanation as to the good reason

for this, namely, that Market Securities' reports are not publicly available, so while plaintiff has identified at least two reports which seemingly copy its own and the period over which it has reason to believe the copying occurred, it requires discovery to access all of Market Securities' reports to determine how many are potentially infringing.  *See* Compl. ¶ 31.  The fact that plaintiff identifies at least two specific examples of allegedly infringing works is enough to move its claims beyond the pleading stage, even if the true extent of defendant's infringement ends up being lesser or greater.

Next, defendant asserts that plaintiff's comparison of the two sets of reports does not establish substantial similarity to the protectible material in the Capitol Forum reports, but only "similarities in the underlying facts[] and common verbiage within the financial industry," which are not protected by copyright.  *See* Def.'s Mem. at 9–11.  Such an argument strains credulity in light of the line-by-line comparison of the two reports provided in the complaint.  Market Securities may be reporting on the same underlying unprotectible facts as Capitol Forum, but doing so by using the precise turns of phrase, analytical frameworks, and subjective conclusions as the latter, *see* Comp. ¶¶ 27, 29–30 (providing the comparisons), is sufficient at this stage plausibly to allege substantial similarity to the creative expression protected by Capitol Forum's copyright.  *See Prunte*, 484 F. Supp. 2d at 41 (noting that "[s]ubstantial similarity is a question that should be decided either by a factfinder at trial or, in some cases, in the context of a motion for summary judgment" rather than litigated in a Rule 12(b)(6) motion to dismiss).

Plaintiff's allegations, accepted as true, thus adequately establish the elements of a *prima facie* copyright infringement claim, and defendant's motion to dismiss Count I must be denied.[1]

---

[1]    Defendant devotes much of its briefing in seeking dismissal to its affirmative fair use defense. *See* Def.'s Mem. at 12–19.  The law is well-settled in this Circuit, however, that a defense of fair use is generally considered "premature" at the motion to dismiss stage and is not addressed on a Rule 12(b)(6) motion, as it presents "a mixed question of law and fact" and as such "involves a fact-intensive inquiry."

**B.  Plaintiff's Claim for Contributory Copyright Infringement Insufficiently Pled.**

"In order to establish a claim of contributory copyright infringement, the plaintiff must

allege (1) direct infringement by a third party; (2) knowledge by the defendant that third parties

were directly infringing; and (3) substantial participation by the defendant in the infringing

activities."  *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (internal quotation

omitted).  The first element, then, requires allegations that would establish a claim for direct

copyright infringement by a third party, the requirements of which have been discussed *supra* in

Part III.A.  *See id.* (citing *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 884

(N.D. Ill. 2005)); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126–27 (D.D.C. 2011).  Here,

plaintiff's complaint falls short.  While alleging that, on information and belief, a third party (in

particular, "one or more Capital Forum subscribers") "transmit[ted] the Capitol Forum

publications" to Market Securities at the latter's inducement, Compl. ¶ 22, this allegation merely

amounts to a conclusory assertion that contributory copyright infringement has occurred.  This

theory as to how defendant obtained timely copies of Capitol Forum reports for allegedly

infringing purposes is just speculation at this point.  Absent in the complaint are any supporting

factual allegations that, if true, would establish Capitol Forum's entitlement to relief for direct

---

*See, e.g.*, *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 n.8 (D.D.C. 2015) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) and collecting cases); *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295, 297 (D.D.C. 2017) (declining to "disrupt th[e] tradition" of not addressing a fair use defense on a motion to dismiss).

    While defendant points to the Fifth Circuit's observations that fair use may be considered at this stage where "a successful fair use defense appears on the face of the operative complaint," Def.'s Mem. at 12 (citing *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320–21 (5th Cir. 2022)), here the pleadings do not include sufficient facts to assess the proffered fair use defense.  As the Complaint makes plain, plaintiff does not yet know "[t]he full extent of Market Securities' copyright violations," as discovery is required to access Market Securities's own reports, which are not publicly available, and to determine how many have been based on Capitol Forum's copyrighted works and to what extent.  *See* Compl. ¶ 31.  Such discovery will clearly bear on the fair use factors of "the amount and substantiality of the portion[s] used in relation to the copyrighted work[s] as a whole" and "the effect of the use upon the potential market for or value of the copyrighted work[s]," 17 U.S.C. § 107, and as such defendant's invitation to convert its motion into one for summary judgment prior to this discovery is declined.

copyright infringement against the third parties, like those that were provided vis-à-vis Market Securities' direct infringement.  *See, e.g.*, *Palmer Kane LLC v. Scholastic Corp.*, No. 12-cv-3890, 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (explaining that "the complaint needs to contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement").

Plaintiff's claim for contributory copyright infringement will therefore be dismissed under Rule 12(b)(6), without prejudice.

