**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| DBW PARTNERS, LLC | : | |
| d/b/a THE CAPITOL FORUM, | : | |
| 1629 K Street, N.W. | : | |
| Suite 300 | : | |
| Washington, DC 20006 | : | Civil Action 1:22-cv-01333-BAH |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| MARKET SECURITIES, L.L.C. | : | |
| 85 Broad Street, 17th Floor | : | |
| New York, New York, 10004 | : | |
| | : | |
| | : | |
| : | | |
| Defendant. | : | |

---

<u>**MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT**</u>

Plaintiff, DBW Partners LLC, d/b/a The Capitol Forum, files this Memorandum in support of its Motion to Amend the Complaint in this action to add a claim for direct copyright infringement against BTG Pactual US LLC, and to add a contributory copyright infringement claim against Market Securities, LLC, and states as follows.

## I.      INTRODUCTION

This is an action for copyright infringement. At the time this action was filed, Capitol Forum had learned of two specific instances of infringement by Market Securities but was unaware of the full extent of the violations because the Market Securities reports were not publicly available.  Accordingly, as the Court noted, discovery was required "to access all of

1

Market Securities' reports to determine how many are potentially infringing." March 23, 2023, Order, Document 20, at 7.

The initial complaint in this action alleged two copyright claims. The first was a claim for direct infringement based on the activities of Market Securities in copying Capitol Forum's copyrighted publications.  The second was a claim for contributory infringement based upon the allegation that Market Securities had induced one of the Capitol Forum subscribers to commit direct infringement by sending the publications to it.

Market Securities filed a motion to dismiss both claims.  It argued that the direct infringement claim should be dismissed because its articles were not "substantially similar" to the Capitol Forum publications, an argument the Court found: "strains credulity in light of the line by line" comparisons of the Capitol Forum publications to the Market Securities reports.  Order of March 23, 2023, Document 20, at 8.  Regarding the contributory claim, Market Securities argued that Capitol Forum's allegation, on information and belief, that one of its subscribers sent the publications to Market Securities was "speculative."  Reply Brief of Market Securities, August 31, 2023, Document 19, at 12. *Market Securities advanced this argument despite its knowledge that one of its subscribers, BTG Pactual, had in fact, sent the publications to Market Securities.*  Nevertheless, the Court appeared to accept this argument and dismissed the contributory infringement claim (without prejudice to amend): "This theory as to how defendant obtained timely copies of Capitol Forum reports for allegedly infringing purposes is just speculation at this point."  Order of March 23, 2023, Document 20, at 8.

The allegation can no longer be considered speculative.  The evidence gathered to date demonstrates that BTG Pactual regularly transmitted the copyrighted articles to Market

Securities, which in turn, copied the salient portions of the Capitol Forum articles and republished this content to its clients.  The conduct of BTG Pactual in transmitting the Capitol Forum articles constitutes a direct copyright violation.  The conduct of Market Securities in inducing this violation constitutes a contributory copyright violation.  And the conduct of Market Securities in copying the Capitol Forum material constitutes a direct copyright violation.  This motion seeks to amend the complaint by adding BTG Pactual as a defendant and alleging a direct infringement claim against it.  It also seeks to add a contributory infringement claim against Market Securities.

## II.    STATEMENT OF FACTS

Through discovery and investigation, Capitol Forum learned that one of its subscribers, BTG Pactual US LLC, has been regularly downloading and transmitting its copyrighted publications to Market Securities.  Capitol Forum estimates that over 65 publications were transmitted to and plagarized by Market Securities.

Market Securities is a broker dealer and provides investment advice to its clients, one of which is BTG Pactual.  The BTG Pactual employee who sent BTG Pactual the publications is Cristina Suarez. The Market Securities employee who received (and copied) the Capitol Forum publications is Jennifer Donaker.  Ms. Donaker and Ms. Suarez are friends, having become acquainted at their previous employment.

Shortly after BTG Pactual became a Capitol Forum subscriber and Ms. Suarez began receiving the Capitol Forum reports, Ms. Suarez and Ms. Donaker entered an arrangement by which Ms. Suarez would send the Capitol Forum reports to Ms. Donaker.  Ms. Donaker agreed to provide her views on the Capitol Forum analyses to Ms. Suarez if the publications would be sent to her.  Ms. Donaker also agreed that upon transmittal of the Capitol Forum reports, she

would agree not to share them further, and would not use or republish the Capitol Forum material in any fashion.  Ms. Donaker's actions and expressions in this regard enticed and encouraged BTG Pactual's direct infringement.

