| | |
|---|---|
| From: | John B. Williams <jbwilliams@williamslopatto.com> |
| Sent: | Tuesday, June 20, 2023 9:09 PM |
| To: | Howell Chambers |
| Cc: | Kerry Brownlee; Jason M. Drangel |
| Subject: | Capitol Forum v. 22-cv-01333 |

**CAUTION - EXTERNAL:**

The purpose of this email is to request a telephonic conference with the Court to resolve a discovery dispute, as further set forth herein.

### PLAINTIFF'S POSITION:

This is an action for copyright infringement. At the time this action was filed, Capitol Forum had learned of two specific instances of infringement by Market Securities but was unaware of the full extent of the violations because the Market Securities reports were not publicly available. Accordingly, as the Court noted, discovery was required "to access all of Market Securities' reports to determine how many are potentially infringing." March 23, 2023, Order, Document 20, at 7. In discovery, Capitol Forum has learned that there were many more potentially infringing reports. Capitol Forum also requested the production of all Capitol Forum publications that Market Securities had received from the Capitol Forum subscribers. There is no dispute that these documents are relevant, and Market Securities agreed to provide them.

The problem, however, is that Market Securities has produced only three such publications, although it is apparent it received many more. For example, we discovered that a Market Securities employee had been able to prepare complete and verbatim copies of entire three-page Capitol Forum publications (word-for-word, and comma for comma transcriptions); but the copied Capitol Forum publications for those transcriptions were not produced. This anomaly strongly suggests that, at least at one time, the Capitol Forum publications were in Market Securities' possession.

At the beginning of discovery, we were told repeatedly by Market Securities that no additional publications were in its possession because all the information its writers received about the Capitol Forum publications was communicated over the telephone—even those that were transcribed in verbatim fashion. However, we subsequently learned from a third party, Cristina Suarez, that the likely reason these publications were not produced is because they were deleted or destroyed. Here is what happened:

The Capitol Forum publications were sent to Market Securities by Ms. Suarez, a financial trader who works for BTG Pactual, which is a Capitol Forum subscriber. We have interviewed Ms. Suarez in the presence of counsel. She understands that her conduct violated the copyright laws and is contrite and apologetic. She informed us that she agreed to send the Capitol Forum publications to an employee of Market Securities, Jennifer Donaker, a former colleague at a previous employment. Ms. Suarez and Ms. Donaker also agreed to send the publications through the WhatsApp application on their personal cellular devices, an encrypted communications system that can evade detection. These communications would then be deleted, even though that conduct would violate regulations of the Financial Regulatory Authority (FINRA). FINRA Securities Exchange Act Rule 17a-4(b)(4), available at SEA 17a-4(b)(4). We then raised this issue with Market Securities and were informed that any WhatsApp communications sent by Ms. Suarez would have been deleted from Ms. Donaker's device as well, given that she employed a "automatic delete" function.

Capitol Forum has accordingly retained an expert in computer forensics. He has informed us that deleted documents can be recovered from WhatsApp devices. The effectiveness of any recovery attempt is dependent upon a variety of factors, but he believes there is a significant likelihood that at least some of the deleted communications can be recovered. To conduct such an exercise the expert must first obtain a "mirror image" of the device which can then be analyzed by the parties after safeguards are employed to protect for relevance and privilege. A procedure of this nature is commonly required in cases in which a party has deleted documents—intentionally or unintentionally. *Delta T, LLC v. Williams*, 337 F.R.D. 395, 404 (S.D. Ohio 2021); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 653-54 (D. Minn. 2002); *Playboy Enters., Inc. v. Welles*, 60 F.Supp.2d 1050 (S.D. Cal. 1999).

We have proposed the appointment of an independent expert to Market Securities, who could then work with the parties to develop the protocol to analyze the devices of three Market Securities employees: Jennifer Donaker, Eddie Lee, and Stephen Grahling. We believe Mr. Lee obtained Capitol Forum publications because he transmitted at least one of them internally. We believe Mr. Grahling received Capitol Forum publications because he was the one who retyped the verbatim transcripts.

