## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| DBW PARTNERS, LLC | : | |
| d/b/a THE CAPITOL FORUM, | : | |
| 1629 K Street, N.W. | : | |
| Suite 300 | : | |
| Washington, DC 20006 | : | Civil Action 1:22-cv-01333-BAH |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| MARKET SECURITIES, L.L.C. | : | |
| 85 Broad Street, 17th Floor | : | |
| New York, New York, 10004 | : | |
| | : | |
| | : | |
| and | : | |
| | : | |
| BTG PACTUAL ASSET | : | |
| MANAGEMENT US L.L.C. | : | |
| 24 Greenway Plaza Suite 700 | : | |
| Houston Texas 77046 | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## MEMORANDUM IN OPPOSITION TO MOTION TO PARTIALLY DISMISS

Plaintiff DBW Partners LLC, doing business as The Capitol Forum, respectfully submits this memorandum in opposition to the motion of defendant Market Securities LLC to partially dismiss the Second Amended Complaint filed in this action.

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION……...…………………………...…………….…………...1

II.     PROCEDURAL HISTORY……………….......................................................2

III.    APPLICABLE LEGAL STANDARDS ON THIS MOTION…………………………4

IV.     THE DIRECT INFRINGEMENT CLAIM IS PROPERLY PLEAD……………………5

        A.  The Allegations of Direct Infringement are Clearly Set Out…………………………5

        B.  The Nine Infringements Challenged in this Motion are Substantially Similar to the

            Capitol Forum Publications……………………………………………………………...6

V.      THE CONTRIBUTORY INFRINGEMENT CLAIM IS PROPERLY PLEAD…………9

        A.  Direct Infringement by a Third Party: BTG Pactual…………………………………9

        B.  Market Securities Knew-- or Should Have Known-- of the Infringing Conduct…...10

        C.  Market Securities Substantially Participated in the Direct Infringement……………12

VI.     CONCLUSION………………………………………………………………15

## TABLE OF AUTHORITIES

**CASES**                                                                                                              **PAGE**

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004, 1020 (9th Cir. 2001), as amended (Apr. 3, 2001))………………………………11

*Aimster,*
    334 F.3d at 650……………………………………………………………………………...…11

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110, 118 (2d Cir. 2010)………………………………………………………………11

*Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Fam. Found., Inc.,*
    595 F. Supp. 2d 110, 117 (D.D.C. 2009)……………………………………………………..7

*Associated Press v. Meltwater U.S. Holdings, Inc.,*
    931 F. Supp. 2d 537 (S.D.N.Y. 2013)…………………………………………………………..7

*Bell Atlantic corp. v. Twombly,*
    550 U.S. 544, 556 (2007)……………………………………………………………………..5

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
    69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014)……………………………………………………11, 14

*Financial Information, Inc. v. Moody's Investors Service, Inc.,*
    751 F.2d 501 (1984)…………………………………………………………………………...15

*Flava Works, Inc. v. Gunter,*
    689 F.3d 754, 758 (7th Cir. 2012)……………………………………………………………13

*Fox v. Am. Airlines, Inc.,*
    295 F.Supp.2d 56, 58 (D.D.C.2003), aff'd, 389 F.3d 1291 (D.C. Cir.2004)……………...7

*Gershwin v. Columbia Artists,*
    443 F.2d 1159 (2d Cir. 1971)…………………………………………………………………13

*Gordon v. Pearson Educ., Inc.,*
    85 F. Supp. 3d 813, 822 (E.D. Pa. 2015)…………………………………………………...11

*Napster,*
    239 F.3d at 1020, n. 5……………………………………………………………………11

*Newborn v. Yahoo!, Inc.,*
    391 F. Supp. 2d 181 (D.D.C. 2005)…………………………………………………..9, 14

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,*
　　166 F.3d 65 (2d Cir.1999)……………………………………………………………..15

*MGM Studios Inc. v. Grokster, Ltd.,*
　　545 U.S. 913 (2005)…………………………………………………………………....13

*Oak Indus., Inc. v. Zenith Elecs. Corp.,*
　　697 F. Supp. 988, 992 (N.D. Ill. 1988)……………………………………………….13

*Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,*
　　982 F. Supp. 503, 514 (N.D. Ohio 1997)……………………………………………...13

*Prunte v. Universal Music Grp., Inc.,*
　　699 F. Supp. 2d 15 (D.D.C. 2010)…………………………………………………..7

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.,*
　　742 F.3d 17 (2d Cir. 2014)……………………………………………………………14

*Wainwright Securities, Inc. v. Wall Street Transcript Corp.,*
　　558 F.2d 91 Cir.1977)………………………………………………………………....15

*Water Techs. Corp. v. Calco, Ltd.,*
　　850 F.2d 660, 668 (Fed. Cir. 1988))…………………………………………………13

*United States v. Giovannetti,*
　　919 F.2d. 1223, 1228 (7th Cir. 1990)………………………………………………….11

*United States v. Josefik,*
　　753 F.2d 585, 589 (7th Cir. 1985)……………………….……………………………11

I.      **INTRODUCTION**

Market Securities' motion to partially dismiss the Second Amended Complaint (SAC) should be denied.  The SAC clearly and specifically sets out the copyrighted works that were directly infringed by Market Securities.  The portions of the Capitol Forum publications that were infringed are quoted--and highlighted-- in Exhibit C of the SAC.  The portions of the infringing Market Securities publications are similarly quoted—and highlighted in the side-by-side comparison.  Indeed, such a comparison was requested by Market Securities prior to the filing of the SAC, specifically to facilitate and ensure the clarity of the allegations of direct infringement.

