UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM, <br><br> *Plaintiff* <br><br> v. <br><br> MARKET SECURITIES, LLC, <br><br> and <br><br> *Defendants* | CIVIL ACTION NO.: 22-1333 (BAH) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARKET SECURITIES, LLC'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 2

   A.   COUNT I (DIRECT COPYRIGHT INFRINGEMENT) MUST BE PARTIALLY DISMISSED ............... 2
      a.   Plaintiff's SAC Is Unclear Regarding the Copyrighted Works At Issue ......................... 2
      b.   Plaintiff Has Failed to Allege Substantial Similarity of Protectible Elements ................ 3
   B.   COUNT II (CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST MARKET SECURITIES) MUST BE DISMISSED .................................................................................................................... 5
      a.   Plaintiff Fails to Adequately Allege Direct Infringement ................................................ 5
      b.   Plaintiff Fails to Adequately Allege Facts Supporting Knowledge ................................ 6
      c.   Plaintiff Fails to Adequately Allege Facts Supporting Substantial Participation ............ 7

III. CONCLUSION ............................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2000) ...................................................... 6

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2009) ......................................................... 6

*Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Fam. Found., Inc.*, 595 F. Supp. 2d 110 (D.D.C. 2009) ............................................................................................................................. 3

*Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) .......... 4

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342 (S.D.N.Y. 2014) .......... 8

*Dress Barn, Inc. v. Klauber Bros.*, No. 18cv8085 (DLC), 2019 U.S. Dist. LEXIS 68869 (S.D.N.Y. Apr. 22, 2019) .................................................................................................................. 6

*Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012) ....................................................... 8, 9

*Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56 (D.D.C. 2003), aff'd, 363 U.S. App. D.C. 459, 389 F.3d 1291 (D.C. Cir. 2004) ........................................................................................................ 3

*Gershwin v. Columbia Artists*, 443 F.2d 1159 (2d Cir. 1971) ...................................................... 7

*Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ................................................... 7

*Macher v. Netflix, Inc.*, No. 7:22-cv-00575, 2023 U.S. Dist. LEXIS 130085 (W.D.Va. July 27, 2023) ........................................................................................................................................... 4

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........................................................... 7

*Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005) .................................................. 2, 8

*Perfvwaybelayouix v. Graham-Drake*, No. 22-1019 (CKK), 2022 U.S. Dist. LEXIS 216913 (D.D.C. Dec. 1, 2022) ................................................................................................................. 3

*Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503 (N.D. Ohio 1997) .......... 7

**Statutes**

17 U.S.C. § 411(a) ......................................................................................................................... 2

**Other Authorities**

Register of Copyrights, *Copyright Protections for Press Publishers* (June 2022) ......................... 4

**Treatises**

1 Nimmer on Copyright § 2.01 ...................................................................................................... 4

**Regulations**

37 CFR § 202.1 .............................................................................................................................. 4

Market Securities[1] respectfully submits this reply in further support of its Motion to dismiss Plaintiff's SAC.

## I.     INTRODUCTION

Plaintiff's Memorandum in Opposition to Market Securities' Motion to Dismiss (*Dkt. Entry No. 34*) (the "Opposition"), much like the SAC, is rife with conclusory, self-serving allegations that lack an adequate factual and legal predicate. In the Opposition, Plaintiff claims that it has sufficiently pled its claim for direct infringement merely because it has identified the works at issue, but not the registrations thereof, despite registrations being a precondition for filing any copyright claim. Without any legal support, and in defiance of the spirit and letter of the Copyright Act, Plaintiff seeks to lay claim to short phrases, and common verbiage in the financial industry, by claiming that headlines (versus titles) are protectible. As for Plaintiff's claim for contributory copyright infringement, Plaintiff's allegations of Market Securities' alleged knowledge of BTG's supposed infringing conduct, and affirmative acts aiding or causing the infringement, are woefully lacking. Plaintiff's claim rests upon a fictitious "agreement" to provide investment advice (advice that Market Securities was already obligated to provide to its client, BTG), and delete Plaintiff's publications, which Plaintiff alleges—once again, in an entirely conclusory fashion—encouraged and caused BTG's infringing conduct (Opposition, p. 15). Even accepting Plaintiff's spurious allegations as true, Plaintiff has failed to adequately allege—nor can it adequately allege—any affirmative conduct by Market Securities that would justify imposing secondary liability on it for the conduct of BTG, an independent, discrete entity that acted of its own volition.

