## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action 1:22-cv-01333-BAH |
| MARKET SECURITIES, LLC & BTG PACTUAL ASSET MANAGEMENT US, LLC | ) ) ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANT BTG PACTUAL ASSET MANAGEMENT US, LLC'S (1) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, (2) MOTION TO TRANSFER UNDER 28 U.S.C. § 1631.**

Defendant BTG Pactual Asset Management US, LLC ("BTG"), by and through its undersigned counsel and pursuant to Rule 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, hereby moves to dismiss the claims asserted against it by plaintiff DBW Partners, LLC d/b/a The Capitol Forum ("Plaintiff") in the Second Amended Complaint for lack of personal jurisdiction and improper venue. In the alternative, BTG moves to transfer the claims asserted against it by Plaintiff in the Second Amended Complaint pursuant to 28 U.S.C. § 1631 to the Southern District of New York.

**TABLE OF CONTENTS**

**Page**

Introduction .................................................................................................................. 6

Statement of Facts ...................................................................................................... 6

Argument ...................................................................................................................... 8

    I.    Capitol Forum Cannot Establish Specific Jurisdiction Over BTG. ............................. 9

        A.    BTG Does Not Transact Business in the District of Columbia as Required Under D.C. Code § 13-423(a)(1). .............................................................................. 10

            i.    Alleged Solicitation and Service of Clients. ................................................... 11

            ii.    Capitol Forum and the Subscription Agreement. ........................................... 12

            iii.    Any Other Contacts Are Attenuated and Fortuitous ...................................... 16

        B.    BTG Has Not Caused Tortious Injury in the District of Columbia as Required Under D.C. Code § 13-423(a)(4). .............................................................................. 18

            i.    The Copyright Injury Did Not Occur in the District of Columbia. ................ 18

            ii.    BTG Does Not Have Any Contacts With The District of Columbia to Satisfy the "Plus Factors" Required Under D.C. Code § 13-423(a)(4). .................... 21

            iii.    Exercise of Personal Jurisdiction Over BTG Under Section (a)(4) Would Violate Due Process. ..................................................................................... 22

    II.    Capitol Forum Cannot Establish General Jurisdiction Over BTG. ............................ 22

    III.    Venue is Improper in the District of Columbia. ...................................................... 23

    IV.    In the Alternative, this Court Should Transfer the Claims against BTG to the Southern District of New York. .............................................................................................. 23

Conclusion .................................................................................................................. 24

# INDEX OF AUTHORITIES

**Page(s)**

## CASES

*AF Holdings, LLC v. Does 1-1058*
  *1058*, 752 F.3d 990 (D.C. Cir. 2014) .....................................................................22

*Aristotle Int'l, Inc. v. Acuant, Inc.*,
  No. 22-CV-741 (DLF), 2023 WL 1469038 (D.D.C. Feb. 2, 2023) ...........................10, 14, 15

*Associated Producers, LTD v. Vanderbilt Univ.*,
  76 F. Supp. 3d 154 (D.D.C. 2014) .........................................................................16

*Atchley v. AstraZeneca UK Ltd.*,
  22 F.4th 204 (D.C. Cir. 2022) ................................................................................10

*Atlantigas Corp. v. Nisource, Inc.*,
  290 F. Supp. 2d 34 (D.D.C. 2003) .........................................................................12

*Bigelow v. Garrett*,
  299 F. Supp. 3d 34 (D.D.C. 2018) .........................................................................11, 22

*\*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .............................................................................................12, 13, 14

*Burman v. Phoenix Worldwide Indus., Inc.*,
  437 F. Supp. 2d 142, 13 (D.D.C. 2006) .................................................................21

*Clay v. Blue Hackle N. Am., LLC*,
  907 F. Supp. 2d 85 (D.D.C. 2012) .........................................................................8

*COMSAT Corp. v. Finshipyards S.A.M.*,
  900 F. Supp. 515 (D.D.C. 1995) ...........................................................................16

*Crane v. Carr*,
  814 F.2d 758 (D.C. Cir. 1987) ...............................................................................20

*Crane v. N.Y. Zoological Soc.*,
  894 F.2d 454, 282 U.S. App. D.C. 295 (D.C. Cir. 1990) ........................................8

*Does 1-144 v. Chiquita Brands Int'l, Inc.*,
  285 F. Supp. 3d 228 (D.D.C. 2018) .......................................................................23

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
  638 F. Supp. 2d 1 (D.D.C. 2009) ...........................................................................17

*FC Inv. Grp. LC v. IFX Markets, Ltd.,*
  479 F. Supp. 2d 30 (D.D.C. 2007), aff'd, 529 F.3d 1087 (D.C. Cir. 2008) ..........................16

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
  141 S. Ct. 1017 (2021) ..............................................................................................................10

*Forras v. Rauf,*
  812 F.3d 1102 (D.C. Cir. 2016) ..................................................................................................9

*Freeplay Music, Inc. v. Cox Radio, Inc.,*
  No. 04 Civ. 5238GEL, 2005 WL 1500896 (S.D.N.Y. June 23, 2005) ....................................18

*Gather Workspaces LLC v. Gathering Spot, LLC,*
  No. CV 19-2669 (RC), 2020 WL 6118439 (D.D.C. Oct. 16, 2020).........................................23