### C.  Plaintiff's Claim for Misappropriation of Proprietary Information Must Fail.

Plaintiff's final claim arises under the common law and is styled as the "misappropriation of proprietary information."  *See* Compl. ¶¶ 50–56.  Plaintiff's supporting allegations and briefing make clear that this is meant to be a claim for "hot news misappropriation."  Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 24–26, ECF No. 17; Compl. ¶ 56.  The "hot news" doctrine is a century-old tort that traces its origins to the Supreme Court's decision under federal common law in *International News Service v. Associated Press*, 248 U.S. 215 (1918), that provides limited protection against the misappropriation of facts—otherwise unprotected by copyright—when those facts consist of time-sensitive information generated by the owner at substantial time or expense, where allowing competitors to free-ride off the use of that information would be unfair.  *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 843, 845, 847–54 (2d Cir. 1997).

In the absence of the federal common law that underpinned the original formulation of the hot news doctrine, the tort survives only in individual states' common law.  *See Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 894 (2d Cir. 2011).  Only a handful of states have recognized a cause of action for hot news misappropriation, and, as plaintiff acknowledges, the District of Columbia is not one of them.  *See* Pl.'s Opp'n at 31.  Nevertheless,

resolving here whether the District would or should recognize the tort is unnecessary, as plaintiff's allegations fall short of stating a claim regardless.

Those states that do recognize the tort have "repeatedly emphasized [its] 'narrowness,'" as it amounts to an "exception from preemption" under the Copyright Act, 17 U.S.C. § 301. *Barclays*, 650 F.3d at 896 (citing *Nat'l Basketball*, 105 F.3d at 843, 848, 851, 852). To survive preemption, an "indispensable element" of a hot news claim "is free-riding by a defendant on a plaintiff's product," *id.* at 903 (quoting *Nat'l Basketball*, 105 F.3d at 854), where "free-riding" specifically means "taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and . . . appropriating it and selling it as [the defendant's] own," *id.* at 903 (quoting *Int'l News Serv.*, 248 U.S. at 239) (alteration in original). That definition means that the hot news doctrine may protect information "gathered" or "acquir[ed]" through a plaintiff's efforts akin to investigation or reporting, but not information "create[d] using [its] expertise and experience." *Id.* Further, when the defendant passes off the misappropriated information, it must be sold "as its own." *Id.*

As in *Barclays*, these nuances in the "free-riding" element are fatal to plaintiff's claim. First, plaintiff's complaint identifies Capitol Forum's "analysis" of the market news as the information upon which defendant "free ride[s]," Compl. ¶ 53, yet this is exactly the sort of creative output developed using expertise and experience that may be protected by copyright, but cannot underlie a hot news claim without running afoul of preemption. *See Barclays*, 650 F.3d at 903 (noting that plaintiffs "may be 'acquiring material' in the course of preparing their reports" on the business of publicly traded companies, but that their hot news claim sought "only to protect their Recommendations [to their clients as to whether to buy or sell certain securities],

something they *create* using their expertise and experience rather than *acquire* through efforts

akin to reporting"). Second, plaintiff does not allege that Market Securities attempts to pass off

the analysis as if it were its own conclusions or recommendations; rather, it explains that the

Market Securities reports present the copied material as a digest or summary of the Capitol

Forum publications and attributes them accordingly. *See* Compl. ¶¶ 26, 28. Given that "specific

attribution," Market Securities cannot be said to be selling the analysis "as its own." *See*

*Barclays*, 650 F.3d at 903 (concluding the same where defendant attributed the buying and

selling recommendations to the originating brokerage firms).

Plaintiff's allegations thus would not establish a claim for hot news misappropriation

even if such a claim were recognized under District of Columbia law, and accordingly Count III

will be dismissed under Rule 12(b)(6), without prejudice.

## VI.   CONCLUSION AND ORDER

For the foregoing reasons, upon consideration of defendant's Motion to Dismiss, ECF

No. 15, the legal memoranda in support and in opposition, and the entire record herein,

defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's

claims for misappropriation of proprietary information and contributory copyright infringement

in Counts II and III are dismissed, while its claim for direct copyright infringement in Count I

survives the motion to dismiss. Thus, it is hereby—

**ORDERED** that defendant's Motion to Dismiss, ECF No. 15, is **GRANTED IN PART**

and **DENIED IN PART**; it is further

**ORDERED** that defendant's Motion is **GRANTED** as to plaintiff's claims for

contributory copyright infringement and misappropriation of proprietary information, in Counts

II and III, respectively, which are **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED** that defendant's Motion is **DENIED** as to plaintiff's claim for direct copyright infringement in Count I; and it is further

**ORDERED** that the parties shall submit jointly, by April 7, 2023, a schedule to govern further proceedings in this matter.

**SO ORDERED.**

Date:  March 23, 2023

_____
BERYL A. HOWELL
Judge, U.S. District Court for the
District of Columbia