 Ms. Suarez and Ms. Donaker knew their conduct was illegal and thus took affirmative steps to conceal their unlawful activity.  First, they agreed that the Capitol Forum reports would be transmitted over the WhatsApp applications on their personal cellular telephone devices, a method by which they could escape detection.  They did so despite their awareness that the use of such personal communication devices to send and receive messages that their firms cannot capture and monitor is prohibited by the regulations of the Financial Regulatory Authority (FINRA).  *See eg, FINRA Increases Scrutiny of Brokers WhatsApp Use,* available at: https://www.advisorhub.com/finra-increases-scrutiny-of-brokers-whatsapp-use/   Second, they agreed to delete all communications between themselves over the WhatsApp system—although FINRA regulations require all regulated persons and entities to preserve all records of communications for at least three years.  FINRA Securities Exchange Act Rule 17a-4(b)(4), available at SEA 17a-4(b)(4)

Based upon Ms. Donaker's agreement that she would not share, use, or republish the Capitol Forum material, Ms. Suarez began to send the reports to her in March 2020.  The Capitol Forum publications all bear a watermark with the email address of its subscriber.  In discovery, Market Securities has produced three Capitol Forum publications that were in its possession, all having a watermark bearing Ms. Suarez' email address.  Beyond these violations, Capitol Forum estimates that Ms. Suarez sent over 60 Capitol Forum copyrighted publications to Ms. Donaker.

### III.  LEGAL STANDARD

4

As this court stated in *Food and Water Watch v.United States Department of Agriculture,* 1:17-cv-01714-BAH (June 10, 2019), under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint under Rule 15(a) 'shall be freely given when justice so requires, *citing Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting FED. R. CIV. P. 15(a)).  As the Supreme Court has held "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, the party opposing the amendment bears the burden to show why leave should not be granted. *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 54 (D.D.C. 2019); *Gudavich v. District of Columbia,* 22 F. App'x. 17, 18 (D.C. Cir. 2001). The "the grant or denial of leave to amend is committed to a district court's discretion," *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015), but "outright refusal to grant the leave without any justifying reason appearing for the denial" is an abuse of discretion. *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1129 (D.C. Cir. 2015).

## IV.  LEAVE TO AMEND SHOULD BE GRANTED

### A.  The Direct Infringement Claim Against BTG Pactual

The Copyright Act grants the copyright holder "exclusive" rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies.  *Sony Corp v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).   "Anyone who violates any of the exclusive rights of the copyright owner. . .is an infringer of the copyright" and the copyright holder is entitled to institute an action for copyright infringement against the infringer.  17 U.S.C. § 501. "In order to prove copyright infringement, a plaintiff must show that it owns a valid copyright, and it must establish that the defendant engaged in unauthorized

copying of the work protected by  the  copyright." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). There is no dispute in this case that Capitol Forum has pled and demonstrated that is the owner of the registered copyrights at issue in this action, nor should there be any dispute that BTG Pactual violated Capitol Forum's copyright protections by transmitting the copyrighted Capitol Forum publications to Market Securities.  The direct infringement claim against BTG Pactual has been properly pled and leave to amend should be granted.

### B. The Contributory Infringement Claim Against Market Securities

The contributory infringement claim against Market Securities has also been properly pled.  As noted, the pleading deficiency in the initial complaint has been overcome, as there is no longer a question that a Capitol Forum subscriber—BTG Pactual—transmitted the Capitol Forum publications to Market Securities.

As the Court stated in its March 23, 2023 order, "in order to establish a claim of contributory copyright infringement, the plaintiff must allege (1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (internal quotation omitted). The first prong of the contributory infringement analysis—direct copyright infringement by a third party—requires the plaintiff to establish: (a) the identity of the specific copyrighted works that were infringed; (b) proof of ownership to the copyrights in those works; (c) registration of those copyrights; and (d) proof as to the acts and times of the infringements. *Id.* (citing *Home & Nature, Inc. v. Sherman Specialty Co.,* 322 F.Supp.2d 260, 266 (E.D.N.Y. 2004) (quoting *Krasselt v. Joseph E. Seagram*

*& Sons*, 2002 WL 1997926, at *1 (S.D.N.Y. Aug. 29, 2002)).  All these requirements are met in the proposed Amended Complaint.  Capitol Forum has alleged (and demonstrated) its proof of ownership in the copyrighted works and has alleged (and demonstrated) that its copyrights were duly registered.  Capitol Forum has also identified its publications that were illegally sent to Market Securities and the dates of those infringements.

The second prong of the contributory copyright infringement analysis—proof that the defendant had knowledge of the direct infringement—has also been pled in the Amended Complaint; and it rests upon a litany of allegations showing that Market Securities knew that BTG Pactual was directly infringing the copyrighted material: (1) the Capitol Forum publications sent to Ms. Donaker bore a clear and conspicuous copyright notice; (2) Ms. Donaker agreed to communicate through her WhatsApp application to prevent detection of the direct infringement; (3) Ms. Donaker deleted the Capitol Forum publications from her cellular telephone logs to prevent detection of the direct infringement; and (4) Ms. Donaker promised not to republish the Capitol Forum articles to prevent detection of the direct infringement.