Market Securities has objected to an independent expert for two reasons. The first is that the devices do not belong to Market Securities and were not issued by Market Securities. This is not a valid argument. First, the devices are clearly in the control of Market Securities. When we asked counsel if these devices had been inspected for responsive documents, we were assured that they had been. If Market Securities could obtain access to these devices at one point, it could do so again. Second, the courts have had no difficulty in ordering the recovery of deleted data from the personal computers and telephones of non-parties. *Simon Prop. Grp., L.P. v.*

*mySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000); *St. Frances Acad. v. Gilman Sch.*, No. 1390-2021 (Md. Ct. Spec. App. Mar. 21, 2022)(While this case is unpublished it can be accessed on Google and provides a good synopsis of the law in this area.)

Market Securities' second argument is that the search would yield no responsive documents. Counsel stated that: "Defendant's primary method of communication is via the Bloomberg portal. The personal devices of Defendant's employees are, per FINRA, used for *phone calls*. As I have already indicated, any messaging that occurred via Whats App was a one off." However: (1) this statement conflicts with the statement of Ms. Suarez that she sent the Capitol Forum publications via WhatsApp; (2) the statement conflicts with the previous statement of Market Securities counsel that any documents could not be uncovered from Ms. Donaker's device because she used the WhatsApp "automatic delete" function; (3) while FINRA regulations may authorize phone calls, in this case the cellular devices were used to transmit data, in violation of FINRA regulations; and (4) whether the WhatsApp messaging was or was not a "one off," is a matter that can be determined in discovery. Accordingly, Capitol Forum respectfully requests leave to file a discovery motion to compel the appointment of an independent expert in computer forensics who would then develop a protocol to recover the deleted data.

In addition, Capitol Forum proposes that the Court appoint a special master to oversee discovery matters under Rule 53 of the Federal Rules of Civil Procedure, and in particular to supervise matters relating to electronic discovery. As discussed in the frequently cited law review by Judge Shira Sheindlin and Jonathan Redgrave, a court appointed master can serve a number of roles in matters involving electronic discovery: (1) facilitating the electronic discovery process; (2) monitoring discovery compliance related to ESI [electronically stored information]; (3) adjudicating legal disputes related to ESI; and (4) adjudicating technical disputes and assisting with compliance on technical matters, such as conducting computer/system inspections. Hon. Shira A. Scheindlin and Jonathan M. Redgrave, *The Intersection of Two Recent Revisions to the Federal Rules of Civil Procedure,* 30 Cardozo L. Rev. 347, 347 (2008).

Here, a special master can be helpful in developing the protocols necessary to conducting an effective and neutral recovery of the data deleted from the cellular devices of the Market Securities employees and can also resolve the various objections that have been raised to this recovery process, as well as any technical disputes that may arise.

We are also concerned about Market Securities' compliance with record-keeping requirements. Pursuant to the FINRA regulations cited above, in addition to the three-year record keeping requirement, all records less than two years old must be stored "in an easily accessible place." This was not done. Many of the relevant communications involving Capitol Forum were conducted over the Bloomberg Chat platform. However, to date only one year worth of that data has been produced. That is because, according to counsel, "the Bloomberg

platform only allows users to retain one year's worth of data." While a user can obtain data from earlier years, counsel has also acknowledged that that data "is not easily accessible." This failure of compliance has slowed discovery efforts, and the earlier data has still not been produced in this litigation. In addition, Capitol Forum sent Market Securities a cease-and-desist order on October 27, 2021, and asked that a litigation hold be placed on all relevant documents. While counsel assured that a hold had been placed in effect, it appears that nothing was done until sometime in April 2023, and in the interim, 18 months of data has become difficult to obtain.

Moreover, Capitol Forum suspects that Market Securities continued to receive—and delete--its publications even after October 27. A comparison of the Capitol Forum articles to the Market Securities articles after that time reveals the same "precise turns of phrase, analytical frameworks, and subjective conclusions" the Court observed in its Order of March 23, at 7. For example, the headlines of the respective articles from July 13, 2022, are substantially similar: Capitol Forum reported that the parties in that merger case are "**negotiating remedies to safeguard workers; suit to block is still possible.**" Market Securities used virtually identical language, stating that the merger parties are **negotiating remedies to safeguard workers while a suit to block is still possible**." Perhaps Market Securities will say that this information was also received over the telephone, but if it was not, then that Capitol Forum publication was received—and deleted—after Market Securities represented that a litigation hold was in place.