The contributory infringement claim against Market Securities is also crystal clear, and appropriately plead.  Capitol Forum has properly alleged: (1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities.

For the first element, the SAC alleges that its copyrights were directly infringed by a third party, BTG Pactual.  The SAC alleges that one of its employees, Cristina Suarez sent the Capitol Forum copyrighted articles to her friend Jennifer Donaker, an employee of Market Securities.  Second, the SAC alleges that Ms. Donaker knew that this conduct was illegal: the Capitol Forum publications she received bore the copyright notice; she took affirmative steps to conceal the transmission of the copyrighted articles; and she promised Ms. Suarez that she would not share or republish the copyrighted articles—a promise Ms. Donaker did not keep.

Third, the SAC alleges substantial participation in the infringing activities. Ms. Donaker agreed with Ms. Suarez that she would provide investment advice to Ms. Suarez on the subject matter of the Capitol Forum articles if they were transmitted to her.  And, as noted above, the agreement was conditioned on Ms. Donaker's agreement not to share or republish the copyrighted publications.  This agreement clearly constituted an active step to encourage, induce, and "aid and abet" the direct infringement.  All the elements of a contributory infringement have been plead and the SAC identifies the factual bases of these allegations.

## II.    PROCEDURAL HISTORY

On March 23, 2023, this Court issued its Memorandum Opinion and Order (Memorandum Opinion), granting in part and denying in part Market Securities' motion to dismiss. (Document 20).  The Court denied the motion to dismiss the direct infringement claim, stating that the examples of copyright infringement plead in the complaint used "the precise turns of phrase, analytical frameworks, and subjective conclusions" contained in the Capitol Forum publications.  Regarding Market Securities' alternative argument that the complaint failed to list every copyrighted report that Market Securities had copied, the Court recognized that the Market Securities reports were not publicly available so that discovery was required to determine the extent of the infringement.

The Court then proceeded to dismiss Capitol Forum's contributory infringement claim, without prejudice, ruling that the complaint lacked sufficient factual allegations that there had been a direct infringement by a third party: "This theory as to how defendant obtained timely copies of Capitol Forum reports for allegedly infringing purposes is just speculation at this point."  Memorandum Opinion at 8.

In discovery, Market Securities produced the articles it sent to its clients based on the Capitol Forum publications, which it refers to as "blasts."  These disclosures revealed that the extent of the direct infringement was significantly greater than that alleged in the complaint. While the complaint alleged that the infringement had commenced at least as early as December 2020, discovery revealed that Market Securities had been receiving and copying the Capitol Forum publications as far back December 2019, when Market Securities published a lengthy passage--verbatim---from a copyrighted Capitol Forum publication.[1]

Upon receiving the Market Securities blasts, Capitol Forum identified over 40 additional direct infringements that used the same "precise turns of phrase, analytical frameworks, and subjective conclusions" that were present in the two publications addressed by the Court in its Memorandum Opinion, at 7.

To present these additional infringements to the Court, counsel for the parties agreed that Capitol Forum would file a Second Amended Complaint which would attach an appendix identifying the additional instances of infringement with a highlighted side by side comparison of the Capitol Forum publications and Market Securities' corresponding blasts.  The parties then filed a praecipe suggesting this procedure and the Court approved the filing of the Second Amended Complaint.

---

1/ The Market Securities "blast" on December 3, 2019 contained the following verbatim quotation from a Capitol Forum article: "Although the commission typically dispenses with staff recommendations to close fairly quickly, the deal's intersection with sensitive drug pricing and potential competition issues—and the prospect that one or more commissioners could dissent from the decision—could affect this timeline. A commission vote, however, is expected any day, sources familiar with the matter said."

Discovery also revealed the identity of the Capitol Forum subscriber which had been transmitting the Capitol Forum publications to Market Securities in violation of the copyright restrictions.   The identity of the subscriber was apparent from the copies of the Capitol Forum publications that were discovered in the possession of Market Securities.  Each Capitol Forum publication bears a watermark containing the email address of its subscriber, and the watermark of the Capitol Forum publications illegally sent to Market Securities showed that they were transmitted by Cristina Suarez of BTG Pactual, a friend of one of the Market Securities writers, Jennifer Donaker.  Ms. Suarez was then interviewed over the telephone by counsel for Capitol Forum, in the presence of counsel for BTG Pactual.