---

[1] All capitalized terms, unless otherwise indicated, shall be given the definition(s) set forth in Defendant's Memorandum of Law in Support of Defendant's Motion (*Docket Entry No. 31-1*) (the "MOL").

## II.   ARGUMENT

### A. Count I (Direct Copyright Infringement) Must Be Partially Dismissed

#### a. *Plaintiff's SAC Is Unclear Regarding the Copyrighted Works At Issue*

In arguing that the SAC allegedly "provides absolute clarity on the works at issue", Plaintiff misapprehends the appropriate issues, namely that: 1) Plaintiff has not set forth factual allegations supporting Market Securities' alleged infringement of all sixteen (16) of the Asserted Registrations (namely, there is no evidence included in the SAC that TX 8-953-721, TX 8-996-171, TX 9-094-440, TX 9-071-495, and TX 9-082-488 have been allegedly infringed);[2] and 2) Plaintiff has asserted the alleged infringement of sixteen (16) of its articles that are not covered by any of the sixteen (16) Asserted Registrations (for example, Plaintiff alleges that certain articles published in March 2020 were purportedly infringed, but none of the copyrights identified cover articles published during that time period). Instead, Plaintiff erroneously focuses on the level of detail provided in Exhibit C, and the parties' agreement regarding the same (Opposition, pp. 5-6); however, Market Securities has not raised any issue with respect to the comparison of the works, but rather, Plaintiff's complete and utter failure to accurately identify the registered rights on which it is relying. Plaintiff suggests that this is a non-issue, given that "Market Securities is well aware that Capitol Forum has registered its copyrights since 2016" and such registrations are a matter of public record and/or have been produced in discovery. Yet, the onus is on Plaintiff to plead its case, and it is not up to Market Securities to fill in the blanks for Plaintiff. *See, e.g., Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 188 (D.D.C. 2005) ("[t]here are, however, simply no allegations that any press release has received a copyright registration number from the United States Copyright Office, thus entitling it to protection under the Copyright Act. This is fatal to the plaintiff's claim"); *see also* 17 U.S.C. § 411(a) (noting that

---

[2] In footnote 3 of the Opposition, Plaintiff alleges that "[t]he listing of only 16 registrations in the SAC is an artifact of the initial complaint"; however, now, after substantial discovery has occurred, Plaintiff has not set forth factual allegations supporting the infringement of all such Asserted Registrations.

a copyright registration is a precondition to filing a lawsuit); and *Perfvwaybelayouix v. Graham-Drake*, No. 22-1019 (CKK), 2022 U.S. Dist. LEXIS 216913 (D.D.C. Dec. 1, 2022) (to make out an infringement claim, a plaintiff must show ownership of a valid copyright, such as by filing copies of certificates of registration and/or providing copyright registration numbers).