*Gibbons & Co., Inc. v. Roskamp Inst.,*
  No. 06–CV–720, 2006 WL 2506646 (D.D.C. Aug. 28, 2006)................................................16

*GTE New Media Servs. Inc. v. BellSouth Corp.,*
  199 F.3d 1343 (D.C. Cir. 2000) ................................................................................................21

*Hanson v. Denckla,*
  357 U.S. 235 (1958)...................................................................................................................10

*Health Commc'ns, Inc. v. Mariner Corp.,*
  860 F.2d 460 (D.C. Cir. 1988) ............................................................................................14, 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984)...................................................................................................................22

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,*
  326 U.S. 310 (1945)................................................................................................................9, 10

*Jung v. Assoc. of Amer. Medical Colleges,*
  300 F. Supp. 2d 119 (D.D.C. 2004) ..........................................................................................15

*\*Nat'l Resident Matching Program v. Elec. Residency LLC,*
  720 F. Supp. 2d 92 (D.D.C. 2010) .................................................................................12, 13, 15

*Nu Image, Inc. v. Does 1-23,322,*
  799 F. Supp. 2d 34 (D.D.C. 2011).......................................................................................18, 22

*Okolie v. Future Servs. Gen. Trading & Contracting Co.,*
  102 F. Supp. 3d 172 (D.D.C. 2015) ..........................................................................................22

*Penguin Grp. (USA) Inc. v. American Buddha,*
  640 F.3d 497 (2d Cir. 2011).........................................................................................18, 19, 20

*Rundquist v. Vapiano SE*,
    798 F. Supp. 2d 102 (D.D.C. 2011) ............................................................22

*SEC v. Lines Overseas Mgmt., Ltd.*,
    Civil Action No. 04–0302, 2005 WL 3627141 (D.D.C. Jan. 7, 2005) ....................15

*Second Amendment Found. v. U.S. Conference of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ..................................................................8

*Slate v. Kamau*,
    2021 WL 3472438 (D.D.C., 2021) .............................................................20

*Steinberg v. Int'l Crim. Police Org.*,
    672 F.2d 927, 931 (D.C. Cir. 1981) ...........................................................18

*Thompson Hine, LLP v. Taieb*,
    734 F.3d 1187 (D.C. Cir. 2013) ......................................................10, 12, 16

*United States v. Ferrera*,
    54 F.3d 825 (D.C. Cir. 1995) ....................................................................8

*Willis v Willis*,
    655 F.2d 1333, 1336 (D.C. Cir. 1981) ........................................................11

## CONSTITUTION AND STATUTES

28 U.S.C. § 1631 ..................................................................................23, 24

28 U.S.C. § 1400(a) ....................................................................................22

D.C. Code § 13-334 ....................................................................................22

*D.C. Code § 13-423 .............................................................................. *passim*

## INTRODUCTION

The copyright infringement allegations against BTG should be dismissed or transferred to New York because BTG—a Delaware entity headquartered in New York, New York— does not have minimum contacts to subject it to personal jurisdiction in this District. Capitol Forum's copyright infringement claim relates to alleged conduct that has no specific connection to the District of Columbia—namely, the alleged unauthorized transmission of Capitol Forum's publications from BTG's New York and Texas-based employee Cristina Suarez to co-defendant Market Securities' employee Jennifer Donaker located in New York. Because this lawsuit arises out of alleged actions and injuries unrelated to the District of Columbia, the Court does not have specific personal jurisdiction over BTG and the claims against BTG should either be dismissed or transferred.

## STATEMENT OF FACTS

Capitol Forum accuses Market Securities of copying and using its publications in Market Securities' own reports, thereby violating its copyrights. Dkt. 28 ¶¶ 22–29. Capitol Forum claims that an employee of BTG, Cristina Suarez, improperly sent several Capitol Forum reports to an employee of Market Securities, Jennifer Donaker, who then allegedly copied those reports into Market Securities' own publications that were then distributed to its clients. *Id.* ¶ 25.[1] Ms. Donaker is an employee in Market Securities' New York office.

Plaintiff DBW Partners, LLC d/b/a The Capitol Forum is an investigative news reporting company. Dkt. 28 ¶ 2. Capitol Forum provides publications to subscribers using an internet-based

---

[1] On September 25, 2023, Market Securities moved to dismiss the indirect copyright infringement claim and partially dismiss the direct claim against it under Rule 12(b)(6). Dkt. 31.

subscription service. *Id*. Capitol Forum is a District of Columbia limited liability company that operates its principal place of business within the District. *Id.* ¶ 9.