The third element of a contributory copyright infringement claim—that the defendant substantially participated in the infringing activity—requires the plaintiff to show "a relationship between the ... services provided by the [d]efendant[ ] and the alleged infringing activity as opposed to the mere operation of the website businesses." *Newborn,* 391 F. Supp. 2d at 186 (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* No. C 04-0371 JW, 2004 WL 1773349, at *4 (N.D. Cal. Aug. 5, 2004)).  As the court stated in *Newborn:* "[m]erely supplying the 'means to accomplish an infringing activity' cannot give rise to the imposition of liability for contributory

copyright infringement." *Arista Records,* 2002 WL 1997918, at *5 (quoting *Sony Corp. of Am. v. Universal City Studios,* 464 U.S. 417, 436, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)).

Accordingly, the alleged contributory infringer must have done more than simply engage in a passive activity, such as operating a website, even though that website may have been used by others to infringe.  As the Supreme Court stated in *MGM Studios Inc. v. Grokster,* 545 U.S. 913 (2005), the contributory infringer must have taken action that was directed to encouraging infringement, *Grokster,* at 924, 930, and 936, and the determination as to whether the action was directed to encouraging the infringement turns on whether the contributory infringer acted with "unlawful purpose." *Id.*, at 935.  As the Court stated: "[t]here is a definite tendency to impose greater responsibility upon a defendant whose conduct was intended to do harm, or was morally wrong," *Id.*, at 936, citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 37 (5th ed. 1984).  Simply put, a defendant's "unlawful purpose disqualifies him from claiming protection…". *Id.,* at 938.

The *Grokster* court also addressed the type of evidence sufficient to demonstrate a defendant's unlawful purpose, including: (1) a "willingness...to aid others [in infringing activities];" (2) "active steps . . . taken to encourage direct infringement;" and (3) "actively and knowingly aid[ing] and abet[ing] another's direct infringement." *Id.,* at 935-36 (citing cases).  In addition, the failure of a defendant to make any efforts to diminish or impede the infringing activity is a further evidentiary consideration in determining its unlawful purpose. *Id.* at 939.

The conduct of Market Securities clearly demonstrates its substantial participation in the direct infringement by BTG Pactual.  Market Securities was not simply hosting a passive website, as in *Newborn,* where BTG Pactual could post the infringing articles on its own accord.

8

Here, under *Newborn,* there is a clear relationship between the services provided by the defendant--namely market advice--and the infringing activity—the transmission of publications containing market information.  Moreover, consistent with *Grokster,* Market Securities acted with a clear and undeniable unlawful purpose: the inducement of direct infringement by BTG Pactual.  The parties knew their purpose was unlawful and that is why they took steps to conceal their infringing activities--and their conduct shows the clear and unmistakable efforts by Ms. Donaker to obtain the copyrighted publications.  Indeed, Ms. Donaker agreed to provide investment advice to Ms. Suarez if the publications would be sent to her.  And more tellingly, and clearly indicative of her unlawful intent, Ms. Donaker agreed if the Capitol Forum articles were sent to her, she would not share them further, and would not use or republish the Capitol Forum material in any fashion.  Ms. Donaker's assurances in this regard, without question, were calculated to induce the commission of the direct infringement by Ms. Suarez.  They demonstrated a clear willingness to aid and abet Ms. Suarez in her infringing activities and constituted "active steps . . . to encourage direct infringement."   Ms. Donaker knew that the transmission of Capitol Securities publications to her was illegal yet did nothing to attempt to stop that activity, and, to the contrary, took active steps to encourage the infringement.  Ms. Donaker's unlawful purpose "disqualifies [Market Securities] from claiming protection" under the Copyright Act.  *See, eg,. Grokster* at 938.

## V. CONCLUSION

The motion to amend the complaint should be granted.  The proposed Amended Complaint accompanying this motion should be accepted for filing.


DATED: June 16, 2023                              Respectfully submitted,

WILLIAMS LOPATTO, PLLC


_____/s/ John B Williams_____
JOHN B. WILLIAMS (D.C. Bar No. 257667)
1629 K Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 277-8435
jbwilliams@williamslopatto.com

*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, a copy of Capitol Forum's Memorandum in

Support of its Motion to Amend the Complaint was served by electronic mail on Defendants'

counsel:

        Jason M. Dragnel
        Kerry B. Brownlee
        60 East 42nd St. Suite 1250
        New York, New York 10165
        jdrangel@ipcounselors.com
        kbrownlee@ipcounselors.com
        212-292-5390

        AND

        John D. Mason
        7315 Wisconsin Avenue
        Suite 400 West
        Bethesda, Maryland 20814
        jmason@copyrightcounselors.com
        301-760-7032


        /s/ John B Williams
        _____
            John B. Williams