Finally, a special master can assist in monitoring compliance and adjudicating disputes relating to the electronic data. There has been a lack of candor in this litigation. In the motion to dismiss proceedings, Market Securities asserted to this Court that it was "speculative" that it received Capitol Forum publications from a subscriber, knowing the opposite was true. Initially, Market Securities represented that it had no Capitol Forum publications, and that all information was communicated over the telephone. But when the three publications were produced, Market Securities changed course and took the position that all other publications had been deleted. It also represented that the deletions occurred because Ms. Donaker's WhatsApp device had a 24-hour automatic delete function; however, WhatsApp did not incorporate a 24-hour automatic delete function until December 6, 2021—well after the bulk of the Capitol Forum publications had been transmitted to Market Securities.     See https://www.socialmediatoday.com/news/whatsapp-adds-new-auto-delete-options-enabling-you-to-set-all-your-chat-th/611040/   Market Securities also represented that the WhatsApp devices were used to place telephone calls because any texting was not approved by FINRA, and that any messaging was a "one-off." Most important, we were assured repeatedly that a search had been conducted for the missing publications. But then, after being informed that we intended to approach the Court, Market Securities finally acknowledged that it had, in fact, received the Capitol Forum publications through WhatsApp, and further that it

might be possible that the data could be recovered from the devices or through system such as Google Drive or iCloud.

Capitol Forum agrees that these searches must now be conducted, but in view of the discovery issues that have arisen, we request that these searches should be conducted under the supervision of a special master.

**DEFENDANT'S POSITION:**

Without any legitimate justification, under the law or the facts of this case, Plaintiff is asking this Court to compel the appointment of an independent expert in computer forensics in a further attempt to harass Defendant Market Securities, LLC ("Defendant" or "Market Securities"). Plaintiff's request that a special master be appointed is unjustified.

A. ***Plaintiff Has Failed to Demonstrate That an Independent Expert In Computer Forensics Is Justified by the Needs of this Case***

As a threshold matter, Plaintiff's account of "what happened" is patently false. During the course of discovery, Defendant produced three (3) of Plaintiff's publications—dated April 24, 2020, September 23, 2020 and November 13, 2020—that are in Defendant's possession, which identified Ms. Suarez. In response, and without notifying Defendant's counsel, Ms. Suarez—a non-party, and client of Defendant —received a phone call from a representative of Plaintiff, and then was contacted again by Plaintiff's counsel, via telephone, and outside of the realm of any formal discovery process (such as a subpoena or the like). Contrary to the story that Plaintiff falsely paints, which is based on Plaintiff's counsel twisting of hearsay, at best, the facts are as follows: Defendant is Ms. Suarez/BTG Pactual's broker, which provides trading advice to her with respect to relevant stocks; Ms. Suarez asked an employee of Defendant (specifically, Jennifer Donaker) for an opinion on what was said in certain Capitol Forum publications for the purposes of getting financial/investment advice; and Ms. Suarez sent an employee of Defendant certain Capitol Forum publications for the purposes of Defendant rendering such advice. Plaintiff's suggestion that the publications were sent via WhatsApp to "evade detection" or that there was any sort of agreement that the publications would be deleted is a lie, or at the very least, intentional misstatement of the conversation with Ms. Suarez (which again, Defendant and/or its counsel was not privy to). Instead, Ms. Donaker and Ms. Suarez, who have both a professional and personal relationship, communicated via messaging on WhatsApp during the pandemic as a method of last resort. Defendant does not communicate with its clients generally via messaging on WhatsApp, given that it is not a method of communication that is permitted by the Financial Regulatory Authority (FINRA), but some very limited communications—an infinitesimal amount—did occur in this manner during the pandemic. The vast majority of Defendant's business is conducted via the Bloomberg portal and telephone calls. Defendant's employees are not issued cellphones for work purposes. Thus, any communications that did occur via WhatsApp messaging between Ms. Donaker and Ms. Suarez occurred via Ms. Donaker's personal cellphone. Ms. Donaker uses WhatsApp for her personal use, and maintains certain auto-delete settings, which were maintained well prior to the institution of this litigation, wherein ***all*** messages and data are deleted within a very short time frame due to, among other things, Ms. Donaker's storage capacity on her ***personal*** cellphone. Any communications that occurred during the pandemic (for example, those occurring around the date of Plaintiff's three (3) publications identified herein) were deleted shortly thereafter, ***well prior to the institution of this litigation***. Plaintiff's counsel points to transcriptions done by Mr. Grahling—on May 12, 2020 and October 27, 2021; however, there is no reason to believe that Ms. Suarez was the source. Notably, Plaintiff has not taken any depositions of Defendant and/or its employees (or Ms. Suarez) on these topics, but instead, has chosen to pursue Court intervention.