The statements of Ms. Suarez during that interview are set forth in the SAC.  She acknowledged that she had transmitted the publications to Ms. Donaker; that she did so over the WhatsApp application on her cellular telephone; and that she did so upon the promise of Ms. Donaker that she would provide Ms. Suarez with her views and advice of the Capitol Forum analyses transmitted to her, that she would not to share them further, and that she would not use or republish the copyrighted material in any fashion.  Based (in part) on these disclosures, the SAC alleges claims of direct infringement against BTG Pactual, and contributory infringement against Market Securities.[2]

## III.    APPLICABLE LEGAL STANDARDS ON THIS MOTION

---

[2] In its brief, Market Securities asserts that it was somehow improper for counsel to contact Ms. Suarez and request an interview with her and her attorney.  No support is offered for this assertion, and there is none.  There is nothing untoward for an attorney, or anyone, to contact a potential third-party witness.  A party's ability to discover facts is not limited to the formal discovery process.  And while Market Securities also claims that the "narrative" contained in the SAC is false, it does not say how it is false.

The standards on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) are set forth in this Court's March 23, 2023, Memorandum Order.  The complaint need not make detailed factual allegations but must contain sufficient factual matter to state a plausible claim for relief.  A plausible claim is one that allows the court to draw reasonable inferences that the defendant is liable for the conduct alleged.

Further, as this Court recognized in its Memorandum Opinion, the fact that Capitol Forum was able to provide examples of provision of specific infringements "is enough to move its claims beyond the pleading stage," when discovery is necessary to determine the actual extent of the infringing activity.  Memorandum Opinion at 6-7.  And as the Supreme Court stated in *Bell Atlantic corp. v. Twombly,* 550 U.S. 544, 556 (2007), the requirement that the plaintiff set forth plausible grounds does not impose a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal conduct.

## IV.    THE DIRECT INFRINGEMENT CLAIM IS PROPERLY PLEAD

### A.  The Allegations of Direct Infringement are Clearly Set Out

As Market Securities correctly notes, "in order to make out a claim for copyright infringement, the plaintiff must specifically identify the works at issue."  The SAC does just this. Exhibit C to the SAC specifically identifies the Capitol Forum publications that were infringed and the infringing Market Securities publications.  Exhibit C goes further by highlighting (in yellow) the specific passages in the Capitol Forum publications that were copied, and further highlights the infringing Market Securities passages.  And ironically, this level of detail was

exactly what Market Securities requested.  In the discussions leading to the joint request that the SAC be filed, Capitol Forum agreed that it would "supplement [] the complaint on the direct infringement claims, and that we will attach an appendix which identifies the additional instances of infringement with a highlighted side by side comparison of our articles and your corresponding blasts." (Exhibit A) This level of detail was acceptable to Market Securities, and it provides absolute clarity on the works at issue.

Nor is there any confusion created by the fact that the SAC does not specifically list all the Capitol Forum copyright registrations.  Market Securities is well aware that Capitol Forum has registered its copyrights since 2016.   Not only is that fact a matter of public record (Exhibit B), but Capitol Forum has produced its registrations since December 2019 to Market Securities.[3]

**B. The Nine Infringements Challenged in this Motion are Substantially Similar to the Capitol Forum Publications**

At the outset, it must be noted that of the 51 instances of copyright infringement presented in Exhibit C of the SAC, including both illegal copying (44 instances in addition to the two instances set forth in the initial complaint) and illegal distribution (seven instances), Market Securities seeks dismissal of only nine of the copying allegations—those listed on pages 51, 53, 56, 60, 61, 68, 69, 71 and 80 of the SAC.  It offers no defense to the other 42 newly asserted infringements, and in this district, the failure to respond to an argument acts as a concession.

---

[3] The listing of only 16 registrations in the SAC is an artifact of the initial complaint.  At the time the initial complaint was filed, Capitol Forum was only aware of infringements going back to 2020.  Since then, discovery has revealed that the infringing activity began in 2019, and the additional infringements are listed in Exhibit C to the SAC.  As Market Securities acknowledges, the Court can take judicial notice of these publicly available copyright registrations.  Market Securities Brief at 6, note 3.

*Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Fam. Found., Inc.*, 595 F. Supp. 2d 110, 117 (D.D.C. 2009), *citing Fox v. Am. Airlines, Inc.,* 295 F.Supp.2d 56, 58 (D.D.C.2003), aff'd, 389 F.3d 1291 (D.C. Cir.2004).