### b. *Plaintiff Has Failed to Allege Substantial Similarity of Protectible Elements*

As a threshold matter, with respect to the instances in which Plaintiff has failed to allege substantial similarity of protectible elements, Plaintiff's argument that Market Securities has offered "no defense to the other 42 newly asserted infringements, and in this district, the failure to respond to an argument acts as a concession" is illogical. Opposition, p. 6. First, in its MOL, Market Securities explicitly indicated that it is seeking a partial motion to dismiss, with its answer, which will include its defenses, such as fair use, to be submitted at a later date (MOL, p. 3; *see also* Note 2). Second, Market Securities has also indicated that "at the very least" the nine (9) instances specifically identified are subject to dismissal. MOL, p. 7. Third, in making its argument for dismissal, Market Securities has unequivocally not made any concessions, and the cases on which Plaintiff relies are entirely inapposite. *See Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Fam. Found., Inc.*, 595 F. Supp. 2d 110, 117 (D.D.C. 2009) (the plaintiff failed to respond to an argument made in the defendants' motion to dismiss, which the Court noted operates as a concession, unlike here, where Market Securities is the one that has filed the Motion in response to Plaintiff's SAC); *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003), aff'd, 363 U.S. App. D.C. 459, 389 F.3d 1291 (D.C. Cir. 2004) (again, involved the plaintiff's failure to address certain arguments made by the defendant in a motion to dismiss).

With respect to the merits, Plaintiff's position that headlines, as opposed to titles, are copyrightable is entirely unsupported, contradicted by the case law cited by Market Securities in its MOL, and contravenes the basic, statutorily established principle that "[w]ords and short

phrases" are not entitled to copyright protection (37 CFR § 202.1).[3] Plaintiff cites to *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 559 (S.D.N.Y. 2013) (Opposition, p. 7) in apparent support of its assertion that headlines are protectable, but this case does not in fact stand for the foregoing proposition. In *Associated Press*, more than just the taking of headlines was alleged, but regardless, the defendant had not contested the plaintiff's "showing that its copying of each of the Registered Articles was an act of infringement" and as such, the Court did not reach the question of substantial similarity of protectible elements. Moreover, Plaintiff conveniently overlooks one of the authorities cited by Market Securities, which specifically analyzes copyright protection for press publishers: Register of Copyrights, *Copyright Protections for Press Publishers* (June 2022), *available at* https://www.copyright.gov/policy/publishersprotections/202206-Publishers-Protections-Study.pdf. In the foregoing publication, the U.S. Copyright Office analyzed "[a]nother relevant limitation on the protectability of headlines and ledes", which is "the words and short phrases doctrine, under which courts generally refuse copyright protection to individual words, titles, and short phrases." *Id.* at 34. It noted that "Courts have generally treated titles as uncopyrightable per se, regardless of any creativity their authors claim they possess." *Id.* at 36; *see also* Note 191 (collecting authorities).

Regardless of whether or not Plaintiff characterizes the titles of its articles as titles or headlines, based on an examination of the SAC, there can be no question that Plaintiff is alleging

---

[3] 37 C.F.R. § 202.1 provides "[t]he following are **examples** of works not subject to copyright. . . Words and short phrases such as names, titles, and slogans" (emphasis added). Plaintiff seems to suggest that calling something a title versus a headline is outcome determinative; however, Plaintiff fails to acknowledge that the terminology used is not dispositive, but instead, whether or not the title or headline constitutes a short phrase. The authority cited by Plaintiff in its MOL also was not limited to the protectability of titles of songs. *See, e.g., Macher v. Netflix, Inc.*, No. 7:22-cv-00575, 2023 U.S. Dist. LEXIS 130085 (W.D.Va. July 27, 2023) (involved use of title of book in a Netflix series; Court granted motion to dismiss since titles are not copyrightable); 1 Nimmer on Copyright § 2.01 (noting, as a general matter, "the weight of existing authority apparently precludes copyright protection for a title regardless of its degree of creativity").

similarity between short, commonplaces words and/or phrases, which Plaintiff does not own. For example, the sole similarity between the works identified on page 56 is the headline: "Management Comments Could Support Anti-Merger Narrative." Plaintiff's suggestion that this similarity amounts to the same "precise turns of phrase, analytical frameworks, and subjective conclusions", rather than a basic six (6) word phrase is disingenuous, at best. Likewise, the alleged infringements identified on pages 51, 53, 60, 61, 68, 71, and 80 suffer from similar defects: the sole similarity extends to common, short words and/or phrases.[4]