Ms. Suarez's legally gained access to Capitol Forum's publications in 2020 via a subscription agreement between Capitol Forum and BTG Pactual Global Asset Management Ltd., a non-party to this lawsuit. Declaration of C. Suarez ¶ 8; *see also* Ex. 4 ("Subscription Agreement"). In January 2019, Capitol Forum's managing director, Matt Treacy based in Capitol Forum's New York office, first e-mailed Ms. Suarez about Capitol Forum's articles. Declaration of C. Suarez ¶ 4; *see also* Ex. 1, pg. 1. Mr. Treacy e-mailed Ms. Suarez seven times from January to August 2019. *Id*. Each email requested a call with Ms. Suarez and contained excerpts from Capitol Forum's articles. *Id*. During the eight months Mr. Treacy was e-mailing Ms. Suarez, Ms. Suarez was also located in New York. Declaration of C. Suarez ¶¶ 3–4. Then in February 2020, Ms. Suarez was contacted again by Capitol Forum, this time by Josep Alba, also a managing director in Capitol Forum's District of Columbia office. *Id*. ¶ 5; *see also* Ex. 2. Mr. Alba inquired about a previously expired subscription from 2015 that Capitol Forum had with non-party BTG Pactual Global Asset Management Ltd. *Id.* Following this invitation from Mr. Alba, non-party BTG Pactual Global Asset Management Ltd. entered into a Subscription Agreement with Capitol Forum for two BTG employees, Ms. Suarez and Stefano Dardi, to access Capitol Forum's reports. Ex. 4.

BTG is a Delaware limited liability company with its headquarters and principal place of business located in New York, New York.[2] Declaration of A. Maron ¶ 5. BTG has no offices or employees within the District and receives no revenue from within it, either. *Id.* ¶¶ 7–8, 10. As

---

[2] Capitol Forum improperly alleged BTG's principal place of business is located at 24 Greenway Plaza Suite 700, Houston, Texas 77046. Dkt. 28 ¶ 11.

such, BTG is not registered as a taxpayer in the District and does not pay corporate income taxes in the District. *Id.* ¶¶ 8–9. BTG employee Cristina Suarez receives Capitol Forum's publications by accessing them over the internet through a subscription service paid by non-party BTG Pactual Global Asset Management Ltd. Declaration of C. Suarez ¶ 8.

Defendant Market Securities is a broker who provides investment advice and also publishes market information and other content to its clients. Dkt. 28 ¶ 23. Market Securities is a Delaware limited liability company with a principal place of business in New York, New York. *Id.* ¶ 10.

## ARGUMENT

As the plaintiff, Capitol Forum bears the burden of "establishing a factual basis for the exercise of personal jurisdiction" over each defendant. *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456, 282 U.S. App. D.C. 295 (D.C. Cir. 1990). Capitol Forum "must allege specific acts connecting defendant with the forum" and "cannot rely on conclusory allegations." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Moreover, unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "need not treat all of plaintiff['s] allegations as true," and "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts" to determine personal jurisdiction. *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012).

To exercise specific personal jurisdiction over Defendant BTG, the Court must find that the exercise of jurisdiction comports with both the District of Columbia's long-arm statute and the U.S. Constitution's due process requirements. *See United States v. Ferrera,* 54 F.3d 825, 828 (D.C. Cir. 1995). In relevant part to this case, the long-arm statute provides that a defendant is subject to specific personal jurisdiction if the claim for relief arises from (1) "transacting any business in the District of Columbia" or (2) "causing tortious injury in the District of Columbia by an act or

omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code §§ 13-423(a)(1), (a)(4).[3] In order to satisfy due process requirements, Capitol Forum must also show that BTG has minimum contacts with the District of Columbia such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). Neither the long-arm statute nor the due process clause provide specific personal jurisdiction over BTG in this case.

## I.   Capitol Forum Cannot Establish Specific Jurisdiction Over BTG.

Whether BTG is subject to specific personal jurisdiction in the District of Columbia is determined first by evaluating statutory jurisdiction under the District of Columbia's long-arm statute, D.C. Code § 13-423. *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016). There are seven enumerated acts under the long-arm statute that can form the basis of specific personal jurisdiction, and Capitol Forum does not specifically identify which prong of the long-arm statute it is relying on as the basis for jurisdiction. Dkt. 28 ¶ 12. It appears, as noted above, that Capitol Forum is relying upon two sub-sections of the D.C long arm statute—subsection (a)(1) and subsection (a)(4).

As discussed previously, Capitol Forum generally alleges that BTG regularly transacts business in the District of Columbia, has caused tortious injury in the jurisdiction, and has derived substantial revenue from the jurisdiction but makes no specific showings under the long-arm

---

[3] Capitol Forum generally alleges that "[p]ursuant to the Long Arm Statute of the District of Columbia, D.C. Code Section 13-423" BTG has "regularly transacted business in the District of Columbia by soliciting and serving clients in this jurisdiction, ha[s] caused tortious injury in this jurisdiction, and ha[s] derived substantial revenue from services provided in this jurisdiction." Dkt. 28 ¶ 12. This general allegation is most similar to subsections (a)(1) and (a)(4) of the District of Columbia Long Arm Statute. Accordingly, only these two subsections are relevant to this motion.

statute to satisfy its burden. Dkt. 28 ¶ 12. None of these allegations are true because BTG has no offices or employees in the District and receives none of its revenue in the District. Declaration of A. Maron ¶¶ 7–8, 10. Capitol Forum also alleges that BTG's conduct affects the District of Columbia because "copyright infringement has been expressly aimed at this jurisdiction which is the place where the copyrights are held," but Capitol Forum has not pled any facts to show that either the acts of infringement or the injury occurred within the District. *See* Dkt. 28 ¶ 12. Because Capitol Forum cannot establish specific jurisdiction, the allegations against BTG should be dismissed or transferred.