Not only is the relief that Plaintiff seeks based on a fictitious account of events, but the discovery sought is of limited relevance, and the undue burden of Plaintiff's proposal outweighs any benefit. In fact, the first two (2) paragraphs of Plaintiff's section are telling: "in discovery, Capitol Forum has learned that there were many more potentially infringing [Market Securities] reports. . . The problem, however, is that Market Securities has

produced only three such publications [referring to Capitol Forum publications], although it is apparent it received many more." To be clear, Defendant has produced, and is still in the process of producing, all of its own "reports" (i.e., commentaries) referencing Plaintiff and/or Plaintiff's publications to Plaintiff. That is not what Plaintiff is raising an issue with herein, instead, Plaintiff's issue pertains to Defendant's production of Plaintiff's own reports. Yet, Defendant's receipt or possession of any of Plaintiff's publications does not amount to copyright infringement by Defendant, given that the mere receipt or possession of a copyrighted work is not a violation of any of the exclusive rights of 17 U.S.C. § 106 (i.e., it is not a reproduction, a preparation of a derivation, a public distribution, or a public display). It is what (if anything) that Defendant did with Plaintiff's publications that is relevant to Plaintiff's current sole claim of direct copyright infringement, and Defendant has produced, and is still in the process of collating and producing, documents relating to the same. When pressed on this issue, Plaintiff's counsel has indicated that documents and communications involving the transmittal of Plaintiff's publications is relevant to the issue of access; however, access is a non-issue here, given that when Defendant referred to Plaintiff's publications that Plaintiff alleges are at issue, it actually credited Plaintiff, and as such, access can be inferred. Thus, the burden and expense of Plaintiff's proposal—taking Defendant's employees' *personal* devices that are used for *personal* use, which is a significant intrusion on Defendant's employees' personal privacy rights, when communications occurring via messaging on WhatsApp happened in one off scenarios during a global pandemic—significantly outweighs the need for the same. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

Further, Plaintiff's proposal is unlikely to lead to the discovery of admissible evidence. Importantly, Plaintiff's counsel did not even bother to ask Defendant's counsel about the feasibility of recovering data from WhatsApp for Ms. Donaker, Mr. Grahling or Mr. Lee. Generally-speaking, it is Defendant's counsel's understanding that WhatsApp data *may* sometimes be recovered on a personal device or via a cloud-based system if that person chooses to back up his or her data. Ms. Donaker does not back up her cellphone to any cloud-based system. Her cellphone died in or about July 2022 and would no longer turn on, and as such, at that time, she got a new cellphone. Accordingly, any communications that occurred prior to July 2022 would not be on her personal device. With respect to Mr. Grahling, he maintains limited back up archives, but only of recent data (which he searched, under no obligation to do so, such search yielded zero (0) relevant results), and has been unable to restore any older data on his phone. His phone is approximately two (2) years old. Like Ms. Donaker, Mr. Lee does not back up his cellphone to any cloud-based system, and is unable to restore any old WhatsApp data. His phone is approximately seventeen (17) months old. It is unclear how Plaintiff's alleged undisclosed "expert in computer forensics" could even opine on this issue without this information. Nevertheless, even putting the issue of relevancy aside, what is clear is that Defendant does not currently have access to this data. *See* Fed. R. Civ. P. 26(b)(1); *see also Covad Communs. Co. v. Revonet, Inc.*, 258 F.R.D. 5, 15 (D.D.C. 2009) ("Rule 26(b)(2)(B) provides that a party 'need not provide discovery of electronically stored information from sources the party identifies as not reasonably accessible because of undue burden or cost.'").