Regarding the challenge to the nine allegations, Market Securities claims that these allegations should be dismissed because *titles* are not protectable under the copyright jurisprudence. But Market Securities confuses the concept of non-protectable "titles" with the concept of protectable "headlines." Even if some of the infringing passages set forth in Exhibit C appear in the headline of the Capitol Forum publications, they are just that: headlines--and not titles. A title, such as the title of a song is not protected. See, e.g., *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15 (D.D.C. 2010). But a headline is protected. *Associated Press v. Meltwater U.S. Holdings, Inc.,* 931 F. Supp. 2d 537 (S.D.N.Y. 2013) [4]

As to the "substantial similarity" requirement, each of the passages highlighted in the nine challenged infringements use the same "precise turns of phrase, analytical frameworks, and subjective conclusions" that were present in the two publications addressed by the Court in its Memorandum Opinion, at 7:

- The infringement listed on Page 51 from the September 14, 2020, Market Securities publication copies the Capitol Forum headline in verbatim fashion: "DOJ clearance could come as early as this week," and proceeds to copy other parts of the article: "staff attorneys spent more than two weeks reviewing…"

- The infringement listed on page 53 from September 23, 2020, copies the Capitol Forum analysis that the merger's competitive overlap "in insurance broking has garnered significant DOJ attention" and that the overlaps include "retiree health exchanges, health benefits brokerage services and pension actuarial services."

---

[4] To Capitol Forum's knowledge, no case has held that material formatted in a headline is not protectable. Were this the case, news aggregators would become virtually exempt from the copyright laws.

- The infringement on page 56 from October 16, 2020, copies the Capitol Forum headline: "Management Comments Could Support Anti-Merger Narrative."

- The infringement on page 60 from November 16, 2020, provides a paraphrase of the Capitol Forum headline: "AON Expected to File Formal EC Notification as Soon as this Week, just substituting the word "expected" for the word "poised." It then moves on to a verbatim copying of the following passage: "Willis Tower Watson has moved to downsize its UK presence."

- The infringement on page 61, from January 11, 2021, copies specific phrase turns throughout the Capitol Forum article: "stir CFIUS concerns;" "critical to the country's economy and defense;" military supply chain via [] Microsoft and Cisco;" and "keep Inphi's operations in the country."

- The infringement on page 68, from April 14, 2021, is a verbatim copying of the Capitol Forum headline regarding the United Healthcare merger: "Clearinghouse Draws DOJ Scrutiny over Vertical, Data Questions."

- The infringement on page 69, from May 4, 2021, paraphrases the Capitol Forum analysis that a DOJ investigation is expected to focus on the use of a clearinghouse to "slow rivals' claims processing speeds" and United Healthcare's "ability to push down health care providers;" and that third parties are stating that the harms cannot be mitigated and are urging the DOJ to block.

- The infringement on page 71, from May 7, 2021, is another wholesale copying of the Capitol Forum headline: "EC Set to Approve Remedies With Vestager on Board."

- Last, the infringement on page 80, from September 22, 2021, contains the following verbatim quotation from the Capitol Forum publication: "a victory for the company which had been trying to avoid multiple investigations in separate member countries."

When it moved to dismiss the initial complaint, Market Securities failed to address the specific passages used in its articles, and simply argued, in conclusory fashion, that its articles were not "substantially similar."  In the words of the Court, that assertion "strains credulity in light of the line-by-line comparison of the two reports provided in the complaint."  Memorandum Opinion at 7.  But once again, Market Securities has not addressed the line-by-line comparisons and has also failed to explain how the specific passages used in its articles are not substantially

similar to the passages from the Capitol Forum articles.  Its conclusory argument to the contrary should be rejected again.

## V.      THE CONTRIBUTORY INFRINGEMENT CLAIM IS PROPERLY PLEAD

As Market Securities states, to establish a claim of contributory copyright infringement, the plaintiff must allege (1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities, c*iting Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005).  All three elements are clearly and properly alleged in the SAC.

### A.  Direct Infringement by a Third Party: BTG Pactual

The SAC could not be clearer.  BTG Pactual, through its employee Cristina Suarez, infringed Capitol Forum's exclusive right to distribute the copyrighted material to the public by illegally (and admittedly) transmitting at least three Capitol Forum copyrighted articles to a Market Securities, Jennifer Donaker.  The fact that Capitol Forum believes that Ms. Suarez may have transmitted far more than the three articles found in the possession of Market Securities provides no basis to dismiss the SAC.

First, the very reason that Capitol Forum does not yet know the accurate number of direct infringements by BTG Pactual is because Ms. Donaker deleted and destroyed the articles she received from Ms. Suarez through her WhatsApp application, an issue previously brought to the Court's attention.  Coupled with other evidence regarding Ms. Suarez's history of downloading

the Capitol Forum articles she received (including the frequency and timing of her activity), this spoliation of evidence (particularly in the face of FINRA regulations mandating their retention set forth in paragraph 26 of the SAC) will permit a jury to draw inferences regarding the number of direct infringements.

Second, this Court has previously dealt with the Market Securities argument that Capitol Forum's failure to know the extent of the copyright violations at the pleading stage is a basis for dismissal, ruling that the identification of specific examples of copyright violations was sufficient to move the claims beyond the pleadings stage.  As it stated in its Memorandum Opinion, at 6-7:

> Plaintiff's complaint, however, provides adequate explanation as to the good reason for this [inability to list all infringements in the complaint], namely, that Market Securities' reports are not publicly available, so while plaintiff has identified at least two reports which seemingly copy its own and the period over which it has reason to believe the copying occurred, it requires discovery to access all of Market Securities' reports to determine how many are potentially infringing. *See* Compl. ¶ 31. The fact that plaintiff identifies at least two specific examples of allegedly infringing works is enough to move its claims beyond the pleading stage, even if the true extent of defendant's infringement ends up being lesser or greater.