### B. Count II (Contributory Copyright Infringement Against Market Securities) Must Be Dismissed

#### a. *Plaintiff Fails to Adequately Allege Direct Infringement*

With respect to Plaintiff's contributory claim, Plaintiff, once again, conveniently ignores that it has failed to specifically identify, among other things, what registered copyrights have been allegedly infringed by BTG. Instead, relying on a number of self-serving statements and facts outside of the pleadings, Plaintiff claims—now, after substantial discovery has been taken[5]—that it does "not yet know the accurate number of direct infringements by BTG Pactual" (Opposition, p. 9). However, the mere fact that Plaintiff may not know the extent of any alleged infringement (which is suspect, given the procedural posture of this case),[6] does not excuse Plaintiff's failure to sufficiently identify the registered copyrights that it currently alleges that BTG has infringed.

---

[4] Plaintiff's suggestion that Market Securities has "failed to address the specific passages used in its articles" is contradicted by p. 8 of Market Securities' MOL. Nonetheless, the comparisons attached to the SAC speak for themselves.
[5] Plaintiff's reference to Ms. Donaker's supposed deletion and destruction of articles received as a basis for its lack of knowledge, and its attestation regarding any "spoliation of evidence" (Opposition, p. 10), is utterly unmeritorious, and of limited relevance to the instant Motion.
[6] Plaintiff cites to this Court's 3/23 Order (Opposition, p. 10) in support of its argument, but fails to realize that previously, Plaintiff cited not only certain October articles at issue, but also the relevant copyright registration(s) covering those works, and when the Court rendered the 3/23 Order, discovery had not yet taken place.

**b.** *<u>Plaintiff Fails to Adequately Allege Facts Supporting Knowledge</u>*

As for the requisite knowledge, Plaintiff's argument is replete with conclusory self-serving statements, much like its SAC. Market Securities does not dispute the knowledge standard set forth in Plaintiff's Opposition (p. 11), but vehemently contests that the threadbare allegations set forth in the SAC are satisfactory.

Plaintiff's citation to *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2009) (Opposition, p. 11) is wholly misplaced. Unlike here, the plaintiff provided "ample detail" and factual allegations pertaining to direct knowledge, extending beyond the placement of copyright notices. *Id.* at 121. Likewise, the other cases cited by Plaintiff are similarly distinguishable. *See, e.g., A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2000) (Opposition, p. 11) (involved appeal of preliminary injunction, not a motion to dismiss; record was replete with evidence of actual and constructive knowledge).

Further, Plaintiff's suggestion that "the allegations in the SAC are more than sufficient to raise the inference that Ms. Donaker knew that the Capitol Forum publications she received were copyrighted" (Opposition, p. 11) misses the mark. The relevant question is whether or not Market Securities knew that BTG's conduct allegedly constituted copyright infringement, not whether or not Ms. Donaker knew that Plaintiff's publications were subject to copyright protection generally. The allegations set forth in the SAC, and replicated in Plaintiff's Opposition (p. 12)—and any inferences reasonably drawn therefrom—are merely conclusory, self-serving, and insufficient. *See, e.g., Dress Barn, Inc. v. Klauber Bros.*, No. 18cv8085 (DLC), 2019 U.S. Dist. LEXIS 68869, at *13 (S.D.N.Y. Apr. 22, 2019) (finding allegations that the counterdefendants committed copyright infringement with actual or constructive knowledge of the plaintiff's rights amounted to "a threadbare recitation of the legal requirement [for contributory infringement] that is inadequate to plausibly allege. . .knowledge"); *see also Kowal*

*v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.").