### A. BTG Does Not Transact Business in the District of Columbia as Required Under D.C. Code § 13-423(a)(1).

The exercise of personal jurisdiction under section (a)(1) of D.C.'s long-arm statute, for BTG allegedly transacting business in the District of Columbia, would be improper because BTG does not have minimum contacts with the District of Columbia. Section (a)(1) of the long-arm statute "extends as far as the Due Process Clause allows" and the "statutory and constitutional jurisdictional questions . . . merge into a single inquiry: would exercising personal jurisdiction accord with the demands of due process?" *Aristotle Int'l, Inc. v. Acuant, Inc.*, No. 22-CV-741 (DLF), 2023 WL 1469038, at *3 (D.D.C. Feb. 2, 2023) (citing *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013)). For BTG to be subject to personal jurisdiction under D.C. Code Section § 13-423(a)(1), BTG must have "certain minimum contacts with [the jurisdiction] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. These minimum contacts must be "some act by which [the defendant] purposefully avails itself of the privilege of conducting activities within the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In order to exercise personal jurisdiction under the due process clause, the Court must find that (1) BTG has such minimum contacts that it purposefully availed itself of the jurisdiction; (2) BTG's contacts are related to the copyright infringement claim; and (3) the exercise of personal jurisdiction complies with fair play and substantial justice. *See Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 233 (D.C. Cir. 2022). Capitol Forum makes only general allegations of contacts within the District of Columbia that are both incorrect and insufficient to establish jurisdiction over BTG. Capitol Forum alleges that BTG solicits and serves clients within the District of Columbia. But in fact, BTG has no offices, no employees, and is not registered to conduct business in the District. Declaration of A. Maron ¶¶ 7, 9–10. Even if the allegations were true, soliciting and serving clients cannot establish jurisdiction in this case because the alleged acts are entirely unrelated to the copyright infringement claim.

### i.       Alleged Solicitation and Service of Clients.

Capitol Forum alleges that BTG regularly transacts business in the District of Columbia by soliciting and serving clients in this District. Dkt. 28 ¶ 12. These allegations are insufficient to establish jurisdiction because (1) the allegations are wrong and (2) they are unrelated to the alleged copyright infringement. Consistent with due process considerations, the D.C. Circuit has interpreted the long-arm statute to bar lawsuits based on "claims unrelated to the acts forming the basis for personal jurisdiction." *Willis v Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981). Therefore, any conduct must be sufficiently connected to the copyright infringement claim in order to support personal jurisdiction under (a)(1). *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 45 (D.D.C. 2018). Here, Plaintiff only makes conclusory statements that BTG has regularly transacted business in the District of Columbia by soliciting and serving clients in the jurisdiction. Dkt. 25 ¶ 12. Yet Plaintiff has not, and cannot, connect these alleged business transactions to the underlying claim of copyright infringement. BTG has no offices, no employees, and receives none of its revenue from

within the District of Columbia. *See* Declaration of A. Maron ¶¶ 7–8, 10. Thus, Capitol Forum cannot show minimum contacts to support personal jurisdiction over BTG based on the alleged solicitation and service of clients.

> ii.      **Capitol Forum and the Subscription Agreement.**

Although Capitol Forum did not plead the Subscription Agreement as a basis for personal jurisdiction, the only other contacts it may attempt to rely on are a few e-mail messages and phone calls between Ms. Suarez and various Capitol Forum employees since the execution of the Subscription Agreement in 2020. Neither these contacts nor the Subscription Agreement (with non-party BTG Pactual Global Asset Management Ltd.) support personal jurisdiction because (1) the contacts do not rise to the level of such minimum contacts to comport with due process and (2) the Subscription Agreement is with a non-party.

> a.      **Defendant BTG is Not a Party to the Subscription Agreement.**

Capitol Forum cannot rely on the Subscription Agreement as a basis of personal jurisdiction over BTG because BTG is not the subscriber, instead it is non-party BTG Pactual Global Asset Management Ltd. *See* Ex. 4. Without being a party to the Subscription Agreement, BTG cannot "reasonably anticipate being haled into court" in the District of Columbia over that Agreement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (internal citations omitted); *see Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 48 (D.D.C. 2003) ("Ordinarily, a defendant corporation's contacts with a forum may not be attributed to affiliated corporations."). Capitol Forum issued invoices payable by the Bermuda-based non-party, BTG Pactual Global Asset Management Ltd., and accepted subscription fee payments from the non-party. Despite this, Capitol Forum and the Second Amended Complaint ignore any differences between Defendant BTG and non-party BTG Pactual Global Asset Management Ltd. and Capitol Forum has made no attempt to attribute the allegations against the non-party.

b.      **Even if The Subscription Agreement Is Attributed to BTG, It Has No Substantial Connection to D.C.**

Even if Capitol Forum can somehow prove that the Subscription Agreement is imputed

BTG, which it should not be, D.C. courts have generally found that merely entering into a contract

with a D.C. resident is insufficient by itself to meet due process requirements. *Thompson Hine,*

*LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013); *Nat'l Resident Matching Program v. Elec.*

*Residency LLC*, 720 F. Supp. 2d 92, 100 (D.D.C. 2010). The Subscription Agreement can support

specific jurisdiction only if the contract has a "substantial connection" with D.C., which depends

on the following factors: prior negotiations, the parties' contemplated future consequences, their

actual course of dealing, and the contract terms. *See Nat'l Resident Matching Program*, 720 F.