Additionally, Plaintiff's proposal is overbroad. Plaintiff is seeking to "analyze the devices" of three (3) of Defendant's employees: Jennifer Donaker, Eddie Lee, and Stephen Grahling. However, Plaintiff's rationale for all of these three (3) employees is based on conjecture and innuendo, which cannot justify the drastic, intrusive relief sought. Moreover, Plaintiff's proposal is not even limited to WhatsApp messaging (and even if it were, it still should not be permitted), or in time or scope, but instead, encompasses a vague "analysis" of the *personal* cellphones of certain employees *generally*—cellphones that were not issued by, or under the control of Defendant, many of which do not even possess data from 2020 and/or 2021.

Plaintiff's statement that "the devices are clearly in the control of Market Securities" is simply false. The fact that Defendant's individual employees can access these devices does not demonstrate that they are in "the control of Market Securities". When Defendant's counsel was asked if Defendant's employees had searched their personal devices, Defendant's counsel indicated that they did, **but also that they had no obligation to do so**.

Moreover, Plaintiff cites to a mere two (2) cases outside of this District for the proposition that "courts have had no difficulty in ordering the recovery of deleted data from the personal computers and telephones of non-parties", which are entirely inapposite and do not support the contention that courts within this District, or elsewhere for that matter, routinely grant any such relief, particularly here, when Plaintiff has not served any subpoenas. *See Simon Prop. Grp. Ltd. P'ship v. MySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000) (involved computers that were used for work purposes; the court permitted plaintiff to attempt to recover deleted files at its own expense); *St. Frances Acad. v. Gilman Sch.*, No. 1390-2021 (Md. Ct. Spec. App. Mar. 21, 2022) (state court negligence action; the devices at issue were the subject of subpoenas).

Plaintiff claims that the procedure proposed "is commonly required in cases in which a party has deleted documents—intentionally or unintentionally", and relies on four (4) cases outside of this District (i.e., non-binding authority); however, Plaintiff conveniently fails to mention that all such cases involved computers, not personal cellphones used for personal use, and those very cases indicate that forensic imaging should "only be employed in limited circumstances". *Delta T, LLC v. Williams*, 337 F.R.D. 395, 400 (S.D. Ohio 2021) (involved personal computers; there was evidence that relevant evidence was in possession of defendants and was being withheld). In *Covad Communs. Co.*, 258 F.R.D. 5, a case within this District that involved hard drives, the Court noted that "[t]he advisory committee note to Rule 34 cautions against making forensic examination the default, however, and encourages courts to 'guard against undue intrusiveness.' Fed. R. Civ. P. 34, Advisory Comm. Note (2006). Because these examinations raise issues of confidentiality and can produce thousands of documents that have to be reviewed for relevance and privilege, 'compelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures.'" *Id*. at 13 (internal citation omitted).

Here, both parties have not yet even completed their document production and no depositions have occurred. Defendant has already undertaken the enormous expense of engaging a third party to extract archived data for the Bloomberg portal, through which the vast majority of Defendant's business is conducted. Despite that fact, Plaintiff now seeks the extraordinary relief of the search of the personal cellphone devices of three (3) of Defendant's employees on an apparent fishing expedition for evidence that is of limited relevance to Plaintiff's sole current claim of direct copyright infringement. Defendant implores this Court to invoke its power, and its duty, to protect Defendant's employees from the oppression, undue burden, and expense of Plaintiff's proposal.