The same reasoning applies here.  Discovery of BTG Pactual should provide information as to how many Capitol Forum publications Ms. Suarez sent to Ms. Donaker, especially since Ms. Suarez was subject to the same FINRA retention requirements.

**B.  Market Securities Knew-- or Should Have Known-- of the Infringing Conduct.**

Market Securities argues that the SAC does not provide sufficient facts to support the allegation that Market Securities knew that BTG Pactual was directly infringing Capitol Forum's copyright.  According to Market Securities, the fact that it received Capitol Forum publications

from BTG Pactual, and the fact that those publications contained a copyright notice, cannot plausibly support the allegation that it had "knowledge" that BTG Pactual's conduct was infringing.  This contention is baseless for both legal and factual reasons.

First, as a legal matter, the standard to assess a defendant's knowledge is not an "actual knowledge" standard.  The standard is "knew or should have known."  It has long been held that the knowledge standard is an objective one, and "contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citing *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1020 (9th Cir. 2001), *as amended* (Apr. 3, 2001)); *see also Gordon v. Pearson Educ., Inc.,* 85 F. Supp. 3d 813, 822 (E.D. Pa. 2015); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC,* 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014). Even constructive knowledge is sufficient to meet this requirement. *See Napster,* 239 F.3d at 1020, n. 5 (noting that the Napster executives were experienced in the industry and had enforced their intellectual property rights previously).  And as the Seventh Circuit stated in the appeal of the *Aimster* decision, "willful blindness is knowledge." *Aimster,* 334 F.3d at 650. [5]

In *Arista v. Doe,* the Second Circuit rejected out of hand the argument that Market Securities makes here.  The complaint in that case, like here, alleged that the infringing material (in that case sound recordings) had been transmitted by a third party, and that copyright notices

---

[5]  As the Seventh Circuit further stated in *Aimster: "*One who, knowing or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings is held to have a criminal intent, *United States v. Giovannetti,* 919 F.2d. 1223, 1228 (7th Cir. 1990), because a deliberate effort to avoid guilty knowledge is all that the law requires to establish a guilty state of mind. *United States v. Josefik,* 753 F.2d 585, 589 (7th Cir. 1985)."

had been placed on each of the sound recordings.  Further, in rejecting the assertion that knowledge of the direct infringement had not been properly plead, the court emphasized the baseless nature of the defendant's attack on the complaint: "[t]o characterize this criticism…as unfair would be extremely charitable."

Second, as a strictly factual matter, even if a plaintiff had to establish "actual knowledge," the allegations in the SAC are more than sufficient to raise the inference that Ms. Donaker knew that the Capitol Forum publications she received were copyrighted.  Paragraph 25 alleges that Ms. Donaker: "agreed that upon transmission of the Capitol Forum reports, she would not share them further, and would not use or republish the copyrighted material in any fashion."  Paragraph 26 alleges that:

> Ms. Donaker and Ms. Suarez knew their conduct was illegal and thus took affirmative steps to conceal their unlawful activity. First, they agreed that the Capitol Forum reports would be transmitted over their WhatsApp applications on their personal cellular telephone devices, a method by which they could escape detection from their internal compliance departments and the regulators. They did so despite their awareness that the use of such personal communications devices to send and receive messages that their firms cannot capture and monitor is prohibited by the regulations of the Financial Regulatory Authority (FINRA), regulations which they are required to obey. Second, they agreed to delete all communications between themselves over the WhatsApp system—although FINRA regulations require all regulated persons and entities to preserve all records of client communications for at least three years.

> Ms. Donaker's agreement not to share the reports further and "not to use or republish the copyrighted material in any fashion" raises the inference that she knew the reports she received were copyrighted.ng of the copyrighted nature of the reports.  Her attempts to conceal her illegal activity make this inference inescapable.

### C.  Market Securities Substantially Participated in the Direct Infringement

*In MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), the Supreme Court addressed the issue of substantial participation in a third party's infringing conduct: "the classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." 545 U.S. at 916, 937. The Court went on to describe the type of "inducement" activity sufficient to satisfy the "substantial participation" requirement, including "active steps . . . to encourage direct infringement" and "actively and knowingly aid[ing] and abet[ing] another's direct infringement[.]" *Id.* at 936 (citing *Oak Indus., Inc. v. Zenith Elecs. Corp.,* 697 F. Supp. 988, 992 (N.D. Ill. 1988) and *Water Techs. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed. Cir. 1988)). And the Court cited Prosser and Keeton on Law of Torts 37 (5th ed. 1984) for the proposition that "[t]here is a definite tendency to impose greater responsibility upon a defendant whose conduct was intended to do harm or was morally wrong."