    **c.** *<u>Plaintiff Fails to Adequately Allege Facts Supporting Substantial Participation</u>*

In a similar vein, Plaintiff's allegations regarding Market Securities' substantial participation in BTG's infringing conduct are insufficient, and its citation to obviously distinguishable case law is misguided. Specifically, Plaintiff's citation to *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) (Opposition, p. 13)—a case involving file-sharing services, where the record was replete with evidence of "active steps to encourage infringement", including defendants marketing themselves as Napster alternatives, among other things—is erroneous. *Id.* at 924. In *Grokster*, the U.S. Supreme Court specifically noted that there were clear, affirmative steps that went "beyond mere distribution with knowledge of third-party action", and stressed that contributory infringement was premised upon "purposeful, culpable expression and conduct". *Id.* at 913, 937. As Plaintiff noted, the Court went on to cite conduct that suffices to establish inducement, "such as advertising an infringing use or instructing how to engage in an infringing use", i.e., conduct that shows "an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged". *Id.* at 936.

The other cases cited by Plaintiff likewise involved vastly disparate facts: 1) in *Gershwin v. Columbia Artists*, 443 F.2d 1159 (2d Cir. 1971), there was evidence of pervasive participation in the infringement in that the defendant, among other things, actively promoted concerts where unauthorized music was performed, with knowledge of the infringing nature of such music; 2) in *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503 (N.D. Ohio 1997), the defendants admitted that they actively encouraged subscribers to upload copyrighted information; 3) and in *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342

7

(S.D.N.Y. 2014), the defendants operated a network of websites involved in widespread copyright infringement, and acted in concert with others to infringe the plaintiffs' photographs. Moreover, Plaintiff cites to two cases that do not support the result it seeks: 1) in *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012), the Seventh Circuit vacated the preliminary injunction order, finding that there was no evidence that the defendant encouraged the uploaders of the copyrighted works, despite it knowing that some of the videos bookmarked on its website may infringe another's copyright; and 2) in *Newborn*, 391 F. Supp. 2d 181, the Court granted the defendant's motion to dismiss, finding that, like the instant case, the plaintiff's claim of contributory copyright infringement could not succeed for a host of reasons, including that the plaintiff's complaint failed to allege any facts to support a conclusion that the defendants substantially participated in the infringing activities.

Here, the sparse allegations relating to any participation by Market Securities in BTG's underlying alleged direct infringement, let alone participation that would qualify as ***substantial***, is unequivocally lacking. Plaintiff's self-serving suggestion that "[t]he conduct of Market Securities in entering into an agreement with BTG Pactual to receive the copyrighted reports far surpasses the type of conduct addressed in the cases" cited in its Opposition is clearly belied by a precursory review of said cases. In the SAC, Plaintiff admits that the nature of Defendant's business—as a registered brokerage firm that has a legal duty to disclose material information pertaining to or affecting the stock market to its customers —is such that clients, including BTG, come to it for investment advice. *See* SAC, ¶ 23. Despite that admission, Plaintiff nonsensically contends that Ms. Donaker's purported "agreement"[7] to provide financial advice—advice that

---

[7] Plaintiff suggests that Market Securities does not say how the narrative concocted by Plaintiff is false (Opposition, Note 2). To be clear, as noted in Market Securities' MOL, the existence of any "agreement" between Market Securities and BTG regarding the exchange of Plaintiff's articles is false. The substantial discovery taken in this case does not support that any such agreement exists or has existed. While Plaintiff contends that the allegations set

8

she had a preexisting obligation to provide to BTG as part of her role at Market Securities, regardless of whether or not she receives any of Plaintiff's publications—qualifies as aiding and abetting BTG's alleged direct infringement.[8] Plaintiff notes that "[t]he fact that Ms. Donaker's job may be to provide investment advice to her clients does not insulate her copyright violations" (Opposition, p. 14),[9] but fails to appreciate that Ms. Donaker's job description is directly relevant to the issue of Market Securities' purported participation in BTG's allegedly infringing conduct. In other words, as Plaintiff admits in the SAC (*see* SAC, ¶ 23), Market Securities' agreement to provide financial advice to BTG is not part of any supposed participation in a nefarious copyright infringement scheme, but instead, is a result of the relationship among Market Securities and BTG.