Supp. at 100; *Burger King Corp.*, 471 U.S. at 479.

For example, in *National Resident Matching Program*, the court considered if a form

contract between a foreign defendant and a D.C. resident was sufficient minimum contact. *See* 720

F. Supp. at 100. National Resident Matching Program was a D.C. resident and had a standard

contract all registrants used to access online services.  *Nat'l Resident Matching Program*, 720 F.

Supp. at 96. The defendant was an Ohio entity and even though its agent agreed to the standard

contract to obtain services from a D.C. resident, the court found the contact was too attenuated to

D.C. because there were no negotiations and the plaintiff "merely provided [the defendant's agent]

with online access to the same information that was made available to thousands of other

registrants." *Id.* at 100. Such a contract had no "substantial connection" to D.C. to establish

personal jurisdiction. *Id.*

Like the contract at issue in *National Resident Matching Program*, there were no

negotiations. Instead, Capitol Forum reached out and offered the same access to online

publications as every other subscriber. *See* Declaration of C. Suarez ¶ 6; Ex. 3. Capitol Forum

admits in the amended complaint that it requires each of its subscribers to sign the same standard Subscription Agreement. Dkt. 28 ¶ 20. The Agreement does not even include Capitol Forum's signature, subscribers simply fill in the blanks with their information and user list. Ex. 3. Clearly, Capitol Forum's Subscription Agreement was not "customized in any way to reflect a distinctive relationship." *See Nat'l Resident Matching Program*, 720 F. Supp. at 100. Instead, the Subscription Agreement merely provided online access to the "same information that is available to thousands of other" subscribers and thus cannot establish specific personal jurisdiction because it has no substantial connection to D.C. *See id.* While Capitol Forum's outreach beyond D.C., by Mr. Alba, might subject it to personal jurisdiction outside the District, the reverse is not true: a foreign buyer reaching out to a D.C. business is "plainly not enough" to be a minimum contact sufficient to exercise personal jurisdiction. *Health Commc'ns, Inc. v. Mariner Corp.*, 860 F.2d 460, 465 (D.C. Cir. 1988) (applying *Burger King* and finding that Texas-based hotel management company did not avail itself to D.C. by purchasing services from a D.C. business) ("[A] purchaser who selects an out-of-state seller's goods or services based on their economic merit does not thereby purposefully avail itself of the seller's state law, and does not merely by purchasing from the seller submit to the laws of the jurisdiction in which the seller is located or from which it ships merchandise.").

Capitol Forum did not only reach out from the District of Columbia, but also reached out repeatedly from its New York offices, further breaking the Agreement's connection to this District. *See* Declaration of C. Suarez ¶¶ 4–5; Ex. 1. Capitol Forum's efforts to contact BTG began again in January 2019 when Matt Treacy, a New York-based Capitol Forum employee, e-mailed Ms. Suarez. *See* Declaration of C. Suarez ¶ 4; Ex. 1, pg. 1. Between January and August 2019, Mr. Treacy reached out to Ms. Suarez, who was working in New York at the time, seven times. *See*

Declaration of C. Suarez ¶ 4; *see generally* Ex. 1. Six months after Mr. Treacy's last email BTG executed the Subscription Agreement. *See* Ex. 4; Ex. 1, pg. 13. The Subscription Agreement's connection to the District of Columbia can hardly be characterized as "substantial" when the Agreement has a six-month long history of New York-to-New York solicitations.

The next factor also weighs against personal jurisdiction because Capitol Forum and BTG did not contemplate future dealings in the District of Columbia. For example, in *Aristotle*, the court found the exercise of personal jurisdiction was proper because the "agreement included a structured, ongoing relationship between the two companies which necessarily required [defendant] to maintain consistent contacts with [plaintiff], a D.C.-based corporation." 2023 WL 1469038 at *4. Specifically, "under the contract, [defendant] had access to [plaintiff's] product and confidential information, and in return [defendant] had to keep the information confidential, use it only as permitted by the agreement, and notify [plaintiff] of any breach," along with other long-term obligations. *Id.* Here, the Subscription Agreement contemplates no such continuous contact other than BTG paying a yearly-subscription fee to have access to Capitol Forum's publications. The mere fact that BTG, a foreign company, contracted with a D.C. entity is "plainly not enough" contact sufficient to establish personal jurisdiction. *See Health Commc'ns, Inc.*, 860 F.2d at 465. Capitol Forum's electronic publication services are more similar to the training services in *Health Communications* and the online database in *National Resident Matching Program* where minimum contact with D.C. was found lacking rather than the structured and on-going sales agreement in *Aristotle International*.

The next factor, course of dealings, is not applicable to the facts at hand because Capitol Forum and BTG have no other course of dealings together, whether inside or outside the District of Columbia.