B. ***Plaintiff Has Failed to Establish the Need for a Special Master***

Plaintiff's request for a special master based on purported "recurring issues of candor and record-keeping failures" is utterly unfounded, and is yet another apparent attempt to needlessly drive up litigation costs. Under Fed. R. Civ. P. 53, for pretrial matters, special masters may be appointed upon the consent of the parties (which is not the case here), or to address "matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a). Fed. R. Civ. P. 53(a)(3) specifically denotes that "[i]n appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay."

Plaintiff's apparent "concerns" about Market Securities' record-keeping are entirely baseless. More specifically, Plaintiff's attestation that "Pursuant to the FINRA regulations cited above, in addition to the three-year record keeping requirement, all records less than two years old must be stored "in an easily accessible place."  This was not done." is false. As Plaintiff's counsel acknowledges he was told, the Bloomberg portal only retains one year's worth of data, which was promptly produced to Plaintiff. In order to access data beyond one year—data that was preserved in archive form, given the storage capacity of the Bloomberg portal—Market Securities had to incur the significant expense of engaging a third party to extract the data (over 4 GB), which has now been done and is being reviewed and prepared for production, which should occur by the week's end. This is not a "failure of compliance", but instead, is a reality of diligent data preservation and production. Plaintiff's counsel is well aware of, and has been updated on, Defendant's efforts, but is now choosing to raise this issue, without properly meeting and conferring with Defendant's counsel on this topic, in an apparent attempt to create a justification for Plaintiff's request for the appointment of a special master when there is none. Plaintiff's

counsel's statements that "nothing was done until sometime in April 2023" is likewise entirely meritless, and nothing but conjecture.

      In a similar vein, Plaintiff's fictious account of publications being allegedly received and deleted after a litigation hold was put in place is entirely speculative, and fails to account for the reality of Defendant's business, the vast majority of which occurs via the Bloomberg portal and over the telephone. Similarly, Plaintiff's counsel's cherry-picking of Defendant's and/or its counsel's statements (or misstatements thereof) to suggest that there is a "lack of candor" is disingenuous at best. Plaintiff's suggestion that "Market Securities finally acknowledged that it had, in fact, received the Capitol Forum publications through WhatsApp, and further that it might be possible that the data could be recovered from the devices or through system such as Google Drive or iCloud.", like many other attestations, is misleading. On June 14, 2023, at 2:04 PM, Plaintiff's counsel wrote Defendant's counsel an email stating that Plaintiff had "concerns" about the deletion of "emails" (in actuality, WhatsApp data), and advised that "[w]e are therefore going to ask the court to appoint an expert to create mirror images of the devices". Defendant's counsel advised that Defendant would not agree to any such proposal. On June 15, 2023, at 3:30 PM, Plaintiff's counsel then provided Defendant's counsel with a draft email to the Court, and expressed an apparent urgency in the filing thereof when Defendant's counsel indicated that it needed time to confer with Defendant. Defendant's counsel then conferred with Defendant's employees regarding their personal devices (e.g., whether they employ any cloud-based systems and the age of the devices, etc.), as further set forth above. Regrettably, rather than attempting to meaningfully work with Defendant's counsel to resolve these issues, Plaintiff's counsel is improperly inferring nefarious intent when there is none, and asking this Court for extraordinary relief in an effort to drive up costs—costs that are disproportionate to the needs of this case, which involves a relatively straightforward claim of alleged copyright infringement. The parties have been engaged in discovery for less than three (3) months, and no depositions have occurred. In fact, Plaintiff just recently filed a motion to amend its Complaint. Rather than trying to sort through any alleged issues with Defendant's counsel, and pursuing discovery via legitimate methods, such as interrogatories, depositions or subpoenas, Plaintiff is improperly, and prematurely seeking Court intervention, without any bona fide justification based on the needs of this case. *See, e.g., AtPac, Inc. v. Aptitude Sols., Inc.*, 2011 U.S. Dist. LEXIS 40043 (E.D. Cal. Apr. 12, 2011) (finding that the "extraordinary interference in the form of appointing a special master is unnecessary" when the requesting defendants had not shown that such matters could not be effectively and timely addressed by the court); *see also United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018) (Court relied "upon the seasoned counsel on both sides of this case to work together to resolve discovery disputes as they arose" rather than appointing a special master).

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.