A more specific litany of participation examples is set forth by the Second Circuit in *Gershwin v. Columbia Artists*, 443 F.2d 1159 (2d Cir. 1971), including the placement of non-infringing advertisements for the sale of infringing records, the shipment of infringing records, and the sale by a department store of infringing records. All these entities could be held liable for contributory infringement if they knew or had reason to know of the infringing nature of the records. 443 F.2d at 1162. Subsequent decisions provide more granular examples of the "substantial participation" requirement, and state that defendants can be held liable for contributory infringement in situations in which they (1) "invited people to post copyrighted videos;" *Flava Works, Inc. v. Gunter,* 689 F.3d 754, 758 (7th Cir. 2012); (2) "encouraged subscribers to upload [copyrighted] information;" *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,* 982 F. Supp. 503, 514 (N.D. Ohio 1997): (3) "recruit[ed] individuals....to

'steal' photographs;" *BWP Media USA,* 69 F. Supp. 3d at 356;.and (4) transmitted copyrighted

photographs to third parties.  *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005).

The conduct of Market Securities in entering into an agreement with BTG Pactual to

receive the copyrighted reports far surpasses the type of conduct addressed in the cases in which

the contributory infringer merely invited people to post copyrighted videos, or marketed devices

designed to permit infringement, or recruited individuals to directly infringe.  Here we have an

actual agreement that facilitates, encourages, causes, and certainly "aids and abets" the third-

party infringement.

Market Securities apparently recognizes that such an agreement, if proved, would satisfy

the substantial participation requirement under the case law.  Nevertheless, it asserts that the

Court should consider that Ms. Donaker's job is to provide her opinions and investment advice to

clients, irrespective of whether she obtains the articles, and that her agreement not to share or

republish would inhibit rather than promote further infringing conduct.[6]  Neither consideration

remotely constitutes a defense to copyright infringement.

The fact that Ms. Donaker's job may be to provide investment advice to her clients does

not insulate her copyright violations.  Market Securities has advanced this type of reasoning

before, asserting that its supposed obligation to disseminate pertinent financial information

constitutes a fair use of the Capitol Forum materials, an argument that has been explicitly

rejected.  See, e.g., *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 742 F.3d 17 (2d Cir. 2014);

---

[6] Market Securities states that it is "worth mentioning" that the allegations in the SAC are an "entirely false
narrative" and are not "supported by the discovery taken in this case."  Market Securities Brief at 12, footnote 11.
As noted above, however, these allegations are based on counsel's interview with Ms. Suarez (conducted in the
presence of BTG Pactual's counsel).  Further, this interview was not part of "the discovery taken in this case."

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65 (2d Cir.1999);

*Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 Cir.1977); *Financial*

*Information, Inc. v. Moody's Investors Service, Inc.*, 751 F.2d 501 (1984).

Similarly, the fact that Ms. Donaker promised not to further share or republish the articles

is meaningless.  Not only did this promise encourage and cause the direct infringement by BTG

Pactual, but, as a factual matter, Ms. Donaker *did* share and republish the copyrighted material.

While she may not have forwarded the entirety of the Capitol Forum articles to her clients, she

certainly copied and republished substantial amounts of the copyrighted material to them.

## VI.    CONCLUSION

Market Securities' motion to partially dismiss the Second Amended Complaint should be

denied.

Dated:  Washington, D.C.
           October 6, 2023

                                                  Respectfully submitted,


                                    By:  */s/ John B. Williams*
                                             John B. Williams (DC Bar #257667)
                                             WILLIAMS LOPATTO PLLC
                                             1629 K Street, N.W. Suite 300
                                             Washington, D.C.  20006
                                             Tel.: (202) 277-8435
                                             jbwilliams@williamslopatto.com



                                             *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2023, a true and correct copy of Plaintiff's

Memorandum in Opposition to Motion to Partially Dismiss was served by electronic mail on

Defendants' counsel:


Jason M. Dragnel
Kerry B. Brownlee
60 East 42nd St. Suite 1250
New York, New York 10165
jdrangel@ipcounselors.com
kbrownlee@ipcounselors.com
212-292-5390


AND


John D. Mason
7315 Wisconsin Avenue
Suite 400 West
Bethesda, Maryland 20814
jmason@copyrightcounselors.com
301-760-7032


*Counsel for Market Securities LLC*


Charles S. Baker
JP Morgan Chase Tower
600 Travis, Suite 2800
Houston, Texas 77002
cbaker@lockelord.com
713-226-1200


*Counsel for BTG Pactual Asset Management U.S. LLC*

/s/

_____

John B. Williams

# EXHIBIT A

**From:** John B. Williams <jbwilliams@williamslopatto.com>
**Sent:** Monday, August 21, 2023 1:36 PM
**To:** Kerry Brownlee <kbrownlee@IPCOUNSELORS.COM>
**Cc:** Jason M. Drangel <JDrangel@IPCOUNSELORS.COM>
**Subject:** Re: 22-cv-01333-BAH DBW PARTNERS, LLC v. MARKET SECURITIES, L.L.C.