Further, "the fact that Ms. Donaker promised not to further share or republish the articles" is not in fact "meaningless" as Plaintiff suggests, without an iota of support. Unlike in *Grokster*, *Gershwin*, and the like, Market Securities did not provide any service or product that permitted the infringement to occur nor are there any allegations that it engaged in affirmative conduct that materially contributed to the proliferation thereof. As the Court noted in *Flava Works, Inc.*, 689 F.3d at 759, "[a] term in the conventional definition of contributory infringement—'material contribution'—invokes common law notions of remoteness that limit efforts to impose liability for speculative imaginings of possible causal consequences". "The

---

forth in the SAC are "based on counsel's interview with Ms. Suarez", Market Securities has reason to believe that Plaintiff, at best, intentionally mischaracterized said interview, and created a fictitious narrative regarding a supposed "agreement" between Market Securities and BTG in a deliberate effort to manufacture a claim for contributory infringement. Nevertheless, Plaintiff still has failed to make out a claim for contributory infringement against Market Securities, even accepting such fabrications as true.

[8] Plaintiff appears to wholly misunderstand the arguments set forth in Market Securities MOL by incorrectly suggesting that "Market Securities apparently recognizes that such an agreement, if proved, would satisfy the substantial participation requirement under the case law." Opposition, p. 14.

[9] As explicitly noted in Market Securities' MOL, Market Securities maintains that its conduct constitutes a fair use (MOL, p. 1), but, given that this Court previously found that Market Securities' arguments related to the same were premature on a motion to dismiss (*Dkt. No. 20*, FN 1), Market Securities reserved all such arguments for its motion for summary judgment. Despite that fact, Plaintiff misapprehends Market Securities' argument as one relating to fair use (Opposition, p. 14).

absence of evidence [or non-conclusory factual allegations] of [Market Securities'] effect on the amount of infringement of [Plaintiff's articles] brings concern about remoteness into play." *Id.*

Additionally, what Ms. Donaker or Market Securities may have done after receiving any of Plaintiff's publications (Opposition, p. 15) is wholly irrelevant to the question of contributory infringement, which is predicated upon Market Securities' alleged involvement in BTG's purported underlying infringement, and is separate and apart from Plaintiff's claims of direct infringement against Market Securities.

In sum, the SAC is devoid of non-conclusory factual allegations supporting a claim of contributory infringement against Market Securities. Notably, in the Opposition, Plaintiff does not request leave to amend, nor should such leave be granted with respect to Plaintiff's contributory copyright claim.

## III.   CONCLUSION

For the foregoing reasons, as well as those articulated in Market Securities' MOL, Market Securities respectfully requests that the Court partially dismiss Plaintiff's SAC, and grant such other relief as is just and appropriate.

Dated: October 13, 2023                                   Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:   S/ *Kerry B. Brownlee*
      Kerry B. Brownlee
      NY Bar No. 5309075
      kbrownlee@ipcounselors.com
      Jason M. Drangel (JD 7204)
      NY Bar No. 2538981
      jdrangel@ipcounselors.com
      60 East 42nd Street, Suite 1250
      New York, NY 10165
      Telephone: (212) 292-5390
      Facsimile: (212) 292-5391
      *Attorneys for Defendant*
      *Market Securities, LLC*

*PRO HAC VICE*

**COPYRIGHT COUNSELORS, LLC**

BY: S/ *John D. Mason*
John D. Mason
DC Bar No. 464072
7315 Wisconsin Ave.
Suite 400 West
Bethesda, MD 20814
Telephone: (888) 313-3637
Facsimile: (301) 760-7032
jmason@copyrightcounselors.com
*Attorney for Defendant*
*Market Securities, LLC*