The Subscription Agreement terms, the final factor, are immaterial to Plaintiff's claim for copyright infringement because the contract is one of adhesion. While the terms contemplate that the Agreement should be governed by the laws of the District of Columbia, these terms alone are not dispositive. *See Nat'l Resident Matching Program, 720 F. Supp. at 100* (citing *Jung v. Assoc. of Amer. Medical Colleges*, 300 F. Supp. 2d 119, 132 (D.D.C. 2004)); *SEC v. Lines Overseas Mgmt., Ltd.*, Civil Action No. 04–0302, 2005 WL 3627141, at *6 (D.D.C. Jan. 7, 2005); Ex. 4. Similar terms in a contract of adhesion do not "evince[] an intent by [a defendant] to avail [itself] of the privileges of doing business in the forum." *Nat'l Resident Matching Program*, 720 F. Supp. at 100. A forum selection clause or other terms related to jurisdiction are entirely absent from the Agreement. *See* Ex. 4. Even if this Court finds the Subscription Agreement is not a contract of adhesion, the contract is irrelevant to Plaintiff's claims for copyright infringement because Plaintiff is not bringing any claim for breach of contract. *See generally* Dkt. 28 ¶¶ 57–65. Therefore, the terms of the contract do not form a sufficient basis for the exercise of personal jurisdiction over BTG for Plaintiff's copyright infringement claim and should be disregarded for purposes of this motion.

### iii.        Any Other Contacts Are Attenuated and Fortuitous

Capitol Forum may try to argue that BTG's contacts with Capitol Forum, including a handful of e-mails and phone calls to Capitol Forum employees, supports personal jurisdiction. However, District of Columbia Courts have consistently held that merely contacting a D.C. resident by telephone or e-mail does not by itself support personal jurisdiction. *See Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 165 (D.D.C. 2014) ("[E]mail and telephone communications sent into the District of Columbia are not sufficient to constitute business transactions in themselves, even if they are made pursuant to an underlying contract between a resident business and a nonresident Defendant."). This is true even when the foreign

16

company regularly communicates with D.C. residents with as many as 150 e-mails and phone calls. *Gibbons & Co., Inc. v. Roskamp Inst.*, No. 06–CV–720, 2006 WL 2506646, at *3 (D.D.C. Aug. 28, 2006) (fifty to seventy-five emails and seventy-five phone calls related to an underlying contract between the parties did "not constitute a deliberate and voluntary association with the District that rises to the level of transacting business within the District"); *see also Thompson Hine, LLP*, 734 F.3d at 1192–94 (finding insufficient minimum contacts where a foreign defendant retained a District of Columbia law firm for legal services and sent "at least ten emails" to the law firm); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007), aff'd, 529 F.3d 1087 (D.C. Cir. 2008) (regular telephone calls by foreign defendant to District of Columbia company is insufficient to establish long-arm jurisdiction under § 13–423(a)(1)); *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 523 (D.D.C. 1995) ("[T]he fact that [defendant] was required to communicate with [plaintiff] at its offices in the District of Columbia regarding invoices has not been shown to arise out of any desire of [defendant] to do business with [plaintiff] in Washington, D.C. Nor did it establish the minimum contacts that would put the defendant on notice of the possibility of being haled into court here.").

The type of communication in this case between BTG and Capitol Forum are the exact sort of "communications [that] are incidental to nearly every business relationship[.]" *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 9 (D.D.C. 2009) (internal citations omitted). Therefore, "they are not indicative of any desire to do business in D.C. and do not suffice to show purposeful availment or minimum contacts." *Id.* Accordingly, Capitol Forum cannot rely on the limited e-mails and phone calls BTG employees made with Capitol Forum to establish minimum contacts and personal jurisdiction in the District of Columbia.

**B.     BTG Has Not Caused Tortious Injury in the District of Columbia as Required Under D.C. Code § 13-423(a)(4).**

Exercise of personal jurisdiction under section (a)(4) is improper for two reasons: (1) the copyright injury did not occur in the District of Columbia, and (2) BTG's contacts with the District of Columbia do not meet the required "plus factors". D.C. Courts consider two primary inquiries under section (a)(4), first, whether the defendant "caus[ed] tortious injury *in the District of Columbia* by an act or omission outside the District of Columbia," (emphasis added) and (2) whether the defendant meets one of the "plus factors" enumerated by the code: (i) "regularly does or solicits business" in the District, (ii) "engages in any other persistent course of conduct" in the forum, or (iii) "derives substantial revenue from goods used or consumed, or services rendered." D.C. Code § 13-423(a)(4). The plus factors "ensure that personal jurisdiction is not exercised over a defendant when the in-District injury 'is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.'" *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981).

**i.     The Copyright Injury Did Not Occur in the District of Columbia.**

Intellectual property cases present a unique challenge in determining the location of injury for application of long-arm statutes. While the D.C. Circuit has not specifically ruled on the location of copyright injury under the D.C. long-arm statute, some courts have likened copyright injuries to economic injuries that occur at the location of the tortious act and not at the location of the copyright holder. Other courts have found that the internet makes identifying locations of alleged tortious acts as the location of injury impractical and unwise and thus resort to holding that a copyright infringement injury occurs at the location of the copyright holder. But because Capitol Forum does not allege that BTG committed copyright infringement by uploading its copyrighted materials on the internet available to the public at large, and instead alleges only copyright

18

infringement by transmission to one party, co-defendant Market Securities, via a private messaging service, the correct location of the copyright injury in this case should be the location of the acts causing the alleged injury.