Yes that's fine and I assume you agree that the amended pleading should be lodged.

John

Sent from my iPhone


On Aug 21, 2023, at 12:36 PM, Kerry Brownlee <kbrownlee@ipcounselors.com> wrote:


Hi John,

Hope you had a nice weekend. What you propose below is fine in principle; however, it does not address the fact that it is Plaintiff's position (and I believe you agreed when we spoke) that the proposed amended pleading should replace the outstanding motion to amend/pleading in an effort to streamline the case/responses. If you agree, happy for you to draft something to the Court that reflects this and the below, and we can take a look.

Thanks,
Kerry


<image001.png>   **Kerry B. Brownlee**
*Partner*
Epstein Drangel LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
**T:** 212.292.5390
**E:** kbrownlee@ipcounselors.com

website | vCard | map

---

Disclaimer: This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (212) 292-5390 and permanently delete the original and any copy of any email and any printout thereof.

**From:** John B. Williams <jbwilliams@williamslopatto.com>
**Sent:** Friday, August 18, 2023 12:48 PM
**To:** Kerry Brownlee <kbrownlee@IPCOUNSELORS.COM>
**Cc:** Jason M. Drangel <JDrangel@IPCOUNSELORS.COM>
**Subject:** Re: 22-cv-01333-BAH DBW PARTNERS, LLC v. MARKET SECURITIES, L.L.C.

Thank you Kerry—we'll take a look at these.

Following up on our chat about procedure, my suggestion is that we file a praecipe addressing the state of the pleadings. We tell the court that we will be supplementing the complaint on the direct infringement claims, and that we will attach an appendix which identifies the additional instances of infringement with a highlighted side by side comparison of our articles and your corresponding blasts.  We should also note to the court that there is an outstanding motion to amend to assert other claims and to bring in an additional defendant.  As a matter of efficiency, it seems that these issues should be resolved before we take too much additional discovery because if BTG Pactual is made a defendant I would expect them to want to participate.  So we may need to also propose an adjustment to the schedule.

Let me know what you think.

On Aug 18, 2023, at 11:32 AM, Kerry Brownlee <kbrownlee@IPCOUNSELORS.COM> wrote:

John,

I hope that you had a safe trip back. As we had discussed, I am providing you with a list of alleged infringements that unequivocally have no basis in the law. Please note that we have only highlighted the most egregious examples, and believe that other examples are not actionable in light of the bar on the copyrightability of short words, phrases, facts and the principle of merger (in addition to fair use). We can agree to disagree on fair use for the time being, which will inevitably be an issue that will be litigated; however, in an effort to streamline this case and avoid unnecessary legal expenditures associated with claims that have no legal basis, we would ask that you reevaluate this chart, particularly prior to approaching the Court regarding any amendment to the pleadings.

17 U.S. Code § 102(b) explicitly states that: "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 37 C.F.R. § 202.1(a) provides: "[t]he following

are examples of works not subject to copyright and applications for registration of such works cannot be entertained: (a) [w]ords and short phrases such as names, **titles**, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents. . ." (emphasis added). I am also attaching Circular 33 for your reference.

Best regards,
Kerry

<image001.png>

**Kerry B. Brownlee**
*Partner*
Epstein Drangel LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
**T:**  212.292.5390
**E:**  kbrownlee@ipcounselors.com

**website** | **vCard** | **map**

Disclaimer: This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (212) 292-5390 and permanently delete the original and any copy of any email and any printout thereof.

<Circular 33.pdf><Final List MS v2_ED Highlight.pdf>

## EXHIBIT B

**From:** "John B. Williams" <jbwilliams@williamslopatto.com>
**Subject: COPYRIGHT REGISTRATIONS**
**Date:** September 25, 2023 at 4:03:25 PM EDT
**To:** "John B. Williams" <jbwilliams@williamslopatto.com>

Begin forwarded message:

**From:** "John B. Williams" <jbwilliams@williamslopatto.com>
**Subject: WebVoyage Titles**
**Date:** May 16, 2023 at 3:43:30 PM EDT
**To:** Kerry Brownlee <kbrownlee@ipcounselors.com>

Here are all the Capitol Forum copyright registrations.

John

https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Capitol+Forum&Search_Code=TALL&PID=xoCvgPcJ8yq_5IGcdmPGT3D5CQ3Up&SEQ=20230511090307&CNT=25&HIST=1



## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Simple Search = Capitol Forum
Search Results: Displaying 1 through 25 of 77 entries.