As noted above, while the nature of copyright infringement can make locating a physical point of injury difficult, some courts have analogized copyright injury to economic injury and suggested that the location of copyright injury is co-extensive with the acts underlying the copyright infringement, for example the location of upload or download of the copyrighted works. *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 39 (D.D.C. 2011) (comparing two theories of copyright injury without deciding which applies); *see also Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04 Civ. 5238GEL, 2005 WL 1500896, at *8 (S.D.N.Y. June 23, 2005) (rejecting the location of copyright injury as the location of the copyright holder); *C.f. Penguin Grp. (USA) Inc. v. American Buddha*, 640 F.3d 497 (2d Cir. 2011) (analyzing certified question under New York long-arm statute that found the location of injury for uploading printed copyrighted works onto the internet is the location of the copyright holder and not the upload or download location). While New York has accepted the location of the copyright holder as the situs for copyright injury, New York did so only under narrow circumstances not applicable to this case. In *American Buddha*, the court found that material uploaded freely to the internet did not have a readily identifiable location of injury because the infringement could have occurred anywhere with access to the internet, which necessitated using the location of the copyright holder as the situs of injury. *American Buddha*, 946 N.E.2d at 163–64. Specifically, New York's Court of Appeals rejected the tortious act location theory because "the instantaneous availability of those copyrighted works on American Buddha's Web sites for anyone, in New York or elsewhere, with an Internet connection to read and download the books free of charge" presented an impossible challenge. *Id.* at 164. The court argued that as

opposed to cases where the alleged injury could be clearly circumscribed to specific locations, locating the alleged injury for public material on the internet was impossible because the alleged injury "involves online infringement that is dispersed throughout the country and perhaps the world." *Id.* at 164. Thus, copyrighted material disseminated to the public necessitated locating the injury at the copyright holder's location. *Id.*

The facts here demonstrate why this Court should find the injury occurred in New York or Texas and not D.C. Plaintiff alleges that BTG's employee, Cristina Suarez, lawfully received copyrighted works from Capitol Forum and transmitted those copyrighted works without permission to co-defendant Market Securities in New York via a private peer-to-peer messaging application, WhatsApp. Dkt. 28 ¶¶ 24–26. During the time period of the allegedly infringing conduct, from March 2020 to November 2021, Ms. Suarez worked both in New York, New York and in Austin, Texas, where she connected remotely to BTG's offices in New York. Dkt. 28 ¶ 27; Declaration of C. Suarez ¶ 3. She allegedly transferred copyrighted materials to just one person at Market Securities, Jennifer Donaker, via a private messaging service. Dkt. 28 ¶¶ 24–26. Ms. Donaker works in New York. Unlike the internet upload in *American Buddha*, the transfer of copyrighted materials from one person in New York or Texas to another person in New York via a private messaging service does not implicate the same concerns of public dissemination of protected material on the internet. *American Buddha* and its progeny simply do not apply because Capitol Forum does not allege that BTG made its copyrighted material publicly available on the internet. Instead, the location of the alleged tortious acts are readily identifiable—Texas and New York—and D.C. has no connection to the alleged infringement.

     **ii.**    **BTG Does Not Have Any Contacts With The District of Columbia to Satisfy the "Plus Factors" Required Under D.C. Code § 13-423(a)(4).**

Even if the Court believes that the copyright injury occurred within the District of Columbia, the exercise of personal jurisdiction over BTG under section (a)(4) would still be improper because BTG does not meet any of the enumerated "plus factors". In order to show that the plus factors are met, Capitol Forum must show that BTG "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4). These plus factors must be "something more" than the conduct forming the basis of the lawsuit. *Slate v. Kamau*, 2021 WL 3472438, *7 (D.D.C., 2021) (quoting *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987)).

None of the plus factors are met in this case. BTG is not registered to do business in the District and does not derive *any* revenue from goods or services in the jurisdiction. Declaration of A. Maron ¶¶ 8–9. Nor does BTG engage in any other course of conduct in the District of Columbia that can be characterized as persistent. BTG does not maintain an office in the District of Columbia., *id.* ¶ 7, does not have any employees in the district, *id.* ¶ 10, and does not pay corporate income taxes in the district. *Id.* ¶ 8. Outside of its limited and attenuated relationship with Capitol Forum, formed with only one BTG employee at Capitol Forum's urging, BTG has no connection with the District of Columbia that would satisfy the plus factors.

In fact, D.C. courts have rejected personal jurisdiction over foreign companies with much more business in D.C. than BTG. For example, in *Burman v. Phoenix Worldwide Indus., Inc.*, the plaintiff asserted claims for securities fraud and misrepresentation against an accounting firm. 437 F. Supp. 2d 142, 153 (D.D.C. 2006). The accounting firm conducted business with at least seven clients in D.C., its employees attended several seminars and conferences in D.C., and it had placed

over 1,000 phone calls to the District. *Id.* at 153. The court concluded that these contacts simply weren't enough to satisfy the plus factors: "the quality and nature of these contacts represent a negligible relationship with this forum." *Id.* at 155. Here, BTG's contacts with D.C. fall even shorter than in those in *Burman*—Capitol Forum has not and cannot show that BTG has any contacts with D.C. that meet the plus factors and therefore the exercise of personal jurisdiction under section (a)(4) of the long-arm statute is improper.