Resort results by:  [ \/]                                   [Set Search Limits]

| # | Title < | Full Title | Copyright Number | Date |
|---|---------|-----------|------------------|------|
| [ ] [ 1 ] | The Capitol Forum | Capitol Forum. [Published: 2016-06-01 to 2016-06-29. Issues: June 2016] | TX0008737161 | 2016 |
| [ ] [ 2 ] | The Capitol Forum. | Capitol Forum. [Published: 2016-07-01 to 2016-07-28. Issues: July 2016] | TX0008459175 | 2016 |
| [ ] [ 3 ] | The Capitol Forum. | Capitol Forum. [Published: 2016-08-01 to 2016-08-31. Issues: August 2016] | TX0008737157 | 2016 |
| [ ] [ 4 ] | The Capitol Forum | Capitol Forum. [Published: 2016-09-01 to 2016-09-30. Issues: September 2016] | TX0008393845 | 2016 |
| [ ] [ 5 ] | The Capitol Forum. | Capitol Forum. [Published: 2016-10-03 to 2016-10-31. Issues: October 2016] | TX0008393831 | 2016 |
| [ ] [ 6 ] | The Capitol Forum. | Capitol Forum. [Published: 2016-11-01 to 2016-11-30. Issues: November 2016] | TX0008410534 | 2016 |
| [ ] [ 7 ] | The Capitol Forum. | Capitol Forum. [Published: 2016-12-01 to 2016-12-29. Issues: December 2016] | TX0008410546 | 2016 |
| [ ] [ 8 ] | The Capitol Forum | Capitol Forum. [Published: 2017-01-03 to 2017-01-31. Issues: January 2017] | TX0008476156 | 2017 |
| [ ] [ 9 ] | The Capitol Forum | Capitol Forum. [Published: 2017-02-01 to 2017-02-28. Issues: February 2017] | TX0008476178 | 2017 |
| [ ] [ 10 ] | The Capitol Forum | Capitol Forum. [Published: 2017-03-01 to 2017-03-31. Issues: March 2017] | TX0008476004 | 2017 |
| [ ] [ 11 ] | The Capitol Forum | Capitol Forum. [Published: 2017-04-03 to 2017-04-28. Issues: April 2017] | TX0008476046 | 2017 |
| [ ] [ 12 ] | The Capitol Forum | Capitol Forum. [Published: 2017-05-03 to 2017-05-31. Issues: May 2017] | TX0008475971 | 2017 |
| [ ] [ 13 ] | The Capitol Forum | Capitol Forum. [Published: 2017-06-01 to 2017-06-30. Issues: June 2017] | TX0008476604 | 2017 |
| [ ] [ 14 ] | The Capitol Forum. | Capitol Forum. [Published: 2017-07-03 to 2017-07-31. Issues: July 2017] | TX0008476563 | 2017 |
| [ ] [ 15 ] | The Capitol Forum | Capitol Forum. [Published: 2017-08-01 to 2017-08-30. Issues: August 2017] | TX0008625741 | 2017 |
| [ ] [ 16 ] | The Capitol Forum. | Capitol Forum. [Published: 2017-09-01 to 2017-09-29. Issues: September 2017] | TX0008627297 | 2017 |

| | | | | |
|---|---|---|---|---|
| [ ] [ 17 ] | The Capitol Forum | Capitol Forum. [Published: 2017-10-02 to 2017-10-31. Issues: October 2017] | TX0008629242 | 2017 |
| [ ] [ 18 ] | The Capitol Forum. | Capitol Forum. [Published: 2017-11-01 to 2017-11-30. Issues: November 2017] | TX0008627501 | 2017 |
| [ ] [ 19 ] | The Capitol Forum | Capitol Forum. [Published: 2017-12-01 to 2017-12-22. Issues: December 2017] | TX0008627516 | 2017 |
| [ ] [ 20 ] | The Capitol Forum | Capitol Forum. [Published: 2018-01-02 to 2018-01-31. Issues: January 2018] | TX0008627541 | 2018 |
| [ ] [ 21 ] | The Capitol Forum | Capitol Forum. [Published: 2018-02-01 to 2018-02-28. Issues: February 2018] | TX0008627562 | 2018 |
| [ ] [ 22 ] | The Capitol Forum. | Capitol Forum. [Published: 2018-03-01 to 2018-03-30. Issues: March 2018] | TX0008627584 | 2018 |
| [ ] [ 23 ] | The Capitol Forum | Capitol Forum. [Published: 2018-04-02 to 2018-04-30. Issues: April 2018] | TX0008627602 | 2018 |
| [ ] [ 24 ] | The Capitol Forum. | Capitol Forum. [Published: 2018-05-01 to 2018-05-31. Issues: May 2018] | TX0008627615 | 2018 |
| [ ] [ 25 ] | The Capitol Forum. | Capitol Forum. [Published: 2018-06-01 to 2018-06-29. Issues: June 2018] | TX0008627630 | 2018 |

**Resort results by:** [ \/]                                                                 [Set Search Limits]

[Clear Selected] [Retain Selected]



1 26 51 76

| Save, Print and Email (**Help Page**) | |
|---|---|
| **Records** | Select Format:  [     \/] [Format for Print/Save] |
| ( )All on Page (X)Selected On Page ( )Selected all Pages | Enter your email address: [      ] [Email] <br> Save results for later: [Save To Bookbag] |

Help   Search   History   **Titles**   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page