### iii. Exercise of Personal Jurisdiction Over BTG Under Section (a)(4) Would Violate Due Process.

Even if the Court finds both that the copyright injury occurred in D.C. and that the plus factors are met, exercise of personal jurisdiction under section (a)(4) is inappropriate because BTG does not have minimum contacts with the District of Columbia. "Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). As discussed extensively above, to exercise jurisdiction in compliance with due process, there must be "certain minimum contacts" such that "traditional notions of fair play and substantial justice" are not offended. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted). *See supra* § I(A). For that reason alone, the exercise of personal jurisdiction is improper in the District of Columbia under section (a)(4) of the long-arm statute.

## II. Capitol Forum Cannot Establish General Jurisdiction Over BTG.

Capitol Forum did not allege general jurisdiction as an appropriate basis for exercising personal jurisdiction over BTG. Nonetheless, District of Columbia courts will not exercise general jurisdiction over a foreign company unless they are personally served within the District. *See Okolie v. Future Servs. Gen. Trading & Contracting Co.*, 102 F. Supp. 3d 172, 175 (D.D.C. 2015);

*Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 112 (D.D.C. 2011); D.C. Code § 13-334. Here, BTG was served in Delaware. Dkt. 33. Therefore, BTG cannot be subject to general personal jurisdiction in the District of Columbia.

## III.   Venue is Improper in the District of Columbia.

Because BTG is not subject to personal jurisdiction in the District of Columbia, venue in this District is also improper. Venue for copyright infringement is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).[4] D.C. courts have held that a defendant "may be found" in any district where the defendant is subject to the court's personal jurisdiction. *See Bigelow v. Garrett*, 299 F. Supp. 3d 34, 49 (D.D.C. 2018); *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014). Because BTG neither resides within the District nor is found here (because BTG is not subject to personal jurisdiction in this district), venue is also improper.

## IV.   In the Alternative, this Court Should Transfer the Claims against BTG to the Southern District of New York.

To the extent the Court does not dismiss the claims for want of jurisdiction against BTG, transfer to the Southern District of New York is available under 28 U.S.C. § 1631 ("[T]he court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."). *See also Gather Workspaces LLC v. Gathering Spot, LLC*, No. CV 19-2669 (RC), 2020 WL 6118439, at *10 (D.D.C. Oct. 16, 2020) ("[T]he law of this Circuit suggests that when a district court lacks personal jurisdiction over a case, transfer to a court where jurisdiction is proper is preferred, and perhaps even required, to dismissing the case.") (internal citations omitted). "There are three requirements

---

[4] Capitol Forum improperly alleged venue under the general venue statute instead of the copyright venue statute. Dkt. 28 ¶ 14. The proper venue analysis is under the copyright venue statute, 28 U.S.C. § 1400(a). *See Nu Image Inc.*, 799 F. Supp. 2d at 37.

for a transfer under 28 U.S.C. § 1631: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer may be made only to a court in which the action could have been brought at the time it was filed or noticed." *Does 1-144 v. Chiquita Brands Int'l, Inc.*, 285 F. Supp. 3d 228, 233 (D.D.C. 2018). All three factors are met here.

First, as argued above, there is no jurisdiction in this District. Second, transfer is in the interest of justice because the transfer would not prejudice BTG's position on the merits and transfer would save Plaintiff the time and expense of refiling in another district. *See Chiquita Brands*, 285 F. Supp. 3d at 235. Finally, the claims against BTG could have been originally brought in S.D.N.Y. because BTG is headquartered in New York, New York. Declaration of A. Maron ¶ 5. Therefore, all three factors are met for transfer to S.D.N.Y. under 28 U.S.C. § 1631, in lieu of dismissal.

## **CONCLUSION**

For the foregoing reasons, BTG respectfully requests that the Court grant its motion to dismiss for lack of personal jurisdiction and improper venue under Fed. R. Civ. P. 12(b)(2)–(3), or in the alternative, transfer this action to the Southern District of New York under 28 U.S.C. § 1631.

Dated: October 17, 2023

Respectfully Submitted,

*/s/ Toyja Kelley*
Toyja Kelley
D.C. Bar No. 482977
toyja.kelley@lockelord.com
LOCKE LORD LLP
701 8th Street, N.W.
Suite 500
Washington, D.C. 20001
(202) 220-6900 Telephone
(202) 220-6945 Facsimile

Charles S. Baker (*pro hac vice* pending)
Texas State Bar No. 01566200
cbaker@lockelord.com
LOCKE LORD LLP
600 Travis St., Suite 2800
Houston, Texas 77002
(713) 226-1200 Telephone
(214) 223-3717 Facsimile

**ATTORNEYS FOR DEFENDANT BTG PACTUAL ASSET MANAGEMENT US, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 17, 2023, a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system.

_/s/ Toyja Kelley_
Toyja Kelley

EXHIBIT INDEX[1]

| Exhibit | Description |
|---------|-------------|
| 1 | eMails from Matt Treacy to Cristina Suarez (Jan. – Aug., 2019) |
| 2 | eMail from Josep Alba to Cristina Suarez, dated February 3, 2020 |
| 3 | eMail from Josep Alba to Cristina Suarez, dated February 14, 2020 |
| 4 | Executed Subscription Agreement |

---

[1] BAH Standing Order for Civil Cases ¶ 5(b)